UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
BAIGUANG HAN, *on his own behalf and on* :
*behalf of others similarly situated*, :
:
Plaintiff, :
:
-against- :
:
SHANG NOODLE HOUSE, INC. d/b/a :
SHANG KITCHEN, ZHI ZHONG LIU a/k/a :
ZHIZHONG LIU and SUMMER ZHANG :
a/k/a SUMMER LIU, :
:
Defendants. :
--------------------------------------------------------x

**MEMORANDUM & ORDER**
20 Civ. 2266 (PKC) (VMS)

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Baiguang Han ("Plaintiff") brings this wage and hour action, individually and on behalf of other persons similarly situated, against Defendants Shang Noodle House, Inc. d/b/a Shang Kitchen, Zhi Zhong Liu a/k/a Zhizhong Liu and Summer Zhang a/k/a Summer Liu (collectively, "Defendants") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C.§§ 201 et seq. and the New York Labor Law ("NYLL") §§ 650 et seq. See ECF No. 1, passim.

Before the Court is Plaintiff's motion seeking an Order (1) conditionally certifying Plaintiffs' FLSA unpaid minimum wage and overtime claims as an FLSA collective action on behalf of all current and former chefs, cooks, meat cutters, food preparers, material preparers, dishwashers (collectively "Kitchen Workers"), waiters and waitresses (collectively "Wait Staff") who worked for Defendants from May 19, 2017, through today's date ("Collective Action Period"); (2) directing Defendants to furnish to Plaintiffs in an electronically readable form the names, last known addresses, telephone numbers (including cell phone numbers), email addresses and other information of all members of the proposed collective of potential plaintiffs ("Collective Action Members") so that Plaintiff can serve each with a Notice of Lawsuit

1

("Notice") and Consent to Join Form ("Consent Form"); (3) authorizing a Notice and Consent Form for Plaintiff to deliver to the Collective Action Members; (4) requiring that the Notice and Consent Form be posted within Defendants' workplace; and (5) approving an interim reminder notice ("Reminder Notice") for Plaintiff to deliver to the Collective Action Members. See ECF No. 21-23.  Defendants oppose.  See ECF Nos. 28-29.[1]  Plaintiff replies.  See ECF No. 30.[2]

For the reasons stated below, Plaintiff's motion for conditional certification of an FLSA collective is (1) denied with respect to the alleged minimum wage violations as to all proposed collective action members, see Section III.b; (2) denied with respect to the alleged overtime violations suffered by Wait Staff, see Section III.d; and (3) granted with respect to the alleged overtime violations suffered by Kitchen Workers, see Section III.c, subject to the restrictions set forth in Section III.e, including use of the Court-authorized Notice and Consent Form attached to this Order as Exhibit A.

---

[1] The Court notes that Defendants filed their Memorandum in Opposition to the motion twice on the docket.  Once at ECF No. 28 and again at ECF No. 29.  The Court will hereinafter cite only to the filing at ECF No. 29.

[2] Plaintiff filed a motion seeking the Court's leave to file the reply submission one day late, which Defendants opposed.  See ECF No. 30 (Plaintiff's motion); ECF No. 31 (Defendants' opposition).  The Court grants Plaintiff's motion.  With respect to Defendants' objection that Plaintiff's reply was untimely filed, the Court finds cause to forgive the minor error in the absence of a showing of prejudice or bad faith, particularly in light of the fact that Defendants themselves previously sought and received a longer extension of time to file their opposition papers over Plaintiff's objection.  See ECF No. 24; Dkt. Entry 12/23/2020.  Given Defendants' extension, the Court would have expected Defendants to not oppose Plaintiff's request.  In addition, Defendants' objection is overruled to the extent it claims that Plaintiff's reply unfairly presents new evidence as to which Defendants have not had the opportunity to respond; to the extent the Court has considered Plaintiff's reply submission, it has not been in connection with its partial grant of Plaintiff's motion such that there has been no prejudice to Defendants.  If anything, and as discussed herein, the Court found Plaintiff's reply submission to undermine his motion as to those aspects of relief which are denied.

## I. Background

### a. Plaintiff's Complaint

The Court assumes the parties' general familiarity with the action. What follows are facts drawn from Plaintiff's complaint that are pertinent to the Court's analysis of the instant motion. See ECF No. 1.

According to Plaintiff, Defendants employed Plaintiff as a chef at Shang Kitchen, 3810 Prince Street, Flushing, New York 11354, for a one-month period between August 15, 2019, and September 15, 2019. See id. ¶¶ 8-19, 29-43.[3]   Plaintiff further alleges that (1) Defendants

---

[3] There are two contradictory allegations in Plaintiff's complaint that suggest that Defendants employed him for only a two-week period from August 15, 2019, through September 1, 2019, see id. ¶ 7, or that Defendants employed him for a four-week period that began in August 2019, ceased in September 2019, and then continued and concluded in October 2019, see id. ¶ 38.  The Court's view of these discrepancies is that it is fair to infer that they are typographical errors because, on the whole, Plaintiff's complaint is reasonably read to allege that he worked for Defendants for four weeks from August 15, 2019, through September 15, 2019.  Compare id. ¶¶ 7, 38, with id. ¶¶ 29-30, 33, 36; Jeong Woo Kim v. 511 E. 5th Street, LLC, 985 F. Supp. 2d 439, 446 (S.D.N.Y. 2013) ("When there are ambiguities in the papers seeking collective action status, the court must draw all inferences in favor of the plaintiff at the preliminary certification stage.") (citation & internal quotations omitted).  Further, treating these discrepancies as typographical errors and crediting Plaintiff's allegation that Defendants employed him from August 15, 2019, through September 15, 2019, is consistent with the evidence submitted in the record by both Plaintiff and Defendants.  Compare id. ¶¶ 29-30, with id., passim, ECF No. 22-4 ¶ 4, and ECF No. 29-2 ¶¶ 3, 5; see Ulloa v. Takata Corp., TK Holdings Inc., No. 16 Civ. 6225 (KMW) (BCM), 2017 WL 1194691, at *3 (S.D.N.Y. Mar. 30, 2017) (denying Rule 12 motion to dismiss in part where, "[a]lthough the complaint pleads contradictory facts, the [c]ourt finds the complaint sufficiently intelligible to potentially state viable legal theories[,]" but finding it appropriate to require the plaintiff to make a more definite statement pursuant to Rule 12(e)); Bailey v. New York Law Sch., No. 16 Civ. 4283 (ER), 2017 WL 6611582, at *5 n.9 (S.D.N.Y. Dec. 27, 2017) (assuming that an erroneous date in the complaint was a typographical error where the date was shown to be different elsewhere in the record); Paul v. Postgraduate Ctr. for Mental Health, 97 F. Supp. 3d 141, 161 n.19 (E.D.N.Y. 2015) (noting that a document in the record that stated an incorrect date was "clearly a typographical error" in light of the balance of the record such that the court "corrected the typographical error in [its] discussion"); Rui Xiang Huang v. J&A Entm't Inc., No. 09 Civ. 5587 (ARR) (VVP), 2012 WL 6863918, at *7 (E.D.N.Y. Dec. 3, 2012) (noting in an FLSA action that "[t]he defendants . . . assert that the plaintiff's testimony is unreliable because it is contradictory to some allegations in the . . . [c]omplaint[,]" and finding the discrepancy "insufficient to merit disregarding the plaintiff's testimony at th[e

agreed to pay him flat compensation at a rate of $6,000 per month, see id. ¶ 36; (2) that Plaintiff

worked 72 hours a week for each of the weeks Defendants employed him (six days a week for

twelve hours per day), see id. ¶¶ 30-33[4]; and (3) that Defendants paid Plaintiff only $3,000 of the

flat $6,000 monthly salary they promised him, but failed to pay Plaintiff the other $3,000, see id.

