UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
BAIGUANG HAN, *on his own behalf and on
behalf of others similarly situated*,

                        Plaintiff,             **MEMORANDUM & ORDER**
                                               20-CV-2266 (PKC) (VMS)

        - against -

SHANG NOODLE HOUSE, INC. d/b/a Shang
Kitchen, ZHI ZHONG LIU a/k/a Zhizhong Liu,
and SUMMER ZHANG a/k/a Summer Liu,

                        Defendants.
--------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

        Plaintiff Baiguang Han brings this action against Defendants Shang Noodle House ("Shang

Kitchen"), Zhi Zhong Liu, and Summer Zhang (collectively, "Defendants") for violations of the

Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and "spread of hours" and

overtime wage orders of the New York Commissioner of Labor, codified at N.Y. Comp. Codes R.

& Regs. tit. 12, § 146-1.6.  Plaintiff further claims that Defendants retaliated against him for taking

legal action under the FLSA and NYLL.  Currently before the Court is Defendants' partial motion

to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Defendants argue that

all of the claims against Defendant Liu must be dismissed because Liu was not Plaintiff's

"employer" under the FLSA or NYLL, and that Plaintiff's retaliation claims fail as a matter of law.

Defendants are wrong on both counts, as explained in detail below, and thus their motion is denied

in its entirety.

# BACKGROUND

I.    **Factual Background[1]**

    A.    **Plaintiff's Employment at Shang Kitchen**

Plaintiff was hired to work as a chef at Shang Kitchen beginning on or around August 15, 2019.  (Consolidated Complaint ("Compl."), Dkt. 44, ¶ 21.)  Defendants Liu and Zhang are "officers directors, managers and/or majority shareholders or owners of [Shang Kitchen] and [are] among the ten largest shareholders."  (*Id*. ¶ 16.)  Defendant Liu is "known to [Plaintiff]" as the "boss" and "a manager at [S]hang Kitchen."  (*Id*. ¶ 17.)  Defendant Liu, "along with Summer [Zhang], originally hired [Plaintiff] to work at Shang Kitchen, told [Plaintiff] what his salary would be, supervised [Plaintiff] in his work at Shang Kitchen, and gave [Plaintiff] and other Shang Kitchen employees their pay."  (*Id*.)  Defendant Liu "is known to have had the power to hire and fire employees, to have supervised and controlled employees' work schedules and conditions of employment, to have determined employees' rates and methods of payment, and . . . maintained employee records for Shang Kitchen."  (*Id*.)

"At the time he was hired, Summer [Zhang] had [Plaintiff] place his New York State driver license on a metal table in Shang Kitchen, and took a picture of it."  (*Id*. ¶ 22.)  Plaintiff worked at Shang kitchen for 12 hours per day six days per week, and an additional 30 minutes four or five days per week.  (*Id*. ¶ 26.)  Plaintiff's primary work responsibilities included "preparing dishes, including preparing raw and semi-prepared ingredients for use in dishes, cooking dishes, and preparing sauces."  (*Id*. ¶ 28.)  Defendants Liu and Zhang told Plaintiff he would be paid $6,000

---

[1] The following facts are taken from Plaintiff's Consolidated Complaint.  (*See* Dkt. 44.) The Court "accept[s] as true all factual allegations" in the Consolidated Complaint "and draw[s] from them all reasonable inferences," but does not "credit conclusory allegations or legal conclusions couched as factual allegations."  *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020) (internal quotation marks and ellipses omitted).

per month but did not explain how this amount accounted for his regular rate of pay, an overtime rate for hours worked in excess of 40 per week, or spread-of-hours pay for days during which he worked over 10 hours. (*Id*. ¶¶ 29–33.)  Plaintiff left his employment with Defendants on or around September 15, 2019. (*Id*. ¶ 21.)  Plaintiff was paid $3,000 for the month of August 2019, and "not paid anything for the month of September." (*Id*. ¶¶ 17, 29.)

