UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
BAIGUANG HAN, *on his own behalf and on*
*behalf of others similarly situated*,

                  Plaintiff,

       - against –

SHANG NOODLE HOUSE, INC. d/b/a Shang
Kitchen, ZHI ZHONG LIU a/k/a Zhizhong Liu,
and SUMMER ZHANG a/k/a Summer Liu,

                  Defendants.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-2266 (PKC) (VMS)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Baiguang Han brings this action against his former employers, Defendants Shang

Noodle House ("Shang Noodle"), Zhi Zhong Liu ("Liu"), and Summer Zhang ("Zhang")

(collectively, "Defendants"), alleging overtime, "spread of hours," and retaliation violations of the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law, Art. 19

§ 650 *et seq.*[1]  (Consolidated Complaint ("Compl."), Dkt. 44.)  Currently before the Court is

Defendants' motion for summary judgment on the ground that Shang Noodle does not qualify as

an "enterprise" under the FLSA.  (Defendants' Mot. for Summ. J. ("Defs.' Mot."), Dkt. 72.)  For

the reasons set forth below, the Court grants Defendants summary judgment as to Plaintiff's wage-

and-hour claims because he cannot demonstrate that Shang Noodle qualifies as an "enterprise"

---

[1] This case was brought as both a putative FLSA collective action and a class action. (Compl., Dkt. 44, at 10.)  Thus far, however, no individuals have opted into the FLSA collective action and Plaintiff has not moved to certify a Rule 23 class.  Thus, for the purposes of this Memorandum & Order, the Court construes all claims as being individual claims as to Plaintiff alone.  Because Plaintiff's FLSA wage and hour claims are being dismissed, no collective action can be certified as to those claims.  Furthermore, as indicated *infra*, if Plaintiff wishes to seek certification of a Rule 23 class as to his NYLL claims, he must file that motion within two weeks of the date of this Order.

1

under FLSA, denies summary judgment as to Plaintiff's FLSA retaliation claim, and retains supplemental jurisdiction over his state law claims.

## BACKGROUND

### I.    Factual Background[2]

Between the end of August 2019 and March 2020, Shang Noodle operated as a restaurant in the Flushing section of Queens, New York.  (Defs.' 56.1 ¶¶ 6, 9, 11; Defendant Liu Dep. ("Liu Dep."), Dkt. 70-3, at 41:7–11); Plaintiff's Mem. in Opp'n ("Pl.'s Mot."), Dkt. 74, at 1, 4, 5.)  Shang Noodle was incorporated on June 17, 2019, opened for business at approximately the end of August 2019, and permanently closed on or about March 5 or 8, 2020, shortly before the COVID lockdown in New York City began.  (Defendant Zhang Dep. ("Zhang Dep."), Dkt. 73-2, at 14:3-6; Dkt. 70-4, at 29:16-18.)  The restaurant had approximately 35 seats and specialized in noodle and sauteed dishes.  (Defs.' 56.1 ¶ 6; Plaintiff's 56.1 Counter-Statement ("Pl.'s 56.1"), ¶ 6.)  Plaintiff, a Chinese immigrant who had come to the United States in 2012, was the head chef at Shang Noodle from approximately August 15, 2019 to September 16, 2019.  (Defs.' 56.1 ¶¶ 2, 8.)  Defendant Liu was one of three shareholders of the restaurant.  (*Id.* ¶ 5.)  From June until August 2019, Defendant Zhang, who was Liu's romantic partner, worked with Plaintiff to prepare for the restaurant's grand opening.  (Defendant Zhang Dep. ("Zhang Dep."), Dkt. 73-2, at 13:8–14:9, 18:2–12.)  Approximately seven employees worked "in Shang Noodle's kitchen, including a mixer, a meat cutter, two chefs, and two people who made the noodles."  (Defs.' 56.1 ¶ 7.)  Plaintiff

---

[2] The Court construes any disputed facts in the light most favorable to Plaintiff, as the non-moving party, for purposes of Defendants' summary judgment motion.  *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–59 (1970) (Harlan, J.).  However, where Plaintiff either (i) admits or (ii) denies without citing to admissible evidence certain of the facts alleged in Defendants' Local Rule 56.1 Statement (Dkt.   69 ("Defs.' 56.1")), the Court may deem any such facts undisputed.  *See* Local Rules of the United States District Courts for the Southern and Eastern Districts of New York 56.1(c)-(d).  Standalone citations to "Defs.' 56.1" denote that the Court has deemed certain of Defendants' facts undisputed.

and Zhang agreed on a $5,500 monthly salary before the restaurant's grand opening, and $6,000 per month thereafter. (Zhang Dep., Dkt. 73-2, at 24:21–28:15.) The other kitchen employees were to be paid a salary between $3,000 and $4,000 per month. (*Id.* 39:14–40:11.)