¶¶ 36-38, see id. ¶ 38.  In connection with these facts, Plaintiff alleges that Defendants' failure to

pay him his promised flat $6,000 monthly salary in full constituted an FLSA minimum-wage

violation, see id. ¶¶ 54-57, and that Defendants' failure to pay him one-and-one-half times

Plaintiff's regular hourly rate for hours worked in excess of 40 per week constituted an FLSA

overtime violation, see id. ¶¶ 63-70.   In Plaintiff's FLSA collective action allegations, he seeks

to bring his claims on behalf of all similarly situated non-exempt and non-managerial employees

who worked for Defendants.  See id. ¶¶ 44, 54-57, 63-70.

### b.  Procedural History

On May 19, 2020, Plaintiff commenced the instant action.  See ECF No. 1.  Defendants

answered, and the parties participated in an unsuccessful mediation.  See ECF No. 17; Dkt. Entry

12/4/2020; Dkt. Entry 3/3/2021.  Meanwhile, the Court set a pretrial schedule, and Plaintiff filed

the instant motion for conditional certification of an FLSA collective action.  See Dkt. Entry

11/13/2021; ECF No. 21-23.   Defendants oppose.  See ECF No. 28-29.  Plaintiff replies.  See

ECF No. 30.

---

summary judgment] stage"), R&R adopted, 2013 WL 173738, at *1 (E.D.N.Y. Jan. 16, 2013).
Counsel is urged to review carefully all submissions to the Court to avoid such confusion in the
future.

[4] Plaintiff elsewhere alleges that he worked additional hours beyond his scheduled time such that
he worked closer to 74.25 hours per week.  See id. ¶ 33.  As the difference between the 72 hours
and 74.25 hours is immaterial to the Court's analysis, the Court will use the 72-hour number in
this Order.

### c. Evidence Submitted By The Parties In Connection With The Instant Motion

What follows are relevant facts drawn from the evidence submitted by the parties' in connection with the instant motion. <u>See</u> ECF Nos. 21-23; ECF No. 29; ECF No. 30.

### i. Evidence Pertaining To Plaintiff Specifically

As a preliminary matter, Plaintiff's affidavit submitted with his opening papers attests to his complaint allegations that Defendants employed him as a chef at Shang Kitchen, 38-10 Prince Street, Flushing, New York, 11354 ("Restaurant"), from on or about August 15, 2019, to September 15, 2019; that Defendants agreed to pay him $6,000 for his work during that month; that during this period he worked approximately twelve to fourteen hours a day, six days a week, for a total of approximately 74.25 hours per week; that Defendants paid him $3,000 for the days he worked from August 15, 2019, through August 31, 2019; and that Defendants did not pay him at all for the days he worked from September 1, 2019, through September 15, 2019. <u>See</u> Han Aff. ¶¶ 4-5.

In response, Defendants' evidence seeks to show that Plaintiff had a managerial role at the Restaurant such that under wage-and-hour laws he was an employer of other workers and not their fellow employee. <u>See</u> ECF No. 29. For example, in an affidavit from Defendant Zhang, she attests that she hired Plaintiff as the Restaurant's chef approximately two to three weeks prior to its September 11, 2019, opening day, and that Plaintiff played an active role in selecting and stocking cooking ingredients and raw materials for the kitchen; selecting, purchasing and picking up kitchen equipment; testing, pricing and naming dishes; and directly hiring many Restaurant employees. Once the Restaurant opened on September 11, 2019, Defendant Zhang claims that Plaintiff instructed the kitchen workers in their work and disciplined them when it fell short of expectations. According to Defendant Zhang, an average of two kitchen workers

resigned or were fired every day in connection with Plaintiff's management and discipline decisions and style.  See Zhang Aff., passim.  In an affidavit from non-party Zhaoxing Zhu, Mr. Zhu corroborates Defendant Zhang's testimony by attesting that as assistant chef to Plaintiff at the Restaurant, Mr. Zhu observed Plaintiff actively managing the Restaurant's kitchen and its employees by directing kitchen employees' work, berating them and firing and/or driving them to quit.  See Zhu Aff., passim.  In addition, Defendant Zhang and Mr. Zhu both attest that when, on September 16, 2019, Plaintiff abruptly quit his job, his managerial role was made clear by the fact that the Restaurant had to be immediately closed for nearly a month to allow time to find a replacement for Plaintiff.  See Zhang Aff., passim; Zhu Aff., passim.

Plaintiff's affidavit denies the facts sworn to by Defendant Zhang and Mr. Zhu about his responsibilities at the Restaurant involving any employer-like authority, and he submits extrinsic evidence suggesting that Mr. Zhu's affidavit in particular is false.  See Han Aff. II, passim.

### ii.  Evidence About Defendants' Other Workers

Plaintiff's evidence offers information about Defendants' other workers' employment, schedules and salaries as well as the basis for Plaintiff's personal knowledge about these subjects as to which he claims to have personal knowledge.  In affidavits, Plaintiff attests that Defendants employed:

1. A noodle and cold dish chef named Mr. Lin on a schedule of 72 hours per week for a monthly salary of $3,000 from August 15, 2019, through at least September 16, 2019, which was Plaintiff's last day of employment.  Plaintiff, who offers a description of Mr. Lin by his approximate age, physical characteristics and place of origin in China, attests that he has personal knowledge of Mr. Lin's schedule because Plaintiff worked with him at relevant times and observed Mr. Lin's starting and end times on those days.  Plaintiff further attests that he has personal knowledge of Mr. Lin's salary because Mr. Lin discussed it with Plaintiff while they were on a break together.  See Han Aff. I ¶¶ 17-23.

2. A fry wok chef named Mr. Wang on a schedule of 72 hours per week for a monthly salary of $3,800 from September 11, 2019, through at least September 16, 2019. Plaintiff, who offers a description of Mr. Wang by his approximate age, physical

characteristics and place of origin in China, attests that he has personal knowledge of Mr. Wang's schedule because Plaintiff worked with him at relevant times and observed Mr. Wang's starting and end times on those days.  Plaintiff attests that he has personal knowledge of Mr. Wang's salary because Mr. Wang discussed it with Plaintiff while they were on a break together.  See Han Aff. I ¶¶ 24-31.[5]

3.  A noodle and dessert chef named Mr. Zhang on a schedule of 72 hours per week at a monthly salary of $2800 to $3000 from an unstated September 2019 date through September 14, 2019.  Plaintiff, who offers a description of Mr. Zhang's place of origin as Taiwan, attests that he has personal knowledge of Mr. Zhang's schedule because Plaintiff worked with him at relevant times and observed Mr. Zhang's starting and end times on those days.  Plaintiff attests that he has personal knowledge of Mr. Zhang's salary because Defendant Zhang told Plaintiff that this was the range of a monthly salary for someone in Mr. Zhang's position.  See Han Aff. I ¶¶ 47-55.

4.  A miscellaneous helper named Ms. Dae Jie on a schedule of 72 hours per week at a monthly salary of approximately $2800 from an unstated September 2019 date through September 14, 2019.  Plaintiff, who offers a description of Ms. Dae Jie by her age and physical characteristics, attests that he has personal knowledge of Ms. Dae Jie's schedule because Plaintiff worked with him at relevant times and observed Ms. Dae Jie's starting and end times on those days.  Plaintiff further attests that he has personal knowledge of Ms. Dae Jie's salary because after Ms. Dae Jie told Plaintiff that this was her expected salary, Defendant Zhang approved it and asked Plaintiff to inform Ms. Dae Jie that it was approved.  See Han Aff. I ¶¶ 32-38.

5.  A food preparer named Mr. Shi Fu on a suspected but unknown schedule of 72 hours per week at an unknown salary beginning on September 16, 2019, through an unknown later date.  Plaintiff, who offers a description of Mr. Shi Fu by his physical characteristics and place of origin in China, attests that he has no personal knowledge of Mr. Shi Fu's schedule because Mr. Shi Fu began work on Plaintiff's last day of employment, and can only infer that Mr. Shi Fu would have worked a similar schedule to others.  See Han Aff. I ¶¶ 60-65.