### B.    Allegations of Post-Employment Retaliation

At 2:22 p.m. on September 22, 2019—one week after Plaintiff left his employment at Shang Kitchen—Plaintiff received a message via WeChat[2] from Defendant Zhang containing the photo of Plaintiff's driver's license that Zhang had taken when Plaintiff was hired, and a threat that Zhang would "report [Plaintiff] to ICE[3] for working without authorization." (*Id*. ¶ 41.) Zhang also called Plaintiff "arrogant," and "pathetic" for "not being literate in English, and threatened that 'God would not let [him] free.'" (*Id*.)  Plaintiff replied that Zhang had "hit him on the job[.]" (*Id*. ¶ 42.)  Plaintiff also "asked for his unpaid salary." (*Id*.)  In response, Defendant Zhang "said she would 'go to the government first,' and threatened [Plaintiff] with a defamation lawsuit." (*Id*. ¶ 43.)  At 8:38 p.m. that evening, Plaintiff received another message from Zhang's WeChat account stating that the messages had not been sent by her. (*Id*. ¶ 44.)

After leaving his employment at Shang Kitchen, Plaintiff was unable to find work until December 2019, when he got a job as a stir-fry cook in a Chinese restaurant in Atlanta, Georgia, earning $3,800 to $4,000 per month. (*Id*. ¶ 49.)  Plaintiff was terminated in February 2020 from that job due to the COVID-19 pandemic (*id*. ¶ 50), and filed this lawsuit against Defendants for

---

[2] WeChat is an instant messaging, social media, and mobile payment app. *See* WeChat.com.

[3] The Court assumes that "ICE" is a reference to the United States Immigration & Customs Enforcement agency.

alleged wage violations under the FLSA and NYLL three months later on May 19, 2020 (*id*. ¶ 45). Plaintiff remained unemployed until October 2020, when he found work as a stir-fry cook in a Chinese restaurant in Oklahoma City, Oklahoma, where he worked until December 30, 2020, making $6,000 per month.[4]  (*Id*. ¶¶ 51–52.)  Plaintiff was then unemployed again until January 29, 2021, when he found work at another Chinese restaurant in Oklahoma, earning $6,000 per month. (*Id*. ¶¶ 53–54.)

On or around January 8, 2021—before securing his second job in Oklahoma—Plaintiff saw a "slide show" video posted on TikTok[5] consisting of four slides: "(1) a photograph of [Plaintiff's] face and shoulders that he used as his WeChat profile picture; (2) the photograph of [Plaintiff's] New York State driver license that [Defendant] Summer [Zhang] had taken [when he was hired]; (3) his WeChat profile picture again; and (4) the photograph of his New York State driver license again."  (*Id*. ¶ 46.)  Each slide "was overlaid" with text "in red Chinese characters" that translated to: "Whoever owns restaurants in the United States, please do not hire this person.  He worked for a couple of days, found an excuse to get his pay, and then sued under the employment law, with one Flushing attorney to cheat."  (*Id*. ¶ 47.)  The video was also posted in a WeChat group message by a user called "Small Bee."  (*Id*. ¶ 48.)  The group message was titled "OKC Chinese Non-Profit Group,"[6] and the video was seen by Chinese restaurant operators and employers, some of whom commented on the video.  (*Id*.)

---

[4] The Complaint does not explain why Plaintiff left his job in December 2020.  (*See* Compl., Dkt. 44, ¶ 52.)

[5] TikTok is a video-focused social networking app that allows users to share or post short-form videos.  *See* TikTok.com.

[6] Plaintiff believes this to be a "group that Chinese restaurant owners use to share information."  (Compl., Dkt. 44, ¶ 48.)

Plaintiff filed his second lawsuit against Defendants alleging unlawful retaliation on July 5, 2021.  Soon after, on or about July 11, 2021, Plaintiff was "constructively discharged" from his job in Oklahoma City due to "his employer's maintenance of a hostile and abusive work environment."  (*Id.* ¶ 54.)  That hostile environment began when Plaintiff's employer saw the video, and "denounced [Plaintiff] as a liar and untrustworthy in front of his coworkers."  (*Id.*)

The TikTok video has also made Plaintiff's former co-workers at Shang Kitchen "hesitant" to opt into the collective FLSA wage-and-hour lawsuit because they "fear suffering similar repercussions as [Plaintiff]."  (*Id.* ¶ 55.)