Shang Noodle's finances are contested. According to Shang Noodle's 2019 federal tax return, the restaurant's gross annual sales from its incorporation on June 17, 2019 until May 31, 2020 was $217,285, for a net income of $56,836.[3] (Defs.' 56.1 ¶ 11.) The tax return further claims $356,255 in total deductions, including $81,000 in rent, $66,303 in salaries and wages, and $185,563 in "other deductions." (Dkt. 71-1, Ex. A, at 1.) Defendants also proffer Shang Noodle's bank statements for July 2019 through April 2020, which show monthly balances varying between $263 and $30,168. (Defs.' 56.1 ¶ 12.)

Plaintiff submits a sworn affidavit attesting that he was told by Zhang that the restaurant made "$2,000 to $3,000 per day," and "that if Shang Kitchen were to do a special promotion, they could take in more than $3,000[] per day." (Pl.'s Affidavit ("Pl.'s Aff."), Dkt. 73-3, ¶ 4.) Based on that figure, Plaintiff estimates that Shang Noodle would have grossed, "at the very least . . . $374,000[] and at the very highest they could have made $570,000[]" during the slightly more than six months it was open for business. (Pl.'s Mot., Dkt. 74, at 1.)

## II.   Procedural History

On October 4, 2022, Defendants filed a pre-motion conference ("PMC") request in anticipation of filing a summary judgment motion, on the following grounds: (1) Shang Noodle did not meet the $500,000 FLSA enterprise threshold; (2) Plaintiff was an exempt "head chef" under the relevant labor laws; (3) Defendant Liu was not Plaintiff's employer; and (4) Plaintiff's

---

[3] Shang Noodle's tax year ran from June 17, 2019 until May 31, 2020. (Dkt. 71-1, 4.) As previously noted however, the restaurant opened at the end of August 2019, and permanently closed on or about March 8, 2020.

retaliation claim was factually unsupported. (Dkt. 65.)  Plaintiff opposed the PMC request a week later. (Dkt. 66.)  On October 13, 2022, the Court granted Defendants' PMC request and scheduled a conference for November 9, 2022. (10/13/2022 Dkt. Entry.)

At the November 9th PMC, the Court narrowed the scope of Defendants' summary judgment motion to the issues of whether (1) "Plaintiff can prove the $500,000 threshold element under the FLSA" and (2) "Plaintiff's FLSA retaliation claim can still be brought if his underlying FLSA wage claim is dismissed" because he cannot prove the $500,000 enterprise threshold element at trial. (11/9/2022 Minute Entry.)[4]  Summary judgment briefing was completed on December 23, 2022. (Dkts. 68–73.)

## STANDARD OF REVIEW

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." *Summa v. Hofstra Univ.*, 708 F.3d 115, 123 (2d Cir. 2013) (quoting *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  "The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp.*, 477 U.S. at 322).  Once a defendant has met his initial burden, the plaintiff must "designate specific facts showing that there is a genuine issue for trial." *Celotex*

---

[4] At the PMC, the Court also learned that Plaintiff's counsel had failed to produce to the defense two key pieces of evidence—a TikTok video and WeChat messages crucial to Plaintiff's retaliation claim—even though discovery had closed four months prior. (11/9/2022 Minute Entry.)  The Court allowed the reopening of discovery solely as it related to that evidence, on the condition that Plaintiff bore any additional discovery costs. (*Id.*)

*Corp.*, 477 U.S. at 324 (internal quotation marks omitted).  In determining whether there are genuine disputes of material fact, the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (internal quotation marks and citation omitted).