6.  A meat cutter, Mr. "Doe," whose name Plaintiff does not know on a schedule of 72 hours per week at an unknown salary from September 14, 2019, through September 16, 2019.  Plaintiff, who does not offer any descriptive information about the meat cutter Mr. Doe, says that he has personal knowledge of the man's schedule because Plaintiff worked with

---

[5] In Plaintiff's reply he includes an affidavit from the fry wok cook named Mr. Wang in which Mr. Wang attests to facts which, the Court notes, generally line up with what Plaintiff's opening affidavit already represented about Mr. Wang.  See ECF No. 30-3.  At this stage, because Plaintiff's original affidavit with respect to Mr. Wang has sufficient evidentiary value regarding the facts at issue to grant Plaintiff's motion to conditionally certify an FLSA collective for Kitchen Workers for alleged overtime violations, and because Mr. Wang's affidavit is immaterial to the Court's denial of other aspects of Plaintiff's motion, the Court's analysis does not turn on Mr. Wang's affidavit.  See Section III, passim.

him at relevant times.  See Han Aff. I ¶¶ 56-59.

7.  A dishwasher named Mr. Wang Shi on a schedule of 72 hours per week at a monthly salary of approximately $2,000 from August 26, 2019, through September 16, 2019. Plaintiff, who offers a description of Mr. Wang Shi Fu by his age, physical characteristics and place of origin in China, attests that he has personal knowledge of Mr. Wang Shi Fu's schedule because Plaintiff worked with him at relevant times and observed Mr. Wang Shi Fu's starting and end times on those days.  Plaintiff further attests that he has personal knowledge of Mr. Wang Shi Fu's salary because Defendant Zhang told Plaintiff that this was the compensation rate for a dishwasher.  See Han Aff. I ¶¶ 39-46.

8.  A waitress named Ms. Wu Fan on a schedule of 72 hours per week at a daily salary of $100 or $110 from September 11, 2019, which was the date the Restaurant opened, through September 15, 2019.  Plaintiff, who offers a description of Ms. Wu Fan by her age, physical characteristics and place of origin in China, attests that he has personal knowledge of Ms. Wu Fan's schedule because Plaintiff worked with her at relevant times and observed Ms. Wu Fan's starting and end times on those days.  Plaintiff further attests that he has personal knowledge of Ms. Wu Fan's salary because Ms. Wu Fan once told Plaintiff her rate.  See Han Aff. I ¶¶ 66-73; Han Aff. II ¶¶ 52-57.

9.  A waiter named Mr. Wen on a schedule of 72 hours per week at a salary that Plaintiff does not claim to know from September 11, 2019, through September 15, 2019.  Plaintiff, who offers a description of Mr. Wen by his age and physical characteristics, attests that he has personal knowledge of Mr. Wen's schedule because Plaintiff worked with him at relevant times and observed Mr. Wen's starting and end times on those days.  See Han Aff. I ¶¶ 74-77; Han Aff. II ¶¶ 52-57.

10.  A waitress named Ms. Zhong Liu on a schedule of 72 hours per week at a salary that Plaintiff does not claim to know from September 11, 2019, through September 15 or 16, 2019.  Plaintiff, who offers a description of Ms. Zhong Liu by her age, physical characteristics and the fact that she was a sister to one of the Defendants, attests that he has personal knowledge of Ms. Zhong Liu's schedule because Plaintiff worked with her but Plaintiff states that Ms. Zhong Liu had a more flexible schedule than other wait staff. See Han Aff. I ¶¶ 78-85; Han Aff. II ¶¶ 52-57.

According to Plaintiff, from August 15, 2019, through September 15, 2019, Defendants normally had six to seven employees working in the kitchen, i.e., Plaintiff himself as chef or fry wok cook, another fry wok cook, one cold dish chef, one dessert chef, one miscellaneous helper, one food preparer and one dishwasher.  See Han Aff. II ¶¶ 36-37.  Plaintiff says that the turnover rate was very high, particularly prior to when the Restaurant opened on September 11, 2019.  See Han Aff. II ¶¶ 13, 35.  Plaintiff also attests that his one day off per week "was not fixed" during the

month he worked at the Restaurant, that his "coworkers' day[s] off [were] also not fixed"; in other words, while Plaintiff was working, he would be working with all kitchen staff "except[] the workers with that day off."  Han Aff. II ¶¶ 39, 44-45.

## II.  Standards For Motion For Conditional Certification Of An FLSA Collective

Section 216(b) of the FLSA provides a private right of action to recover unpaid overtime compensation "against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  The Supreme Court has held that "Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure."  Hoffman-LaRoche Inc. v. Sperling, 493 U.S. 165, 170 (1989); see Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 75 n.1 (2013) (characterizing section 216(b) as a "joinder process.").  Construing that language, the Second Circuit has endorsed a two-step method to determine whether a case should proceed as a collective action under FLSA.  See Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010).

In the first step, which corresponds to the conditional certification stage, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs."  Id. at 555.  Plaintiffs need only "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"  Id. (quoting Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  "Courts do not require a named plaintiff to show an actual FLSA violation, but rather that a 'factual nexus' exists between the plaintiff's situation and the situation of other

potential plaintiffs." Sobczak v. AWL Indus., Inc., 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007);

see Jackson v. N.Y. Telephone Co., 163 F.R.D. 429, 431 (S.D.N.Y.1995) (stating that "plaintiffs

are only required to demonstrate a factual nexus that supports a finding that potential plaintiffs

were subjected to a common discriminatory scheme").  The "similarly situated" analysis is "quite

distinct" from "the much higher threshold of demonstrating that common questions of law and

fact will 'predominate' for Rule 23 purposes."  Hertz, 624 F.3d at 555-56.  Mere "unsupported

assertions" are not sufficient to pass the first step, but it "should remain a low standard of proof

because the purpose of the first stage is to merely to determine whether 'similarly situated'

plaintiffs do in fact exist."  Id. (quoting Dybach v. State of Fla. Dep't of Corr., 942 F.2d 1562,

1567 (11th Cir. 1991)).  The Second Circuit has recently elaborated the "similarly situated"

standard to mean that "named plaintiffs and opt-in plaintiffs are alike with regard to some

material aspect of their litigation."  Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 516 (2d

Cir. 2020).  "[I]f named plaintiffs and party plaintiffs share legal or factual similarities material

to the disposition of their claims, dissimilarities in other respects should not defeat collective

treatment."  Id.  (quoting Campbell v. City of Los Angeles, 903 F.3d 1090, 1114 (9th Cir.

2018)).

　　　　An employee cannot become a party to such an action, however, unless he or she

provides consent, in writing, and such consent is filed in the court where the action is pending.

See Patton v. Thomson Corp., 364 F. Supp. 2d 263, 266 (E.D.N.Y. 2005) ("[O]ther employees

can become plaintiffs, . . . only by affirmatively acting to do so.").  Courts have discretion to

authorize sending notice to potential plaintiffs in a collective action at the conditional

certification stage upon a plaintiff's demonstration that potential class members are "similarly

situated."  Id. at 266-67 (citing Sbarro, 982 F. Supp. at 261); see Hoffman-LaRoche, 493 U.S. at

169 ("[D]istrict courts have discretion, in appropriate cases, to implement [Section 216(b)] by

facilitating notice to potential plaintiffs."); Sobczak, 540 F. Supp. 2d at 362 (citation omitted).

Following the distribution of the notice, the completion of any opt-in period, and any

additional discovery, the court proceeds to the second step of the two-part Section 216(b)

inquiry.  "[A]t the second stage, the district court will, on a fuller record, determine . . . whether

the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs."  Hertz,

624 F.3d at 555.

### III.  Analysis

#### a.  Defendants' Evidence Improperly Seeks To Litigate The Merits Of Plaintiff's Claims And/Or Plaintiff's Credibility At The Preliminary Certification Stage

At the preliminary stage of an FLSA collective certification, "whether [the plaintiff] will

eventually succeed on the merits of his FLSA claim is immaterial."  Jeong Woo Kim, 985 F.

Supp. 2d at 447 (citing Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y.