## II.   Procedural History

Plaintiff commenced this action on May 19, 2020, as a putative collective action against Defendants, alleging minimum and overtime wage violations under the FLSA and the NYLL, violations of the NYLL's wage notice and wage statement provisions, and violations of NYLL's "spread of hours" provisions and overtime wage orders of the New York Commissioner of Labor. (*See* Dkt. 1, at 2.)  Defendants filed their answer on October 12, 2020.  (*See* Dkt. 17.)  Plaintiff filed a motion to certify this lawsuit as a collective action under the FLSA on December 4, 2020. (Dkt. 21.)  Defendants opposed certification in a memorandum dated January 22, 2021.  (Dkts. 28, 29.)  On January 30, 2021, Plaintiff sought leave to file a reply memorandum in support of his motion to certify (Dkt. 30), which included as an attachment a January 27, 2021 affidavit by Plaintiff.  (Affidavit of Baiguang Han in Support of Plaintiff's Motion for Conditional Collective Certification ("Han Aff."), Dkt. 30-2.)  That request was opposed by Defendants in a memorandum filed on February 23, 2021.  (Dkt. 33.)  After appearing before Magistrate Judge Vera M. Scanlon (*see* Dkt. 34), Defendants filed an amended answer with proposed counterclaims on May 25, 2021 (*see* Dkt. 35).  (*See* 09/15/2021 Docket Order (granting Defendants' motion for leave to file amended answer).)  Plaintiff answered on June 25, 2021.  (*See* Dkt. 36.)  On August 24, 2021,

Magistrate Judge Scanlon granted in part and denied in part Plaintiffs Motion to Certify the FLSA Collective Action.  (*See* Dkt. 37.)

On July 5, 2021, Plaintiff commenced a second action in this district, alleging that Defendants engaged in unlawful retaliation against him for engaging in protected activity under the FLSA and the NYLL, *i.e.*, filing the May 2020 lawsuit.  (*See* Complaint, *Han v. Shang Noodle House Inc.*, No. 21-CV-3771 (PKC) (VMS) (E.D.N.Y. July 5, 2021), Dkt 1, ¶¶ 1–2.)  The Court consolidated the two cases on September 13, 2021, and Plaintiff filed a consolidated complaint on September 29, 2021.  (*See* 09/13/2021 Docket Order; Dkt. 44.)

Defendants subsequently filed the present motion to dismiss pursuant to Rule 12(b)(6). The motion is now fully briefed.  For the reasons explained below, the motion is denied in its entirety.

## STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) (quoting *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).  The plausibility standard under Rule 12(b)(6) requires "more than a sheer possibility that a defendant has acted unlawfully," and determining whether a complaint meets this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 678–79).  For purposes of this analysis, the Court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v.*

*Westchester Cnty.*, 3 F.4th 86, 90–91 (2d Cir. 2021) (quoting *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020)).

## DISCUSSION

**I.    Plaintiff Has Plausibly Alleged that Defendant Liu Was His Employer**

### A.    Legal Standard

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015) (quoting 29 U.S.C. § 203(d)).[7]  "When it comes to 'employer' status under the FLSA, control is key."  *Gil v. Pizzarotti, LLC*, No. 19-CV-3497 (MKV), 2021 WL 1178027, at *4 (S.D.N.Y. Mar. 29, 2021) (internal quotation marks omitted).  Yet an individual need not "continuous[ly] monitor[ ] . . . employees, looking over their shoulders at all times, or [exert] any sort of absolute control" to be considered an employer.  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d. Cir. 1999).  "Indeed, '[c]ontrol may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA [or NYLL], since such limitations on control do not diminish [its] significance.'"  *Chica v. Shallu Constr. Corp.*, No. 21-CV-869 (ARR) (SJB), 2022 WL 970744, at * 7 (E.D.N.Y. Mar. 31, 2022) (quoting *Herman*, 172 F.3d at 139).