The Court's inquiry upon summary judgment is "determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250; *see also id.* at 251–52 ("In essence, though, the inquiry . . . [is] whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.").  "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (alterations in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The non-moving party will not defeat summary judgment by merely arguing that "the jury might, and legally could, disbelieve the defendant," without offering "concrete evidence from which a reasonable juror could return a verdict in [the plaintiff's] favor." *Anderson*, 477 U.S. at 256.  By the same token, the non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *Golden Pac. Bancorp v. FDIC*, 375 F.3d 196, 200 (2d Cir. 2004) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)).  "[W]here, notwithstanding issues of credibility [regarding the moving party's evidence in support of summary judgment], [the non-moving party] has presented no evidence or inferences that would allow a reasonable mind to rule in [his] favor[,] . . . it may be said that the record as a whole points in one direction and the dispute

5

is not genuine." *Jian Long Li v. Li Qin Zhao*, 35 F. Supp. 3d 300, 304 (E.D.N.Y. 2014) (quoting *Schoonejongen v. Curtiss-Wright Corp.,* 143 F.3d 120, 130 (3d Cir. 1998) (internal quotations omitted)).

## DISCUSSION

## I.     Plaintiff Fails to Create a Genuine Dispute Regarding the FLSA Enterprise Threshold Element

Defendants argue that Plaintiff has failed to create a genuine factual dispute as to whether Shang Noodle was an "enterprise" covered by the FLSA.  (Defs.' Mot., Dkt. 72, at 3–5.)  The Court agrees.

### A.  Legal Standard

In order to be subject to the minimum wage and overtime protections of the FLSA, an employee must either themselves be 1) "engaged in commerce or in the production of goods for commerce" (otherwise known as FLSA "individual coverage"), or 2) employed "in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C.A. § 207(a)(1), (2). An "enterprise engaged in commerce or in the production of goods for commerce" is an enterprise that:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)[.]

29 U.S.C.A. § 203(s)(1)(A).  Once a claimant under the FLSA satisfies the "requisite dollar volume of business" prong by demonstrating that the employer enterprise meets the $500,000 threshold, he is "virtually guaranteed to satisfy the first prong" of enterprise coverage.  *Qi v. Bayside Chicken*

*Lovers Inc.*, No. 21-CV-6018 (MKB), 2023 WL 2632494, at *4 (E.D.N.Y. Mar. 24, 2023) (internal quotations and citations omitted).

"Enterprise coverage has been interpreted broadly by the courts." *Boekemeier v. Fourth Universalist Soc. in City of New York,* 86 F. Supp. 2d 280, 285 (S.D.N.Y. 2000). "So long as the employer achieves an annual gross business volume of $500,000 or more, '*all* of the employer's employees are covered under FLSA as long as at least *some* handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce.'" *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 355 (E.D.N.Y. 2015) (quoting *Jones v. E. Brooklyn Sec. Svcs. Corp.*, No. 11-CV-1021 (JG) (SMG), 2012 WL 3235784, at * (E.D.N.Y. Aug. 7, 2012) (emphasis in original)).

    B.    <u>Application</u>

Here, Plaintiff claims only "enterprise coverage" under the FLSA with respect to Shang Noodle. (First Consolidated Complaint ("Compl."), Dkt. 44, ¶ 68; Pl.'s Mot., Dkt. 74, at 3–4.) The sole piece of evidence Plaintiff offers in support of Shang Noodle meeting the enterprise threshold is his sworn affidavit, which relates Defendant Zhang's alleged statements to Plaintiff that "Shang Kitchen restaurant received between $2,000[] and $3,000[] each day from customers," and that if the restaurant "were to do a special promotion, they could take in more than $3,000[] per day." (Pl.'s Aff. ¶ 4.) Based on this daily revenue, Plaintiff argues that "[a] restaurant . . . operating 7 days per week, about every day of the year, would have earned between about $730,000[] and $1,095,000[] over the course of a year."[5] (*Id.* ¶ 7.)

---

[5] Importantly, Plaintiff's calculation of how much the restaurant would have made if it had operated every day of the year is irrelevant. The FLSA threshold is the sum of the "gross receipts from all types of sales made and business done during a 12-month period." *See* 29 C.F.R. § 779.259(a). If Defendants made no sales for several months during that 12-month period, then no

Defendants argue that Shang Noodle's gross sales were considerably less than $500,000 during the "approximately ten months" that the restaurant was open in 2019 and 2020. [6]  (Defs.' Mot., at 4.)  They rely on two pieces of evidence: the 2019 federal corporate tax return that claims that Shang Noodle's gross annual sales for the period from June 17, 2019 to May 31, 2020 were $217,285, which covered the entire period of the restaurant's operation, and Shang Noodle's bank statement balances between [month/year to month/year], which fluctuated between $263 and $30,168 each month.  (Defs.' Mot., at 4; Defs.' 56.1, ¶¶ 11–12.)  Shang Noodle's certified public accountant submitted a declaration attesting to the veracity of both documents under penalty of perjury.  (Dkt. 71, at 1–2.)