2007) (finding that courts must not "weigh the merits of the underlying claims" at the

preliminary certification stage); see LeGrand v. Educ. Mgmt. Corp., No. 03 Civ. 9798 (HB)

(HBP), 2004 WL 1962076, at *2 (S.D.N.Y. Sept. 2, 2004).  Courts "need not engage in [a merit]

inquiry" at the first step of the conditional certification of an FLSA collective.  Jeong Woo Kim,

985 F. Supp. 2d at 447.   Indeed, because a court "must take care to avoid even the appearance of

judicial endorsement of the merits" of an action at this stage, Hoffmann-La Roche, 493 U.S. at

174, a "court may not 'resolve factual disputes, decide substantive issues going to the ultimate

merits, or make credibility determinations[,]'" Jeong Woo Kim, 985 F. Supp. 2d at 447 (quoting

Lynch, 491 F. Supp. 2d at 368).  "Accordingly, if the plaintiff's allegations are sufficient on their

face to support conditional certification, a defendant may not defeat the plaintiff's motion by

presenting conflicting factual assertions."  Jeong Woo Kim, 985 F. Supp. 2d at 447 (collecting

cases); Sanchez v. Gansevoort Mgmt. Grp., Inc., No. 12 Civ. 75 (KBF), 2013 WL 208909, at *1 n. 1 (S.D.N.Y. Jan. 10, 2013) (stating that to the extent an affidavit submitted by the defendants "contradicts statements sworn to by the plaintiffs, the [c]ourt will grant the plaintiffs the benefit of the doubt given the posture of [the conditional certification] motion").

Applying these principles, the Court's analysis of Plaintiff's instant motion is required to disregard Defendant Zhang and Mr. Zhu's affidavits.  See ECF No. 29.  To the extent these affidavits were meant to show that Plaintiff's FLSA claims are non-viable because Plaintiff exercised employer authority over the employees he now calls similarly situated co-workers, there is "ample case law holding that consideration of the merits is absolutely inappropriate at the conditional approval stage." Wood v. Mike Bloomberg 2020, Inc., 484 F. Supp. 3d 151, 158 (S.D.N.Y. 2020).  To the extent Defendants' evidence is meant to impeach Plaintiff's credibility as a conditional certification movant, that is also inappropriate; Plaintiff's allegations are to be considered on their face without credibility determinations, and Defendants "may not defeat a court's determination that Plaintiff[ is] similarly situated by submitting their own affidavits." Colon v. Major Perry St. Corp., No. 12 Civ. 3788 (JPO), 2013 WL 3328223, at *5 (S.D.N.Y. July 2, 2013); see Dong Yuan v. Hair Lounge, No. 18 Civ. 11905 (AT) (BCM), 2019 WL 12338302, at *6 (S.D.N.Y. Nov. 7, 2019) ("It is well settled . . . that at the conditional certification stage the court should not 'make credibility determinations.'") (quoting Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 158 (S.D.N.Y. 2014)); Alves v. Affiliated Home Care of Putnam, Inc., No. 16 Civ. 1593 (KMK), 2017 WL 511836, at *4 (S.D.N.Y. Feb. 8, 2018) ("Defendants' competing factual assertions may not default Plaintiff's motion for conditional

class certification.").[6]

### b. Plaintiff Has Not Shown Defendants' Other Workers To Be Similarly Situated To Him As To FLSA Minimum-Wage Violations

"In order to bring a collective action, [the] plaintiff must first show that she, herself, was subject to a FLSA violation." Cruz v. Ham N Eggery Inc., No. 15 Civ. 3228 (JBW) (MDG), 2016 WL 4186967, at *4 (E.D.N.Y. Aug. 8, 2016) (denying motion for conditional certification of minimum wage claim where, among other things, one named plaintiff was paid above minimum wage and one potential collective member was also paid above minimum wage); Jeong Woo Kim, 985 F. Supp. 2d at 447 ("To bring a collective action, [the plaintiff] must first show that he, himself, was a victim of the [d]efendants' illegal pay practices."). The FLSA entitles employees to a minimum hourly wage which, at all times relevant to this action, was $7.25 per hour under federal law. See Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 499 (S.D.N.Y. 2017) (citing 29 U.S.C. § 206(a)(1)(C)); Moon v. Kwon, 248 F. Supp. 2d 201, 227 (S.D.N.Y. 2002). "In order to evaluate an employer's FLSA compliance, wages must be expressed in terms of a regular hourly rate[.]" Adams v. Dep't of Juv. Just. of City of New York, 143 F.3d 61, 66 (2d Cir. 1998) (citing 29 C.F.R. § 778.109). This is achieved "[w]here the salary covers a period . . . such as a month," by first reducing the salary "to its workweek equivalent." 29 C.F.R. § 778.113(b). A monthly salary is translated to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks)." Id. Then, "the regular hourly rate is determined by 'dividing the salary by the number of hours

---

[6] The Court understands that Defendants may wish to raise such evidence in opposition to (a) Plaintiff's own claims, (b) to any class action motion that Plaintiff may bring on the ground that as an "employer" under FLSA and NYLL, Plaintiff cannot be a class representative, and (c) on counterclaims for contribution. Evaluation of the evidence, including Plaintiff's credibility, may be subject to a different standard than on this motion, which accepts Plaintiff's representations as true and sufficient to meet the low bar for part of his motion.

which the salary is intended to compensate." Santillan v. Henao, 822 F. Supp. 2d 284, 293 (E.D.N.Y. 2011) (citing 29 C.F.R. § 778.113). Under the FLSA, there is a rebuttable presumption that the weekly salary covers only the first 40 hours worked in a given week unless an employer shows an employer-agreement agreement that the salary covers a different number of hours. See Ying Ying Dai v. ABNS NY Inc., 490 F. Supp. 3d 645, 656 (E.D.N.Y. 2020) ("The FLSA . . . carr[ies] a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement[.]") (quoting Pinovi v. FDD Enters., Inc., No. 13 Civ. 2800 (GBD) (KNF), 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015) (collecting cases)); Pik Quan Leong v. 127 Glen Head Inc., 102 F. Supp. 3d 450, 454 (E.D.N.Y. 2015) (holding that under the FLSA there is a rebuttable presumption that a weekly salary covers 40 hours); Giles v. City of New York, 41 F. Supp. 2d 308, 317 (E.D.N.Y. 1999) ("Unless the contracting parties intend and understand the weekly salary to include overtime hours at the premium rate, courts do not deem weekly salaries to include the overtime premium for workers regularly logging overtime, but instead hold that weekly salary covers only the first 40 hours.") (collecting cases). Although Plaintiff's pleading is unclear and subject to different interpretations that would lead to different calculations with respect to his regular rate as it pertains to his minimum wage claims, one possible interpretation and the one most favorable to Plaintiff is that Defendants promised to pay him a flat monthly salary of $6,000 for his first 40 hours of work in a given week. See, e.g., ECF No. 1 ¶¶ 36, 42. Assuming this to be true, on the face of Plaintiff's complaint he has alleged that at a flat $6,000 monthly salary, his regular hourly rate for a 40-hour work week was $34.62 per hour, which is well over the $7.25 federal statutory

hourly minimum.[7]   The Court notes that Plaintiff alleges that Defendants paid him only $3,000

of the promised flat $6,000 monthly salary; but even this would yield a regular hourly rate of

$17.31 per hour, which is also over the $7.25 federal statutory hourly minimum.[8]   As calculated

---

[7] Plaintiff's regular hourly rate based on hours worked using the $6,000 monthly salary is
calculated as follows:  ($6,000 (monthly wage) * 12 (months)/52 (weeks))/72 (hours) = $19.23.
If the Court were to divide by the 74.25 hours that Plaintiff claims to have worked in at least
some weeks, the regular rate would be $18.65.

[8] Plaintiff's regular rate based on hours worked using the $3,000 monthly amount is calculated as
follows:  ($3,000 (monthly wage) * 12 (months)/52 (weeks))/72 (hours) = $9.62.  If the Court
were to divide by the 74.25 hours that Plaintiff claims to have worked in at least some weeks, the
regular rate would be $9.32.