The Second Circuit uses an "economic reality" test to determine when an individual qualifies as an employer under the FLSA. *Id.* at *35 (citing *Carter v. Dutchess Comty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).  When applying the economic reality test, courts consider whether the alleged employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled

---

[7] NYLL's definition of "employer" is identical to the definition under the FLSA. *Fermin*, 93 F. Supp. 3d at 37 ("Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA.").

employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (internal quotation marks omitted). None of these factors is dispositive; courts weigh the totality of the circumstances to determine whether an individual is an employer under the FLSA. *Herman*, 172 F.3d at 139; *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013).

### B.    Application

The economic reality test weighs in favor of finding that Defendant Liu was Plaintiff's employer. As to the first factor, Plaintiff alleges that he was hired by both Defendants Zhang and Liu, indicating that Liu did in fact have the power to hire employees. (*See* Compl., Dkt. 44, ¶ 17.) Regarding the second factor, Plaintiff alleges that Defendant Liu is a "boss" and "manager" at Shang Kitchen and that both Defendants Zhang and Liu "supervised his work," but Plaintiff does not provide specific examples of Liu's supervision or control over his work schedule or conditions of employment. (*Id.*) As to the third factor, Plaintiff alleges that both Defendants Zhang and Liu "informed him of his salary" and "gave him and other employees their pay." (*Id.*) Finally, regarding the fourth factor, Plaintiff alleges, based on information and belief, that Defendant Liu "maintained employee records for Shang Kitchen." (*Id.*[8]) Plaintiff further alleges that Liu is an "officer[], director[], manager[] and/or majority shareholder[] or owner[] of Shang Kitchen." (*Id.* ¶ 16.)

---

[8] Though that allegation is based on information and belief, it is sufficient here because "information about record-keeping is likely solely within defendants' knowledge." *Chica*, 2022 WL 970744, at *7; *see Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 431–32 (S.D.N.Y. 2014) ("The Second Circuit has explained that the *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant." (internal quotation marks omitted)).

While the Plaintiff's allegations are weakest as to the second factor, no one factor is dispositive under the economic reality test, *see Herman*, 172 F.3d at 139, and his allegations as to the remaining factors are sufficient for the Court to infer that Defendant Liu had formal control over Plaintiff's employment. *See Jaigua v. Kayafas Contracting Co.*, No. 18-CV-1941 (RDJ) (SMG), 2019 WL 1115025, at *6 (E.D.N.Y. Mar. 11, 2019) (noting that while conclusory allegations are insufficient to survive a motion to dismiss, "detailed, elaborate recitations of specific facts are not required"); *see also Severin v. Project OHR, Inc.*, No. 10-CV-9696 (DLC), 2011 WL 3902994, at *6 (S.D.N.Y. Sept. 2, 2011) (finding allegations that an alleged employer "controlled personnel decisions, and had the power to hire and fire, set wages, and otherwise control the terms and conditions of the plaintiffs' employment" were sufficient to survive a motion to dismiss); *Michalek v. Amplify Sports & Entm't LLC*, No. 11-CV-508 (PGG), 2012 WL 2357414, at *3 (S.D.N.Y. June 20, 2012) (finding allegations that an alleged employer "'was the President and Chairman of [the company],' 'had the authority to hire and fire employees,' 'had the authority to supervise employees,' 'controlled employees' schedules,' and 'determined the rate and method of payment for employees'" were sufficient to join a defendant in an FLSA action).

Defendants also argue that the allegations in the Complaint about Defendant Liu are inconsistent with Plaintiff's statements in his January 2021 affidavit, which predates the Consolidated Complaint, and thus are not plausible. (Defendants' Motion to Dismiss ("Def. Mot."), Dkt. 54-1, at 5–6, 16–17; *see also* Han Aff., Dkt. 30-2.) In response, Plaintiff argues that the affidavit falls outside the scope of the Court's 12(b)(6) analysis. (*See* Plaintiff's Memorandum in Opposition to Motion to Dismiss ("Pl. Opp."), Dkt. 56, at 11.) Ordinarily district courts considering a motion to dismiss under Rule 12(b)(6) are "required to look only to the allegations

9

on the face of the complaint." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020).  But courts may also consider

> (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint . . . , (3) documents that, although not incorporated by reference, are 'integral' to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.

*Doroz v. DeIorio's Foods, Inc.*, 437 F. Supp. 3d 140, 149 (N.D.N.Y. 2020) (collecting binding authorities).