Plaintiff challenges the credibility of Defendants' tax return and bank statements as both unreliable and insufficient.  Plaintiff points to Defendants' failure to produce receipts of their day-to-day sales to show that their revenue "lines up" with the amount claimed on their tax returns.  (Pl.'s Mot., Dkt. 74, at 6.)  Plaintiff also argues that because Defendants do not offer specific "evidence to suggest that they were making" $1,100 per day—the daily sales amount that would have generated the $217,000 in gross revenue claimed by Defendants for the period from June 2019 to May 2020—"the court cannot come to the conclusion" that the restaurant actually made that little.  (*Id.*)

Plaintiff's attempts to defeat summary judgment fall short.  First, rather than identifying inconsistencies in the records proffered by Defendants, or evidence (aside from Plaintiff's own

---

revenue can be attributed to them for purposes of determining whether the enterprise threshold element is met.

[6] As discussed, although Shang Noodle was incorporated as of June 2019, it only operated from late August 2019 to the first week or so of March 2020, and thus only generated revenue for approximately seven months.

affidavit) that casts doubt on their accuracy or reliability, Plaintiff simply implores the Court to "look at defendants' records very closely."  (Pl.'s Mot., Dkt. 74, at 2.)  However, it is not the Court's duty to "scour the record looking for factual disputes."  *Marshall v. Kingsborough Comm. Coll. of C.U.N.Y.*, No. 11-CV-2686 (PKC) (RML), 2015 WL 5774269, at *2 (citing *Scott v. City of New York Dept. of Correction*, 641 F. Supp. 2d 211, 219 (S.D.N.Y. 2009)).  Rather, it is Plaintiff's burden to identify competent evidence that creates a genuine dispute of material fact. *Anderson*, 477 U.S. at 256 ("The [summary judgment] movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict.").

Nonetheless, a close examination of Defendants' bank statements and tax return, along with all of the other evidence in the record (minimal as it is), demonstrates that a jury could not find at trial that Shang Noodle's gross revenues for the relevant 12-month period met the $500,000 threshold necessary for enterprise coverage under the FLSA.  Shang Noodle's bank statements show that monthly deposits into that account ranged from $28,170 to $69,610— for a total of $430,756.93 in deposits over the life of the account, from July 10, 2019 to April 30, 2020.  (Dkt. 71-2, Ex. B.)  Even if every dollar deposited in Shang Noodle's bank account was restaurant revenue, it would not be enough to meet the $500,000 threshold.  Furthermore, the evidence indicates that, in fact, not all of the funds deposited in the account were from the restaurant's revenues.  Rather, about $100,000 was deposited in the bank account while the restaurant was not generating any revenue.  The account lists deposits of $25,537.50 and $45,000 for July and August 2019, respectively; yet, the restaurant did not start operating until approximately the last day of August.  The bank account similarly reflects deposits of $28,170.19 for March 2020, despite the restaurant having shut down on or about March 8, 2020.  (*Id.*)  The far more reasonable inference

9

is that the deposits in Shang Noodle's bank account were a combination of restaurant revenue and Defendants' own money; indeed, Liu testified as much.  When asked whether he ever deposited any of his "personal monies into that checking account,"  Liu answered, "well obviously, I needed to utilize my own money, right?"  (Liu Dep., Dkt. 70-3, at 51:11–13.)  Further, although the bank statements could understate the restaurant's revenue if, for example, Defendants paid bills without first depositing revenue from sales into the account, Plaintiff identifies no evidence in the record indicating whether or to what extent that may have been the case here, and any conclusion to that effect would be based impermissibly on sheer speculation.

Similarly, beyond asserting as a theoretical matter that "[t]here is substantial precedent suggesting that tax returns are not dispositive and the veracity of those documents can be questioned by a Plaintiff" (Pl.'s Mot, at 4–5 (quoting *Qian v. Hui*, No. 11-CV-5584 (CM), 2013 WL 3009389, at *3 (E.D.N.Y. June 14, 2013)), Plaintiff fails to identify any basis for questioning the veracity of Defendants' 2019 tax return, which Shang Noodle's certified public accountant attested to the veracity of under penalty of perjury.  (Dkt. 71, at 1–2.)[7]