Plaintiff's papers lack clarity as to his legal theories for liability.  The Court notes that it is a
different question whether Plaintiff's FLSA minimum-wage claim against Defendants rests upon
their alleged failure to pay him $3,000 of his alleged $6,000 monthly salary.  For example, the
failure to pay any wages at all for a two-week period may constitute a violation of the FLSA's
requirement that employees are paid wages at the minimum wage had Plaintiff alleged that
Defendants promised to pay him on a bi-weekly instead of monthly basis, while a claim for
straight time pay in excess of minimum wage may not be a violation of the FLSA.  See Citicorp
Indus. Credit, Inc. v. Brock, 483 U.S. 27, 33 n.4 (1987) ("The proposition that an employer
complies with the FLSA so long as its promised wage rates equal or exceed the statutory
minimum, regardless of whether employees actually receive any compensation, would render
illusory the Act's protections."); Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d
106, 115 (2d Cir. 2013) ("So long as an employee is being paid the minimum wage or more,
FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the
employee also works overtime hours the same week.") (citing United States v. Klinghoffer Bros.
Realty Corp., 285 F.2d 487, 494 (2d Cir. 1960)); Cruz v. AAA Carting & Rubbish Removal,
Inc., 116 F. Supp. 3d 232, 242 (S.D.N.Y. 2015) ("[The p]laintiff claims that because he alleges
that he was paid nothing for hours worked in excessive of 40 hours a week, he was not paid
minimum wage under the FLSA.  However, this argument fails.  While [the p]laintiff may state a
claim for a failure to pay overtime for the hours worked in excess of 40 hours a week, he does
not necessarily state a claim for failure to pay minimum wage for those house, because an
employee cannot state a claim for a minimum age violation unless his average hourly wage falls
below the federal minimum wage.") (emphases in original) (citations & internal quotations
omitted)); see also Moon, 248 F. Supp. 2d at 230 (noting that an employer may agree to
compensate an employee with a monthly salary) (citing 29 C.F.R. §§ 778.109, 778.113(a)).  Yet,
because Plaintiff does not allege or argue that the Defendants' partial failure to pay his promised
flat monthly salary brought his regular hourly rate below the federal statutory minimum wage
(even if this were calculated from the 72 or 74.25 hours per week he actually worked), this is not
a question before the Court on the instant motion.  Even if Plaintiff had briefed such an argument
on the instant motion, his evidence does not show that Defendants failed to pay other employees'

either way, Plaintiff's regular rate exceeded the federal statutory minimum wage of $7.25 per

hour such that he has failed to show with the evidence or argument submitted with the instant

motion that Plaintiff suffered a minimum-wage violation such that this Court could find that

Defendants' other workers were similarly situated to Plaintiff with respect to suffering a

minimum-wage FLSA violation.[9]  See Garcia Ramos v. DNC Food Serv. Corp., 2020 WL

2832776, at *8 (S.D.N.Y. June 1, 2020) ("Thus, the [n]amed [p]laintiffs' declarations do not

establish that they were the victims of a common unlawful policy by [the d]efendants to deny

employees minimum wage, much less that all of the non-management employees were also

subject to such an unlawful policy."); Marcial v. New Hudson Family Rest., Inc., No. 18 Civ.

663 (NSR) (JCM), 2019 WL 1900336, at *7 (S.D.N.Y. Apr. 29, 2019) ("Plaintiffs cannot show

---

wages with two possible but materially different exceptions.  First, Plaintiff claims that as of
September 15, 2019, waitress Ms. Wu Fan told him that Defendants had not yet paid her for two
to three days of work.  See Han Aff. II ¶ 55.  Plaintiff's attestation fails to state knowledge
regarding whether Defendants later paid Ms. Wu Fan when her employment ended, as evidence
regarding fry wok chef Mr. Wang showed was his experience with the exception of two unpaid
hours.  Compare id., with ECF No. 30-3 ¶¶ 4, 10, 14 (Mr. Wang testifying that on the date his
employment with Defendants ended, they paid him four days' worth of unpaid wages, although
they failed to pay him for 2 hours he spent at the Restaurant on that final day).  Accordingly,
even if Plaintiff had presented a discernible argument about a minimum wage claim based on
unpaid wages in connection with the instant motion, the Court would not find his evidence
pertaining to Ms. Wu Fan and Mr. Wang sufficient to meet even the low bar for showing that
Plaintiff and Ms. Wu Fan, let alone a broader group of potential plaintiffs, were similarly situated
with respect to a common wage policy of failing to pay promised wages altogether for the
purposes of conditional certification.

[9] Although it is true that the New York minimum wage was higher than the federal one at
relevant times, a plaintiff's regular rate under NYLL is calculated differently than under the
FLSA and, "[t]o bring state-law claims on behalf of others against Defendants, Plaintiff must
seek class certification pursuant to Rule 23."  Hanming Feng v. Soy Sauce LLC, No. 15 Civ.
3058 (ENV) (LB), 2016 WL 1070813, at *4 (E.D.N.Y. Mar. 14, 2016); see 12 N.Y.C.R.R. §
146-3.5(b) (providing that under the NYLL, an employee's regular rate of pay is calculated "by
dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number
of hours worked by that employee during the work week"); Shahriar v. Smith & Wollensky Rest.
Grp., Inc., 659 F.3d 234, 247 (2d Cir. 2011) (holding that collective actions under the FLSA
encompass only FLSA violations).

that they are entitled to conditional certification for their FLSA minimum wage claim" when they were paid above the federal minimum wage.); Jeong Woo Kim, 985 F. Supp. 2d at 447. Based on this same analysis, Plaintiffs' motion suggests that the regular rates of many of Defendants' other employees met the federal minimum wage as well.  See supra, Section I.c.ii (summarizing Plaintiff's attestations that Defendants paid Mr. Lin, Mr. Wang, Mr. Zhang and Ms. Dae Ji monthly salaries of $3,000, $3,800, $2,800 and $2,800, respectively, which give rise to regular rates ranging from $8.97 to $12.18 per hour even assuming 72 hours worked per week and much higher assuming an agreement that the flat monthly compensation was for no more than 40 hours per week).

     c.  **Plaintiff Has Shown That Other Kitchen Workers Were Similarly Situated To Him In Terms Of Defendants' Alleged Violation Of FLSA Overtime Requirements**

     Conditional certification is possible with respect to Plaintiff's FLSA overtime claims. See Sanchez, 2013 WL 208909, at *2 (granting conditional certification for overtime claims but denying as to minimum-wage claims).  For example, to the extent Plaintiff alleges that Defendants paid him a flat monthly salary but did not pay him one-and-a-half times his regular rate for each hour worked in excess of 40 in a week, Plaintiff sufficiently alleges that he suffered a violation of federal overtime wage law.[10]  See Yi Mei Ke v. JR Sushi 2 Inc., No. 19 Civ. 7332 (PAE) (BCM), 2021 WL 148751, at *7 (S.D.N.Y. Jan. 15, 2021) (noting that the plaintiff's theory of case was that she did not agree that her flat monthly compensation would include time-

---

[10] The Court acknowledges that Plaintiff's claim is vehemently denied by Defendants in that as Plaintiff was an executive or skilled employee in receipt of a high salary and with significant managerial responsibilities, Plaintiff was not entitled to overtime.  See ECF No. 29.  As the Court explained, supra, Section III.a, the Court cannot consider such evidence on this limited motion practice.  Whether the Court would confirm the certification at a later date as compared to considering this conditional certification is a separate question.

and-a-half pay for overtime work).  Plaintiff has made the modest factual showing necessary to
show that Defendants had a policy that may have resulted in similarly situated Kitchen Workers
such as chefs, cooks, miscellaneous preparers, food preparers and meat cutters suffering FLSA
overtime violations during the Collective Action Period.