The Court will not address whether the affidavit fits into one of the exceptions above because it finds that even if Plaintiff's January 2021 affidavit were considered, his allegations with respect to Defendant Liu are sufficient to survive the motion to dismiss.  The affidavit was filed in this case on January 30, 2021, as an attachment to Plaintiff's motion for leave to file a reply memorandum in support of his Motion for Conditional Collective Certification.  (*See* Han Aff., Dkt. 30-2.)  In the affidavit, Plaintiff states that he and all Shang Kitchen employees were "hired by Defendant Summer [Zhang]" (*id.* ¶¶ 3, 10), and that "all kitchen workers other than the dishwasher were fired by Summer [Zhang]" (*id.* ¶ 22).  Plaintiff also states in the affidavit that "both Summer Zhang and Zhi Zhong Liu determined and approved of payment of Shang Kitchen employees," that "it was . . . Summer Zhang and . . . Zhi Zhong Liu [who] determined and told [Plaintiff his] monthly rate," and that the assignment of work at Shang Kitchen was in the "sole and exclusive control of Summer Zhang . . . and Zhi Zhong Liu." (*Id.* ¶¶ 25–26, 33).  Thus, if the affidavit were considered here, it would weaken Plaintiff's allegations as to the first economic reality factor—whether Defendant Liu had the power to hire and fire the employees—but bolster his allegations as to the second and third factors—whether Defendant Liu supervised and controlled employee work schedules or conditions of employment, and whether Defendant Liu determined the rate and method of payment, respectively.   Considering the totality of the

circumstances and weighing the economic reality factors against the allegations in the Complaint and Plaintiff's January 2021 affidavit, the Court would still infer that Defendant Liu was Plaintiff's employer and thus subject to liability as an employer under the FLSA and NYLL.[9]

For the reasons explained above, the Court finds that Plaintiff has adequately alleged that Liu was Plaintiff's "employer" under the FLSA and NYLL. Accordingly, Defendants' motion to dismiss the claims against Liu for not being Plaintiff's employer is denied.

## II.     Plaintiff Has Pleaded a Plausible Retaliation Claim

### A.     Legal Standard

Under the FLSA, it is "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3). Similarly, under the NYLL, an employer or his or her agent may not "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee [] because such employee has made a complaint . . . [or] because such employee has caused to be instituted . . . a proceeding under or related to this chapter." N.Y. Lab. L. § 215.[10] The requirements for pleading a claim for retaliation

---

[9] Citing *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir. 2003), Defendants also argue that Plaintiff fails to plead facts alleging that Defendant Liu had functional control over Plaintiff. (Defendants' Memorandum of Law in Support of Partial Motion to Dismiss the Consolidated Complaint ("Def. Mem."), Dkt. 54-1, at 19). Having determined that Defendant Liu had formal control over Plaintiff's employment under the economic reality test, there is no need to assess whether Defendant Zheng had functional control over Plaintiff. *See Zheng*, 255 F.3d at 72 ("These particular factors are relevant because, when they weigh in plaintiffs' favor, they indicate that an entity has functional control over workers even in the absence of the formal control measured by the *Carter* factors.").

[10] Defendants argue that to successfully plead a retaliation claim under the NYLL, "'a plaintiff must adequately plead that while employed by the defendant,' 'he or she made a complaint about the employer's violation of New York Labor Law and was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result.'" (Def. Mem., Dkt. 54-1, at 12 (quoting *Laboy v. Office Equip. & Supply Corp.*, No. 15 Civ. 3321 (RA)

under both the FLSA and the NYLL "significantly overlap," and thus are analyzed using the same standard for retaliation under the FLSA. *Salazar v. Bowne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011); *see also Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM) (MMH), 2022 WL 875099, at *12 (E.D.N.Y. Mar. 24, 2022). "FLSA retaliation claims are analyzed under the three-step burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Velasquez v. Yoh Servs., LLC*, 803 F. App'x 515, 517 (2d Cir. 2020) (summary order). A plaintiff alleging retaliation under the FLSA must first establish a *prima facie* case of retaliation by demonstrating "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Id.* (internal quotation marks omitted).