---

[7] On its own, the Court notes that Defendants' representation that they spent $66,303 on "salaries and wages (less employment credits)" might suggest underreporting of these expenses, given that Defendants employed seven people just in the kitchen for between six and nine months, and those employees were paid between $3,000 and $4,000 per month, with Plaintiff making more money.  (Dkt. 71-1, at 2; Defs.' 56.1, Dkt. 69, ¶ 7; Zhang Dep., Dkt. 73-2, 39:14–40:11.)  Conservatively assuming that just seven total employees were each paid $3,000 per month over a period of six months, Defendants would have paid $126,000 in total wages.  However, the Court cannot draw any conclusions on this issue because there is no evidence in the record regarding how much the employees' wages and salaries were reduced by the "employment credits" referenced in the tax return.  Aside from being unable to conclude whether there was any underreporting of wages, the Court certainly cannot conclude that the magnitude of any underreporting is sufficient to find Shang Noodle's tax return unreliable.  *See, e.g.*, *Chang Mei Lin v. Yeh's Bakery, Inc.*, No. 12-CV-2146 (JG), 2013 WL 867436, at *2–3 (E.D.N.Y. Mar. 7, 2013) (finding that plaintiffs satisfied burden of demonstrating an issue of material fact regarding enterprise coverage where they referenced an unreliable tax return declaring annual wages of $2,294.10 per employee).  The lack of context also dooms any argument—had Plaintiff even made

Thus, the Court finds no basis for questioning the veracity or accuracy of the documentary evidence submitted by Defendants in support of their argument that Plaintiff cannot prove Shang Noodle's gross revenue met the $500,000 threshold during the relevant 12-month period. Furthermore, with discovery long closed, Plaintiff has waived any unraised arguments. *Triodetic Inc. v. Statue of Liberty IV, LLC,* 582 F. App'x 39, 40 (2d Cir. 2014) (summary order) (finding corporate plaintiff had waived arguments that it failed to raise in opposition to defendants' motion for summary judgment).

Plaintiff's argument that Defendants' evidence is insufficient in the absence of daily receipts or other more specific evidence is also unavailing. Although tax returns supported by supplemental evidence are generally considered more credible, even unsigned, unsworn tax returns lacking additional corroborating evidence can be dispositive in the absence of countervailing evidence. *See Zhen Guang Liu v. Da Di Chinese Food, Inc.*, No. 16-CV-937 (MKB) (ST) 2018 WL 1037480, at *5 (E.D.N.Y. Feb. 6, 2018), *adopting report and recommendation*, 2018 WL 1033246 (E.D.N.Y., Feb. 21, 2018) ; *Loo v. I.M.E. Rest., Inc.*, No. 17-CV-2558 (ARR) (RER), 2018 WL 6814368, at *5 (E.D.N.Y. Dec. 27, 2018) (granting summary judgment where defendants produced unsigned, unsworn tax returns for only some years at issue in the litigation, but "plaintiffs . . . submitted *no* evidence that would raise a genuine dispute of material fact regarding the restaurant's gross sales") (emphasis in original). It is Plaintiff's burden to offer evidence contradicting Defendants' sworn tax returns and bank statements. Instead, Plaintiff's vague allusions to unspecified discrepancies in the record amounts to a thin attempt to "simply show that

---

one—that Defendants' vague claim for $185,563 in "other deductions," including $147,400 in "loss on discontinue," is evidence that Defendants' 2019 tax return is unreliable or inaccurate.

that there is some metaphysical doubt as to the material facts" in this case. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

Weighed against Defendants' unimpeached documentary evidence, Plaintiff's affidavit stating that, according to Zhang, Shang Noodle took in $2,000 to $3,000 each day, also fails to create a genuine dispute about whether Shang Noodle's gross revenue met the FLSA threshold amount.[8]  In order for Shang Noodle to have grossed $500,000 during the approximately seven-month period of its operation, it would have had to average $2,645.50 in gross receipts every single day. In other words, the restaurant would have had to earn substantially more than the $2,000 low-end daily revenue amount every single day.  In itself, this conclusion would require considerable