      Plaintiff provides sufficient evidence to show that chef and cook Kitchen Workers are
similarly situated to him with respect to alleged overtime violations.  The Court credits
Plaintiff's attestations that he learned about the flat monthly salaries received by cooks and chefs
Mr. Lin, Mr. Wang and Mr. Zhang through either conversations he had with them or, in the case
of Mr. Zhang, from a conversation that Plaintiff had with Defendant Zhang.  The Court may
consider such indirect evidence.  See id. ("[C]ourts regularly rely on plaintiffs' affidavits and
hearsay statements in determining the propriety of sending notice.") (citation omitted); Quiang
Lu v. Purple Sushi, Inc., 447 F. Supp. 3d 89, 95 (S.D.N.Y. 2020) (crediting the plaintiff's
attestation that he "befriended some co-workers and . . . talked to them about their work").
Plaintiff's statement that he observed Mr. Lin working the same schedule as Plaintiff is
comparatively strong evidence given that Plaintiff's and Mr. Lin's employment overlapped for
one month, even though Plaintiff states that they may have had different days off during that
period such that their shifts were not coextensive.  This evidence supports a conclusion that chef
Mr. Lin was similarly situated to Plaintiff insofar as Defendants paid him a flat monthly salary
without regard to overtime premium for work performed in excess of 40 hours per week.  See
Juarez v. 449 Restaurant, Inc., 29 F. Supp. 3d 363, 372 (S.D.N.Y. 2014) (noting that in FLSA
cases with modest class composition, it is easier to impute a plaintiff's own experience to other
employees) (citation & internal quotation omitted).  Although Mr. Wang's and Mr. Zhang's
employment overlapped with Plaintiff's for much shorter periods of time such that Plaintiff had

less opportunity to observe their schedules as he did with Mr. Lin, the Court infers that other

chefs and cooks such as Mr. Wang and Mr. Zhang were similarly situated to Plaintiff and Mr.

Lin with respect to Defendants' pay practices.  See id.  As a result, sending a notice to other

cooks and chefs employed by Defendants at the Restaurant is appropriate to determine whether

there were other cooks and chefs who experienced overtime violations.[11]

       Plaintiff also sufficiently shows that Kitchen Workers such as miscellaneous preparers,

dishwashers, food preparers and meat cutters are similarly situated to him with respect to alleged

overtime violations.  Plaintiff testifies that miscellaneous preparer Ms. Dae Jin received a flat

monthly salary by virtue of their conversation about this subject and Plaintiff's descriptions of

Ms. Dae Jin.  Plaintiff's attestations are weaker with respect to his knowledge about Ms. Dae Ji's

schedule but enough to meet his modest burden of proof at the conditional-certification stage.

For example, Plaintiff does not state the period of time that his and Ms. Dae Ji's schedules

overlapped other than to say that it was from an unstated date in September 2019 through

September 14, 2019.  Assuming that this means two weeks (although given evidence about the

days-long employment of Mr. Shi Fu and Mr. "Doe" commencing after the Restaurant's

September 11, 2019, opening during the same period and Plaintiff's attestation that there was

---

[11] It is for any chef or cook who receives Notice to determine in good faith whether they believe themselves to be aggrieved by an FLSA overtime violation such that they will seek joinder.  For example, Mr. Wang's affidavit attests that although Defendants would have had him work 6 days and 72 hours in a week had he been employed that long, he, in fact, worked one partial shift, three twelve-hour shifts, and one two-hour shift before his employment ended.  See ECF No. 30-3, passim (Mr. Wang stating that he was hired on September 12, 2019, and began work on that same date at an unstated hour, worked three 12-hour shifts on September 13, 14 and 15, 2019, and worked two hours on September 16, 2019, before his employment ended).  At this stage the Court takes no position regarding whether properly pleaded allegations could sustain a claim that Mr. Wang suffered an overtime violation.  See Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (finding that at the preliminary certification stage, "the focus of th[e] inquiry [] is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated'").

extremely high and frequent turnover among such workers, the Court could infer it was shorter), it may not have been possible for Plaintiff to observe that Ms. Dae Ji worked six days a week given that they had different days off, but Plaintiff at least had the opportunity to observe firsthand that Ms. Dae Ji worked more than 40 hours a week for what she allegedly told him was a flat salary.  This in turn sufficiently alleges that Ms. Dae Ji may have been entitled to an overtime premium but did not receive it.  The Court's analysis is the same for Plaintiff's sufficient proof that dishwasher Mr. Wang Shi may have suffered an overtime violation, given that Plaintiff offers identifying information about Mr. Wang Shi and an adequate explanation for his knowledge of Mr. Wang Shi's flat monthly salary and weekly performance of more than 40 hours of work.  See Han Aff. I ¶¶ 39-46.

Plaintiff's evidence about the food preparer Mr. Shi Fu and the meat cutter Mr. "Doe" is much weaker and, without the proof regarding Ms. Dae Ji and Mr. Wang Shi, likely would not pass muster to meet the modest factual showing standard here.  For example, Plaintiff does not have knowledge about food preparer Mr. Shi Fu's salary and states that Mr. Shi Fu began work on September 16, 2019, the day that Plaintiff's employment ended.  As a result, in addition to not offering pay information about Mr. Shi Fu, Plaintiff did not have any meaningful occasion to observe Mr. Shi Fu's schedule from which to claim that it required six days a week of work with twelve-hour shifts.  Plaintiff's attestations about meat cutter Mr. "Doe" are equally scant.  In addition to lacking any identifying information about Mr. "Doe" to corroborate any pay or schedule information Plaintiff might have provided about him, Plaintiff does not claim to know what salary Defendants paid Mr. "Doe."  Further, insofar as Plaintiff says he worked with Mr. "Doe" at most three days, Plaintiff has not shown a reliable basis to know that Mr. "Doe" worked more than 40 hours a week for the unspecified pay he received.  Yet, Plaintiff's

conclusory or insufficient but not contradictory statements as to Mr. Shi Fu and Mr. "Doe" are

not fatal defects because, "even if the Court were to disregard [them]," Lujan v. Cabana Mgmt.

Inc., No. 10 Civ. 755 (ILG) (RLM), 2011 WL 317984, at *8 (E.D.N.Y. Feb. 1, 2011), Plaintiff's

submissions about Ms. Dae Ji and Mr. Wang Shi contain sufficient evidence of potential FLSA

overtime violations common to Kitchen Workers with similar duties.  See In re Initial Public

Offerings Sec. Litig., 471 F. 3d 24, 41 (2d Cir. 2006) (finding that a court must "assess all of the

relevant evidence admitted at the class certification stage" to determine whether requirements

have been met, just as it would resolve "any threshold prerequisite for continuing a lawsuit");

Marini v. Adamo, 995 F. Supp. 2d 155, 170 n.10 (E.D.N.Y. 2014) (finding that "even if the

[c]ourt did not consider [the plaintiff's] past recollection recorded from [an] exhibit or any

testimony regarding the exhibit, the [c]ourt would still conclude that [the plaintiff's] testimony"

regarding an issue was credible based upon, among other things, other evidence in the case);

United States v. Antoine, 796 F. Supp. 2d 417, 421 (E.D.N.Y. 2011) (finding that "even if the

court were to disregard" allegedly unreliable evidence, the existence of probable cause had been

shown "based on the other evidence presented").[12]

    In sum, Plaintiff has carried his burden of demonstrating a "modest factual showing" that

Defendants' other Kitchen Workers at the Restaurant—including chefs, cooks, miscellaneous

preparers, food preparers and dishwashers—are similarly situated to him in terms of their general

duties and as possible victims of a common policy or plan to not pay overtime premiums that

violated the FLSA.  See Mei Rong Du v. Dingxiang Inc., No. 19 Civ. 11924 (JPO) (BCM), 2020

---

[12] As the Court discussed above with respect to Mr. Wang, it is for any Kitchen Worker who receives Notice, including Mr. Shi Fu and Mr. "Doe," to determine in good faith whether they believe themselves to be aggrieved by an FLSA overtime violation such that they will seek joinder.  For example, Plaintiff's statements regarding Mr. Shi Fu and Mr. "Doe" are that they worked at least one day and three days, respectively.  See Han Aff. I ¶¶ 56-65.