> Once a prima facie case has been established, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the [adverse] employment action. If the defendant meets this burden, the plaintiff must produce sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the [adverse] employment action."

---

(AJP), 2016 WL 5462976, at *7 (E.D.N.Y. Sept. 29, 2016).) That is not true. While the NYLL does cover current employees, courts in this circuit have held that the statute also applies to former employees. *See, e.g.*, *Kreinik v. Showbran Photo, Inc.*, No. 02-CV-1172 (RMB) (DF), 2003 WL 22339268, at *9 (S.D.N.Y. Oct. 14, 2003) (holding that counterclaims filed by an employer against a former employee "could lead a trier of fact to view the counterclaims as an adverse employment action under Section 215 [of the NYLL]"); *Liverpool v. Con-Way, Inc.*, No. 08-CV-4076 (JG) (JO), 2009 WL 1362965, at *12 (E.D.N.Y. May 15, 2009) ("I construe Section 215 to prohibit retaliatory discrimination against former employees."); *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 510 (S.D.N.Y. 2013) ("To leave a discharged employee without remedy for retaliation because of a failure to have complained during employment defeats the salutary purpose of § 215.").

*Calderon v. Mullarkey Realty, LLC*, No. 14-CV-2616 (PKC) (RLM), 2018 WL 2871834, at *15 (E.D.N.Y. June 10, 2018) (quoting *Mullins v. City of New York*, 626 F.3d 47, 53–54 (2d Cir. 2010)).

At the pleading stage, "the Court does not specifically apply the *McDonnell Douglas* burden-shifting test to determine whether [the] [p]laintiff has stated a retaliation claim, but rather generally assesses [the] [p]lausibility of [the] [p]laintiff's claim based on the facts alleged in the Complaint." *Brundidge v. Xerox Corp.*, No. 12-CV-6157, 2014 WL 1323020 (FPG), at *3 (W.D.N.Y. Mar. 31, 2014); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) ("[B]ecause a temporary presumption of discriminatory motivation is created under the first prong of the *McDonnell Douglas* analysis, a plaintiff need only give plausible support to a minimal inference of discriminatory motivation." (internal quotation marks omitted)).

### B.     Application

It is undisputed that Plaintiff has sufficiently alleged that he engaged in protected activity by filing his wage-and-hour suit under the FLSA, which Defendants knew of.  Thus, Plaintiff has satisfied the first prong of a *prima facie* case.

As to the second prong, an employment action disadvantages an employee if it may dissuade a reasonable worker from engaging in such a protected activity.  *Mullins*, 626 F.3d at 53. Here, the events underlying Plaintiff's retaliation claim arose after he left his employment at Shang Kitchen.  The Supreme Court has held, in the context of retaliation claims brought under Title VII of the Civil Rights Act of 1964, that the term "employees" includes former employees.  *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997) (noting that including former employees serves "a primary purpose of anti[-]retaliation provisions: [m]aintaining unfettered access to statutory remedial mechanisms").

Although the Second Circuit has not applied the reasoning of *Robinson* to FLSA retaliation claims, district courts in this Circuit have done so, "finding that in some circumstances plaintiffs can bring retaliation claims against former employers for post-employment conduct." *Li v. Oliver King Enters., Inc.*, No. 14-CV-9293 (VEC), 2015 WL 4643145, at *3 (S.D.N.Y. Aug. 4, 2015) (collecting cases). Disadvantageous post-employment conduct includes "blacklist[ing] the former employee, wrongfully refus[ing] to write a recommendation to prospective employers, or sull[ying] the plaintiff's reputation." *Sherman v. Fivesky, LLC*, No. 19-CV-8015 (LJL), 2020 WL 5105164, at *5 (S.D.N.Y. Aug. 31, 2020) (quoting *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997)).