---

[8] As a preliminary matter, Plaintiff's affidavit is admissible and can be considered as evidence at summary judgment.  While a court may "strike portions of a supporting affidavit that are not based upon the affiant's personal knowledge, [or] contain inadmissible hearsay" (*Peters v. Molloy Coll. of Rockville Ctr.*, No. 07-CV-2553 (DRH) (ETB), 2010 WL 3170528, at *2 (E.D.N.Y. Aug. 10, 2010) (internal quotation marks omitted)), statements of party opponents are not hearsay.  Fed. R. Evid. 801(d)(2).  "Where an affidavit is used to support or oppose the motion [for summary judgment], it 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *Wiltshire v. Wanderman*, No. 13-CV-9169 (CS), 2015 WL 4164808, at *2 (S.D.N.Y. July 10, 2015) (quoting Fed. R. Civ. P. 56(c)(4)).  "An affidavit sworn to by a party opposing summary judgment and containing statements based on personal knowledge deserves to be generously construed." *Peters*, 2010 WL 3170528, at *3 (quoting *FDIC v. Arcadia Marine, Inc.*, 642 F. Supp. 1157, 1160 (S.D.N.Y. 1986)).  "The lack of certain specific details or arguably vague statements will not render the affidavit inadmissible, but affect the weight and credibility of the testimony, which have to be determined by the trier of fact at trial." *Peters*, 2010 WL 3170528, at *2 (citing *Flaherty v. Filardi*, No. 03-CV-2167 (LTS) (HBP), 2007 WL 163112 (S.D.N.Y. Jan. 24, 2007). Further, although "a party who has testified to a given fact in his deposition cannot create a triable issue merely by submitting his affidavit denying the fact," *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000), the "sham" affidavit rule does not apply where, as here, the affidavit does not contradict any of the non-moving party's testimony. *Id.* at 43 (citing *White v. ABCO Eng'g, Corp.*, 221 F.3d 293, 304 (2d Cir. 2000)).

speculation by the jury.[9]  When weighed against Defendant's documentary evidence showing far

less monthly and total gross revenue, this largely unsupported conclusion collapses and cannot

withstand even a preponderance of the evidence analysis.  Thus, Plaintiff's implicit contention that

the restaurant's average daily gross was over $2,645.50 amounts to a speculative conjecture that

cannot defeat summary judgment in this case.  *See Fed. Trade Comm'n v. Moses*, 913 F. 3d 297,

305 (2d Cir. 2019) ("[A] party may not rely on mere speculation or conjecture as to the true nature

of the facts to overcome a motion for summary judgment."); *Fabrikant v. French*, 691 F. 3d 193,

205 (2d Cir. 2012) ("The mere existence of a scintilla of evidence in support of the non-movant's

position will be insufficient to defeat a summary judgment motion.") (internal citations and

quotations omitted); *Alvarado v. GC Dealer Svcs., Inc.*, 511 F. Supp. 3d 321, 352 (E.D.N.Y. 2021)

("Since there is no issue for trial unless there is sufficient evidence favoring the nonmoving party

for a jury to return a verdict for that party[,] . . . if the evidence is merely colorable, . . . summary

judgment may be granted." (cleaned up) (quoting *Anderson*, 477 U.S. at 249–50); *Point-Du-Jour*

*v. Am. Airlines*, No. 07-CV-3371 (KAM) (RLM), 2009 WL 3756627, at *3 (E.D.N.Y. Nov. 5,

2009) ("'the mere possibility that a factual dispute may exist' . . . [is] insufficient to overcome a

summary judgment motion." (quoting *Montessi v. Am. Airlines, Inc.*, 935 F. Supp. 482, 485

(S.D.N.Y. 1996) (ultimately quoting *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F. 2d

438, 445 (2d Cir. 1980))).

---

[9] To further illustrate the improbability of this conclusion, the Court notes that if the restaurant had made just $2,000 per day, seven days a week, from September 1, 2019 to March 8, 2020, it would have grossed approximately $380,000 in total; at $2,500 per day, $472,500; and at $3,000 per day, $567,000.  Thus, even assuming that the restaurant made the maximum amount within the range purportedly described by Zhang every day that it was open, the restaurant would have only cleared the $500,000 threshold by a small margin.

Indeed, courts in this district have granted summary judgment where the defendant's sworn tax returns claimed gross revenues below $500,000 and the plaintiff's sworn affidavit was the only contradictory evidence offered. *See Zhen Guang Liu*, 2018 WL 1037480, at * 5 ("[T]he only evidence Plaintiff points to that directly contradicts the information in the tax returns is his own testimony about how much money he believes the restaurant earned" and "nothing in the records suggests that [defendant] actually earned *more than* $500,000" or that its "expenses were inconsistent with its reported income") (emphasis in original); *Xi Dong Gao v. Golden Garden Chinese Rest., Inc.,* No. 13-CV-4761 (LDW) (GRB), 2014 WL 8843301, at *3 (E.D.N.Y. Dec. 16, 2014) (recommending that summary judgment be granted in favor of defendants where plaintiff's affidavit alleged that the restaurant met the threshold based on "bald assertions" that are "merely unsupported guesses about defendants' business"). That is exactly the circumstance in this case.