WL 7404984, at *6 (S.D.N.Y. Dec. 17, 2020) (finding a sworn declaration containing information learned from seven other employees, identified by name or nickname, about the wages they were paid and the hours they worked, sufficient to satisfy plaintiff's "modest showing"); Marcial, 2019 WL 1900336, at *7 (finding two food preparers' and one dishwasher's declarations sufficient to meet modest factual showing that the defendants had a policy that resulted in the plaintiff and those similarly situated not receiving due overtime pay, and granting motion for conditional certification).  The motion for conditional certification as to the Kitchen Workers and alleged overtime violations is granted.

### d.  Plaintiff Has Not Shown That Wait Staff Were Similarly Situated To Him In Terms Of Defendants' Alleged Violation Of FLSA Overtime Requirements

Plaintiff's proffers regarding Defendants' Wait Staff are insufficient to grant conditional certification or to warrant sending Notice to them because they are based on conclusory allegations that do not meet even the modest factual showing required for this motion.  For example, although Plaintiff states that he knew that the Wait Staff worked twelve hour shifts for all five days of the period spanning September 11, 2019, through September 15, 2019, he contradictorily attests that he knew this because "everyone working in the dining room" would work twelve-hour shifts "even if some of them work[ed] only a few days."  Compare Han Aff. I ¶¶ 71, 77, 83, with Han Aff. II ¶¶ 53-57.  As to Ms. Zhong Liu, one of the three individuals identified by Plaintiff as one of Defendants' Wait Staff, Plaintiff attests that as the sister of one of the Defendants, she was afforded a more flexible schedule than others, which further undermines Plaintiff's claimed knowledge that the Wait Staff had an overtime schedule similar to his.  See Han Aff. I ¶ 81.  Plaintiff alternatively suggests that the Wait Staff had been scheduled to work six days a week such that they would have done so had their employment extended beyond September 15, 2019, but Plaintiff does not explain how he knew the Wait

Staff's intended schedules.  See Han Aff. II ¶¶ 53-57.  Taking this evidence together, Plaintiff

has not shown that Defendants' Wait Staff were similarly situated to him in terms of working

over 40 hours in a given week.  See Kwan v. Sahara Dreams Co. II Inc., No. 17 Civ. 4058 (RA),

2021 WL 2843100, at *4 (S.D.N.Y. July 7, 2021) (declining to conditionally certify an FLSA

collective for hotel room attendants that allegedly suffered overtime violations where the

plaintiff floor manager did not provide non-conclusory assertions about their performance of

work beyond 40 hours per week); Zeledon v. Dimi Gyro LLC, No. 15 Civ. 7301 (TPG) (DF),

2016 WL 6561404, at *11-12 (S.D.N.Y. Oct. 13, 2016) (declining to certify where, among other

things, the plaintiffs failed to define other employees' schedules or pay information); Ikikhueme

v. CuliniArt, Inc., No. Civ. 293 (JMF), 2013 EL 2395020, at *2 (S.D.N.Y. June 3, 2013)

(declining to consider the plaintiff's "unsupported assertions" regarding other employees).  Even

if Plaintiff's proof regarding the Wait Staff's hours were sufficient, his statements regarding their

pay are flawed and inadequate.  Of the three individuals comprising Defendants' Wait Staff,

Plaintiff only claims to have personal knowledge about what Defendants agreed to pay one of

them, Ms. Wu Fan.  See Kwan, 2021 WL 2843100, at *4 (declining to conditionally certify an

FLSA collective for hotel room attendants that allegedly suffered overtime violations where

"[w]ith one exception, [the p]laintiff's affidavit makes no assertions about the crucial issue of

compensation" while also failing to show work beyond 40 hours).  According to Plaintiff, Ms.

Wu Fan told him her pay rate in conversation but in one affidavit he says that Ms. Wu Fan told

him it was a flat daily rate of $100 and in another that it was $110.  Compare Han Aff. I ¶¶ 72-

73, with Han Aff. II ¶ 55.  Even if the Court were to resolve the discrepancy one way or another

to infer that waiter Mr. Wen or waitress Zhong Liu—for whom Plaintiff claims to know no

compensation information---were similarly compensated, without a "modest factual showing"

that the Wait Staff worked more than 40 hours in the week at issue, this would have little utility. See Han Aff. I ¶¶ 74-85.

In addition, according to Plaintiff, the Wait Staff may have been tipped employees who were paid daily and not, as Plaintiff and other Kitchen Workers were, at a flat monthly rate. See Han Aff. I ¶ 16 (Plaintiff referencing "both tipped and non-tipped employees"); ECF No. 23 at 17 (stating that the Kitchen Workers were non-tipped and the Wait Staff was tipped). Although courts can conditionally certify FLSA collectives covering both tipped and non-tipped employees, non-tipped plaintiffs must show that a common employer policy applied to the tipped employees they are trying to include. See Canelas v. Frank & Nino's Pizza Corp., No. 19 Civ. 6105 (VEC), 2020 WL 8996702, at *2 (S.D.N.Y. May 11, 2020) (denying conditional collective certification as to tipped employees where tipped employees were paid an hourly rate and non-tipped plaintiff was paid a weekly one, in the absence of more detailed information with respect to whether the tipped employees' hourly rate was meant as a base or fixed amount); Joshi v. Flagship S. B Amsterdam NY, LLC, No. 17 Civ. 5785 (ALC) (SB), 2018 WL 1135566, at *4 (S.D.N.Y. Mar. 1, 2018) (finding that a tipped waiter plaintiff was not "similarly situated to food preparers and cooks (i.e., non-tipped employees)" because the plaintiff had not established "that food preparers and cooks worked similar hours and were paid under a similar policy as wait staff"); Apolinar v. Fusha 311 West Inc., No. 15 Civ. 196 (VEC), 2016 WL 11710468, at *1 (S.D.N.Y. Apr. 14, 2016) (denying kitchen worker plaintiffs' motion for conditional certification of a collective that included tipped employees where evidence showed that the tipped employees were subject to different pay practices than the non-tipped plaintiffs). Here, other than stating that Ms. Wu Fan received a daily rate of pay that was either $100 or $110, Plaintiff does not provide additional pay details; for example, whether Ms. Wu Fan's $100 or $110 daily pay was a

24

base rate (and, if so, how it was adjusted to take into account Ms. Wu Fan's hours or tips) or a

flat rate (and, if so, whether Defendants and Ms. Wu Fan had agreed that it would cover a certain

number of hours of work).

In sum, Plaintiff has not carried his burden of demonstrating a "modest factual showing"

that Defendants' Wait Staff were similarly situated to him as possible victims of a common

policy or plan that violated the FLSA's overtime requirements.  See Joshi, 2018 WL 1135566, at

*4 (finding vague descriptions of conversations with wait staff about "work and pay" insufficient

to show that they worked more than 40 hours without proper compensation for the purposes of

conditional certification burden).  The motion for conditional certification as to the Wait Staff

and alleged overtime violations is denied.

> **e.  The Court So-Orders An Order, Notice And Consent Form In Connection
> With The Partial Conditional Certification Granted**

In connection with the Court's conditional certification of an FLSA collective for Kitchen

Workers who, like Plaintiff, may have been victims of overtime violations, the parties must

follow the following instructions using the Court-authorized Notice and Consent Form attached

to this Order as Exhibit A.  Although Plaintiff has proposed content for these instructions, notice

and consent form which the Court largely adopts, see ECF No. 22-3 (Plaintiff's proposed order);

ECF No. 22-2 (Plaintiff's proposed notice and consent form), the Court below discusses certain

necessary modifications made sua sponte or in response to Defendants' objections.