Defendants' alleged conduct underlying Plaintiff's retaliation claims, which occurred after he filed his Complaint alleging FLSA and NYLL claims, clearly constitutes disadvantageous post-employment conduct. The TikTok video posted on the WeChat group message seen by Chinese restaurant operators and employers featuring Plaintiff's WeChat profile picture and a photograph of his New York State driver license was overlaid with text specifically advising prospective employers not to hire Plaintiff because "[h]e worked for a couple of days, found an excuse to get his pay, and then sued under the employment law, with one Flushing attorney to cheat." (Compl., Dkt. 44, ¶ 47.) Such post-employment conduct could be disadvantageous, if not disastrous, to Plaintiff's future employment prospects because it could result in him being blacklisted or his reputation being sullied among Chinese restaurant operators and employers. *See Wanamaker*, 108 F.3d at 466 ("The terminated employee, however, may have tangible future employment objectives, for which he must maintain a wholesome reputation."). Indeed, Plaintiff alleges that soon after the TikTok video was posted, Plaintiff was publicly denounced as a liar and

untrustworthy by his boss at a Chinese Restaurant in Oklahoma, subjected to a hostile work environment, and constructively discharged from that job.  (Compl., Dkt. 44, ¶ 54.)

As to the third prong, "a causal connection between an adverse action and a plaintiff's protected activity may be established through evidence of retaliatory animus directed against a plaintiff by the defendant, or by showing that the protected activity was closely followed in time by the adverse action."  *Mullins*, 626 F.3d at 53 (internal quotation marks omitted).  A plaintiff can demonstrate retaliatory animus "by showing other actions in that time frame that suggest a retaliatory motive by defendants."  *Nunez v. Metro. Learning Inst., Inc.*, No. 18-CV-1757 (FB) (VMS), 2019 WL 5457731, at *2 (E.D.N.Y. Oct. 24, 2019); *see Pakter v. New York City Dep't of Educ.*, No. 08-CIV-7673 (DAB), 2010 WL 1141128, at *8 (S.D.N.Y. Mar. 22, 2010) ("The element of causal connection need not be based only—or even primarily—on temporal proximity but may also rely on non-circumstantial evidence, such as written or verbal statements of retaliatory intent." (citing *Patane v. Clark*, 508 F.3d 106, 116–17 (2d Cir. 2007))).  The TikTok video posted on the WeChat group message, which specifically directed members of a group of Chinese restaurant employers and operators not to hire Plaintiff because he had filed an FLSA lawsuit, is plainly sufficient to support a plausible inference of retaliatory intent by Defendants.

Defendants argue that Plaintiff does not "affirmatively state" that the video was created or distributed by Defendants and thus cannot establish the required causal connection prong. (Defendants' Memorandum of Law in Support of Partial Motion to Dismiss the Consolidated Complaint ("Def. Mem."), Dkt. 54-1, at 10.)  However, Plaintiff alleges that the photograph of his drivers' license in the video is the same photograph that Defendant Zhang took when he was hired. (Compl., Dkt. 44, ¶ 41.)  Plaintiff further alleges that this photograph was the same photograph that Defendant Zhang had sent to him in messages via WeChat on September 22, 2019, after he

15

had left his employment at Shang Kitchen, in which she threatened that she would "report him to ICE for working without authorization," and that "she would 'go to the government first,' and threatened [Plaintiff] with a defamation lawsuit." (*Id.* ¶¶ 41, 43.) Defendants are correct that the September 2019 WeChat messages are not themselves evidence of retaliatory animus because Plaintiff had not yet filed his FLSA and NYLL lawsuit, and Plaintiff does not plead facts that he had told Defendants that he planned to file such a lawsuit. *See Stephan v. W. Irondequoit Cent. Sch. Dist.*, 450 F. App'x 77, 80 (2d Cir. 2011) (affirming the district court's finding of no causal connection between the plaintiff's protected activity and her termination where the decision to fire her had been made five days before her protected conduct). Nonetheless, it is reasonable to infer that Defendant Zhang was involved in the creation or distribution of the TikTok video, posted after Plaintiff filed his first lawsuit against Defendants, because the video contained the photograph of Plaintiff's drivers' license that Defendant Zhang had allegedly taken and was later sent to Plaintiff as part of a string of threatening messages from Defendant Zhang's phone.