Meanwhile, courts in this circuit have found a plaintiff's sworn statement to warrant summary judgment in the face of a tax return showing a sub-threshold revenue only where there are other compelling reasons to doubt the return's veracity, or where the moving party's records were inconsistent with their claimed revenue, or both. *See, e.g., Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 348 (E.D.N.Y. 2014) (summary judgment not warranted because defendant's tax returns were unsigned, while plaintiff's sworn statements regarding wages, rent paid, sales, and number of employees contradicted the tax returns); *Monterossa v. Martinez Rest. Corp.*, No. 11-CV-3689 (JMF), 2012 WL 3890212, at *3–4 (S.D.N.Y. Sept. 7, 2012) (denying summary judgment where defendants' unsigned, unsworn tax returns were inconsistent with a handwritten log indicating that Defendants paid significantly more in wages than the restaurant claimed on its tax returns. While "[t]hat evidence, in itself, would be enough to defeat Defendants' motion for summary judgment," each of the three plaintiffs also offered sworn testimony that the

14

restaurant "grossed between $2,000 and $5,000 a day," which would mean that the restaurant "would gross well over $500,000 annually even if Plaintiffs considerably overestimated the Restaurant's daily earnings."); *Chang Mei Lin,* 2013 WL 867436, at *3 (finding that defendant's "tax returns fall short of establishing as a matter of law that the annual gross income of the bakery falls below the FLSA threshold," where plaintiff offered a sworn statement that the bakery grossed more than $2,000 a day on average over the course of a full year, and the tax return dramatically understated the wages the enterprise paid); *Bin Gao v. Jian Song Shi*, No. 18-CV-2708 (ARR) (JO), 2019 WL 3936810, at *5 (E.D.N.Y. Aug. 20, 2019) (denying summary judgment where defendant's tax returns were "heavily redacted, unsigned, and contain information inconsistent with sworn testimony," including the number and wages of employees, and were contradicted by plaintiff's sworn testimony); *see also Quintanilla v. Pete's Arbor Care Svcs., Inc.*, No. 19-CV-6894 (JMA) (ARL), 2023 WL 4237473, at *7 (E.D.N.Y. June 12, 2023), *report and recommendation adopted*, 2023 WL 4238863 (E.D.N.Y. June 28, 2023) (denying summary judgment despite multiple years of bank deposits and tax returns showing incomes below $200,000 where both plaintiff and defendants state that not all cash payments were reported for purposes of those calculations).  Plaintiff has failed to develop or identify any such contradictory evidence in this case.  *See Jian Long Li*, 35 F. Supp. 3d at 306 (granting defense's summary judgment motion, where plaintiff did "nothing to change the fact that the 'record as a whole' continue[d] to 'point[]' in one direction' with nothing to compel a jury to find in Plaintiff's favor."  (quoting *Schoonejongen*, 143 F. 3d at 130.

In sum, the Court finds that Plaintiff has failed to demonstrate a triable issue with respect Shang Noodle's enterprise coverage, and thus Defendants are entitled to summary judgment on Plaintiff's wage-and-hour claims under the FLSA.

## II.      Plaintiff's Retaliation Claim is Not Subject to the FLSA Enterprise Threshold

"[W]hile 'the Second Circuit has not resolved the issue' of whether individuals can bring retaliation claims against individuals who are not their employers under the FLSA, some New York courts have suggested the FLSA retaliation protections apply more broadly." *Lima v. Napoli*, 19-CV-1699 (JMA) (ST), 2023 WL 2429998, at *9 (E.D.N.Y. Feb. 10, 2023), *report and recommendation adopted*, 2023 WL 2731689 (E.D.N.Y. Mar. 31, 2023) (quoting *Bergman v. Kids By the Bunch Too, Ltd.*, No. 14-CV-5005 (DRH) (SIL), 2018 WL 1402249, at *8 n.4 (E.D.NY. Feb. 16, 2018).