The Court has modified the Notice and Consent Form so that potential plaintiffs must

send their opt-in forms to the Court and not Plaintiff's counsel; this procedure avoids potential

disputes regarding the timeliness of opt-ins and reinforces that opt-in plaintiffs may seek their

own counsel and are not required to retain Plaintiff's attorneys.  See Gomez v. Terri Vegetarian

LLC, No. 17 Civ. 213 (JMF), 2017 WL 2628880, at *3 (S.D.N.Y. June 16, 2017) ("To avoid

disputes over timeliness, potential opt-in plaintiffs shall be required to send their consent forms directly to the [c]lerk of [c]ourt rather than to [p]laintiff's counsel."); Brabham v. Mega Tempering & Glass Corp., No. 13 Civ. 54 (JG), 2013 WL 3357722, at *7 (E.D.N.Y. July 3, 2013) (ordering that opt-in forms be returned to the court as the alternative approach could "discourage[ ] potential opt-in plaintiffs from seeking outside counsel" and delay tolling of the statute of limitations).  For similar reasons, the Court does not allow Plaintiff's proposed creation of a page on his counsel's Web site for potential plaintiffs to electronically submit a Consent Form.  See Sharma v. Burberry Ltd., 52 F. Supp. 3d 443, 464 (E.D.N.Y. 2014) (denying the plaintiffs' request to publish notice on a Web site so that potential plaintiffs could submit consent forms online "given the [c]ourt's finding . . . that consent forms should be returned to the [c]lerk of the [c]ourt"); McBeth v. Gabrielli Truck Sales, Ltd., 768 F. Supp. 2d 396, 401 (E.D.N.Y. 2011) (declining to include even the plaintiffs' counsel's Web site address in court-authorized notice because it was superfluous in light of all other notice and contact information provided).

Defendants insist that their counsel's contact information should be included in the Notice.  Plaintiff argues that this would be confusing and potentially invite ethical problems. The Court disagrees and finds such information to be provided in the Notice so as to give putative collective members full counsel information.  See She Jian Guo v. Tommy's Sushi Inc., No. 14 Civ. 3964 (PAE), 2014 WL 5314822, at *4 (S.D.N.Y. Oct. 16, 2014) (collecting cases).

The Court overrules Defendants' objection that Plaintiff's Proposed Notice should have different language with respect to the fact that Plaintiffs' attorneys' fees will be deducted from recovery by the collective.  See ECF No. 29.  The language in both Plaintiff's Proposed Notice and the Court's so-ordered version is clear on that point, and Defendants have not proposed better alternative text.  See ECF No. 22-2 ¶ 9; Exh. A.  The Court also rejects Defendants'

objection that the Notice should differently explain that opt-in plaintiffs will have to provide discovery or testify, for the same reasons.  See ECF No. 22-2 ¶ 4; Exh. A.

The Order omits language requiring Defendants to provide information about how they paid potential plaintiffs in connection with the Notice.  Such discovery would be more properly requested of Defendants via discovery as to opt in Plaintiffs, if any.

The Court also amends the time for opt-in plaintiffs to join so that it is sixty (60) days instead of the ninety (90) days that Plaintiff requested.  Courts often grant 60-day opt-in periods, and it is adequate here, where the record suggests that the proposed collective is modest in number.  See Quiang Lu, 447 F. Supp. 3d at 98 (collecting cases).  Although equitable tolling is not routinely granted, the Court finds that it is appropriate here given Plaintiff's argument that it would be unfair to count time against potential plaintiffs for the period the conditional certification motion was pending (some of which time is attributable to Defendants' granted request for an extension of time to file their opposition) and COVID-19 pandemic issues, see ECF No. 28-30, particularly because Defendants' opposition consists of the conclusory statement that they do not find such circumstances extraordinary, see ECF No. 29 at 16.  Accordingly, the limitations period will be tolled from the date Plaintiff made his conditional certification motion until sixty (60) days from the date of this Order.

In light of the foregoing, the Court hereby Orders that Plaintiff's conditional certification motion for an FLSA collective is granted as to Kitchen Workers and alleged overtime violations upon the following terms:

1.    The collective action notice and consent to joinder form entitled "Court Authorized Notice of 29 U.S.C. § 216(b) Collective Action" ("Notice and Consent Form"), modified from the proposed submission at ECF No. 22-2 and attached to this Order as Exhibit "A," is hereby approved for dissemination to potential plaintiffs; and

2.    The collective class of potential plaintiffs in this matter that is conditionally

certified shall consist of all current and former non-exempt and non-managerial Kitchen Workers such as chefs, cooks, miscellaneous preparers, food preparers and dishwashers employed at any time at Shang Kitchen, located at 3810 Prince Street, Flushing, NY 11354, since May 19, 2017 (three years prior to the filing of the Complaint), to the date of this Order; and

     3.     Defendants shall provide to Plaintiff's counsel, to the extent available, the following information for all potential plaintiffs as identified in ¶ 2, supra: unique numerical identifier; full names (first name, last name, name in native language and any known nickname); sex; position title; last known mailing address with apartment number (if applicable), city, state and zip code; start date of employment; and end date of employment. This information shall be supplied to Plaintiff's counsel within thirty (30) days of this Order digitally in a Microsoft Excel spreadsheet with an affidavit from Defendants certifying that it is complete from their records and the parties will treat it as confidential; and

     4.     Plaintiff's counsel shall mail the Notice and Consent Form to all potential plaintiffs no later than thirty (30) days from their receipt of Defendants' information or thirty-six (36) days from the date of this Order (whichever is later) and shall cause a copy of the Notice and Consent Form to be mailed by first class to potential plaintiffs in relevant languages, including English and Chinese. Plaintiff's counsel may also mail a second, reminder Notice and Consent Form to potential plaintiffs who have not submitted a Consent Form by the thirtieth (30th) day from the date of Plaintiff's first mailing. In the event Plaintiff's counsel elects to send such a reminder Notice and Consent Form, it must state the date of Plaintiff's first mailing and state that the opt-in deadline is sixty (60) days from that date as discussed in ¶ 8, infra; and

     5.     Plaintiff is to provide a certified translation of the Chinese-language version of the Notice and Consent Form to Defendants within ten (10) days of this Order and Defendants must raise any objection to that translation within ten (10) days of receipt or objections shall be waived. In the event Defendants raise a timely objection, the parties must raise the matter with this Court within ten (10) days of that date. In the event a dispute is raised with the Court regarding the Chinese-language translation of the Notice, all other deadlines set forth in this Order shall be stayed pending the Court's resolution of that dispute and an appropriate application should be made for the Court to consider enlarging the schedule in connection with its resolution of that dispute; and

     6.     In the event Defendants fail to furnish required discovery as detailed herein, or if more than 20% of mailed Notices are returned to Plaintiff's counsel as undeliverable with no forwarding address, Plaintiff may make an application to the Court to permit Plaintiff to also disseminate the Notice and Consent Form or an abbreviated version to potential plaintiffs via email, text message, social media, newspaper publication and/or some combination of these. In such event, Plaintiff is to file his motion with a proposed supplemental dissemination and any abbreviated form of the Notice within ten (10) days of the trigger event. In the event Plaintiff makes such an application, the deadlines set forth in this Order shall be stayed pending the Court's resolution of that application and appropriate request should be made for the Court to consider enlarging the schedule in connection with its resolution of that application; and

     7.     Defendants shall post a copy of the Notice in both English and Chinese in a

conspicuous and unobstructed location at Shang Kitchen, 3810 Prince Street, Flushing, New York 11354, where it is likely to be seen by all currently employed potential plaintiffs, and the notice shall remain posted throughout the opt-in period; and

8.      Potential plaintiffs must mail or otherwise deliver their Consent Form to join the action with the Court within sixty (60) days from when notice is mailed; and

9.      The statute of limitations applicable to this action shall be equitably tolled from December 4, 2020, through sixty (60) days after the first mailing of the notice (and not from the date of the second reminder notice).

## IV.   Conclusion

For the foregoing reasons, Plaintiff's motion for conditional certification of an FLSA

collective is granted in part and denied in part.  Plaintiff's motion for conditional certification of

an FLSA collective is:

- denied with respect to alleged minimum wage violations, see Section III.b;

- denied with respect to alleged overtime violations suffered by Wait Staff, see Section III.d; and

- granted with respect to alleged overtime violations suffered by Kitchen Workers, and the parties are directed to follow the Court's instructions and use the Court-authorized Notice and Consent Form, see Section III.c; Section III.d; Exh. A.

Dated:  Brooklyn, New York
        August 24, 2021

*Vera M. Scanlon*
       VERA M. SCANLON
       United States Magistrate Judge