With respect to temporal proximity to the adverse employment action, the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship." *Sirois v. Long Island R.R. Co.*, 797 F. App'x 56, 60 (2d Cir. 2020); *see also Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001) (collecting cases). Thus, a court should "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). About eight months passed between when Plaintiff filed his FLSA and NYLL lawsuit on May 19, 2020, and when he first saw the TikTok video on January 8, 2021. The Second Circuit has held that eight months is not too attenuated to establish a causal connection, *see Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46

16

(2d Cir. 1980), especially where, as here, there is other evidence of retaliatory animus, *see Summa v. Hofstra Univ.*, 708 F.3d 115, 128–29 (2d Cir. 2013); *Sealy v. State Univ. of New York at Stony Brook*, 834 F. App'x 611, 614 (2d Cir. 2020); *see also Ford v. New York City Bd. of Educ.*, No. 19-CV-6327 (JPC) (KHP), 2022 WL 1063036, at \*10 (S.D.N.Y. Apr. 8, 2022) ("While approximately five months passed between Plaintiff's filing of the . . . complaint and Defendant's commencement of [a disciplinary] proceeding, Plaintiff also alleges other examples of retaliatory conduct throughout that five-month period . . . .").  Moreover, although Plaintiff first saw the video on January 8, 2021, the video could have been made and distributed any time after Plaintiff filed his FLSA and NYLL lawsuit.  Thus, drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has sufficiently alleged a causal connection.[11]  Plaintiff has thus successfully pleaded enough facts to allege a *prima facie* case of retaliation under both FLSA and the NYLL.[12]  Accordingly, Defendants' motion to dismiss Plaintiff's retaliation claim is denied.

---

[11] Defendants argue that Plaintiff cannot establish a causal connection between Defendants' alleged retaliatory actions and Plaintiff's "inability to find work or stay employed." (Def. Mem, Dkt. 54-1, at 11.)  However, such a showing is not required at this stage because Plaintiff "has not had the benefit of discovery regarding any impact on his career prospects." *Nunez v. Metro Learning Inst., Inc.,* No. 18-CV-1757 (FB) (VMS), 2019 WL 5457731, at \*1 (E.D.N.Y. Oct. 24, 2019).  Moreover, as discussed, Plaintiff alleges that when his subsequent employer saw the TikTok video, he "denounced [Plaintiff] as a liar and untrustworthy in front of his coworkers" (Compl., Dkt. 44, ¶ 54), which strongly suggests that the TikTok video allegedly created or distributed by Defendants had a negative impact on Plaintiff's career prospects.

[12] Defendants also argue that Plaintiff's group pleading should be rejected by this court because "Plaintiff has failed to set forth any factual details in the Complaint to establish how, and in what way, each of the Defendants were involved in the hiring, firing, payment of wages, supervision, or discipline of the Plaintiff."  (Def. Mem., Dkt. 54-1, at 20.)  The Court declines to do so for the following reasons.  Under the FLSA and NYLL, a person employs an individual if the person "suffer[s] or permit[s]" the individual to work, where "person" includes a corporation. 29 U.S.C.A. § 203; N.Y. Lab. L. § 2.  It is undisputed that Plaintiff was an employee of Shang Noodle House Inc., d/b/a Shang Kitchen, the corporate Defendant; therefore, Plaintiff has sufficiently pleaded that Shang Kitchen was involved in the alleged wrongful conduct under the FLSA and NYLL.  Plaintiff has also sufficiently stated claims against Defendants Liu and Zhang, the individual Defendants.  First, as already explained, Plaintiff has plausibly alleged that

**CONCLUSION**

For the reasons explained above, Defendants partial motion to dismiss is denied in its entirety.

SO ORDERED.

/s/ Pamela K. Chen
_____
Pamela K. Chen
United States District Judge

Dated:  September 12, 2022
        Brooklyn, New York

---

Defendant Liu was his employer, and has thus sufficiently pleaded enough facts to state claims against Defendant Liu.  Second, as just described, Plaintiff has pleaded sufficient facts alleging Defendant Zhang's involvement in retaliatory conduct directed against Plaintiff.   In fact, Defendants do not dispute that Plaintiff's retaliation claims were directed against Defendant Zhang.  (Def. Mem., Dkt. 54-1, at 1.)  Therefore, Plaintiff has plausibly pleaded sufficient facts alleging all three Defendants' involvement in his FLSA and NYLL claims.