Although Plaintiff argues that the FLSA enterprise threshold does not apply to retaliation claims (Pl.'s Mot., at 6–7), the only authority he cites—*Jones v. SCO Family of Svcs.*, No. 15-CV-08733 (GBD), 2016 WL 7188152 (S.D.N.Y. Dec. 2, 2016) and the case it relies on, *Lamont v. Frank Soup Bowl, Inc.*, No. 99-CV-123582, 2001 WL 521815 (S.D.N.Y. Dec. 1, 2016)—both stand for the opposite proposition.  In *Jones*, the court dismissed plaintiff's FLSA retaliation claim because plaintiff had failed to sufficiently allege that her employer was an enterprise covered by FLSA.  *Jones*, 2016 WL 7188152, at *4.  And in *Lamont*, the court concluded that the FLSA's "anti-retaliation provision should be construed to apply only to those employees that Congress intended to regulate under the Act," *id.* at *5, after extensively considering the language of the statute, Congress's purpose in enacting it, the limitations on the court's reach imposed by the Commerce Clause, and "the Second Circuit's narrow reading of the retaliation provision." *Lamont*, 2001 WL 521815, at *5–6.  The *Lamont* court reasoned that applying the retaliation provision to intrastate commerce would "divorce[] the anti-retaliation provision from any basis for the exercise of regulatory power under the Commerce Clause" and transgress the "policy and

purpose" of the FLSA as stated in Section 202 of the FLSA.[10]  *Lamont*, 2001 WL 521815, at *4–5.

Defendants, on the other hand, acknowledge the mixed authority within the Second Circuit even as they argue that the Court should, after dismissing Plaintiff's FLSA wage-and-hour claims, decline to retain jurisdiction over Plaintiff's retaliation claims "as a matter of comity" and in the interest of "conserving limited judicial resources."  (Defs.' Mot., at 6.)  The principal case Defendants rely on, *Savor Health, LLC v. Day*, No. 19-CV-9798 (RAC), 2022 WL 912236 (S.D.N.Y. Mar. 29, 2022), is indicative of the trend within this Circuit, though still unresolved, that leans toward finding that the FLSA enterprise threshold does not apply to FLSA retaliation claims.  In *Savor Health*, the Honorable Ronnie Abrams noted the split among district courts in this Circuit, then sided with holdings in the Third, Fifth, Sixth, Seventh, Ninth, and Tenth Circuits. Judge Abrams explained that the "plain text of the FLSA" "discusses the interstate commerce and revenue requirements only in its wage and overtime provisions," and that "recent [Second Circuit] precedent discussing the standard for FLSA retaliation claims does not mention the interstate commerce and revenue requirements."  *Savor Health, LLC*, 2022 WL 912236, at 8 n.13 (citing *Greathouse v. JHS Sec. Inc.*, 784 F. 3d 105, 109–16 (2d Cir. 2015)).

The Court finds Judge Abrams's reasoning in *Lamont* persuasive and holds that Plaintiff's FLSA retaliation claim is not subject to the statute's enterprise coverage requirement.  Therefore, the Court denies summary judgment on Plaintiff's FLSA retaliation claim.

---

[10] Courts in this Circuit have declined to follow *Lamont*—but only insofar as its holding construed the FLSA threshold as a question of subject matter jurisdiction rather than a question going to the merits of a FLSA claim.  *See, e.g., Padilla v. Manlapaz*, 643 F. Supp. 2d 298, 301–02 (E.D.N.Y. 2009) (citing *Velez v. Vassallo*, 203 F. Supp. 2d 312 (S.D.N.Y. 2002)); *Rocha*, 44 F. Supp. 3d at 345 n.8 (rejecting *Lamont's* contention that enterprise threshold coverage is a jurisdictional issue rather than "an element of a plaintiff's claim").

III.     **The Court Elects to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims**

Given the Court's continuing jurisdiction over Plaintiff's FLSA retaliation claim, the Court may retain supplemental jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C.A. § 1367(a).  Because Plaintiff's state-law unpaid wage, wage notice, and retaliation claims "derive from a common nucleus of operative fact" as his FLSA retaliation claim, *i.e.*, his short-lived employment relationship with Defendants and his alleged complaints to Defendants about being underpaid, the Court chooses to exercise supplemental jurisdiction over Plaintiff's NYLL claims. *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F. 3d 328, 334–35 (2d Cir. 2006).

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment as to Plaintiff's FLSA wage-and-hour claims, which are dismissed with prejudice, but denies summary judgment as to Plaintiff's FLSA retaliation claim.  In addition, the Court retains supplemental jurisdiction over all of Plaintiff's state law claims.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 5, 2023
         Brooklyn, New York

18