UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
BAIGUANG HAN, *on his own behalf and on
behalf of others similarly situated*,

                              Plaintiff,

            - against -

SHANG NOODLE HOUSE, INC. d/b/a Shang
Kitchen, ZHI ZHONG LIU a/k/a Zhizhong Liu,
and SUMMER ZHANG a/k/a Summer Liu,

                              Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-2266 (PKC) (VMS)

PAMELA K. CHEN, United States District Judge:

Plaintiff Baiguang Han ("Plaintiff") brings this action against his former employers,
Defendants Shang Noodle House ("Shang Noodle"), Zhi Zhong Liu ("Liu"), and Summer Zhang
("Zhang") (collectively, "Defendants").  At this time, the only remaining claims are retaliation
claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"),
and overtime and wage notice claims under the NYLL.[1]  Currently before the Court is Defendants'
motion for summary judgment.  For the reasons set forth below, the Court grants summary
judgment as to Plaintiff's NYLL wage notice violations and dismisses that claim, and denies
summary judgment as to Plaintiff's retaliation claims and his overtime claim, even as to Defendant
Liu.

---

[1] This case was brought as both a putative FLSA collective action and a class action.
(Consolidated Compl. ("Compl."), Dkt. 44, at 10.)  No individuals opted in to the FLSA collective
action and Plaintiff did not move to certify a Rule 23 class.  In its previous summary judgment
Order, the Court dismissed Plaintiff's FLSA wage-and-hour claims and ordered Plaintiff to seek
certification of a Federal Rule of Civil Procedure ("Rule") 23 class as to his NYLL claims by
September 19, 2023, if he wished to do so.  (Mem. & Order, Dkt. 75, at 1 n.1.)  He did not, and so
the Court construes his remaining claims as individual ones brought solely as to him.

## BACKGROUND

### I.   Factual Background[2]

Shang Noodle operated as a restaurant in the Flushing section of Queens, New York.  (Pl.'s R. 56.1 Counter-Statement, Dkt. 86-6 ("Pl.'s 56.1"), ¶¶ 17–22, 26.)  Shang Noodle opened for business around the end of August 2019, but then ceased operations in March 2020 with the onset of the COVID-19 pandemic and never reopened.  (*Id.* ¶¶ 21–22, 26; Mem. & Order, Dkt. 75, at 2.)  The restaurant had approximately 35 seats and specialized in noodle and sauteed dishes.  (Pl.'s 56.1 ¶¶ 17–18.)

Plaintiff is a Chinese immigrant who came to the United States in 2012.  (*Id.* ¶¶ 1, 3.)  During the summer of 2019, Plaintiff saw a newspaper advertisement seeking a head chef for Shang Noodle.  (*Id.* ¶ 48.)  After seeing the advertisement, Plaintiff contacted Defendant Zhang and ultimately was hired after a "tryout" in which he cooked a meal for Defendants Zhang and Liu.  (*Id.* ¶¶ 49–52.)  His salary was $6,000 monthly.  (*Id*. ¶ 58.)  Plaintiff was the head chef at Shang Noodle from approximately August 15, 2019, to September 16, 2019.  (*Id.* ¶ 53.)  In his role as head chef, he helped Zhang "research and come up with new dishes."  (Han Dep., Dkt. 86-1, at 92:1–7, 93:2–6.)  Approximately seven other employees worked in the Shang Noodle kitchen at any given time, "including a mixer, a meat cutter, two chefs, and two people who made the noodles."  (Pl.'s 56.1 ¶ 20.)  Because he was "the most experienced guy in the kitchen," Plaintiff "would make suggestions" to the other workers in the kitchen about "what to do, how to do it,"

---

[2]  The Court construes any disputed facts in the light most favorable to Plaintiff, as the nonmoving party.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970).  However, where Plaintiff either (i) admits or (ii) denies without citing to admissible evidence certain of the facts alleged in Defendants' Local Rule 56.1 Statement (Dkt. 81 ("Defs.' 56.1")), the Court may deem any such facts undisputed.  *See* Local Rules of the United States District Courts for the Southern and Eastern Districts of New York 56.1(c)–(d).  Standalone citations to "Defs.' 56.1" denote that the Court has deemed those facts undisputed.

but it was "up to them to do it or not." (Han Dep., Dkt. 86-1, at 100:21–101:3.) He would also instruct the prep workers as to "exactly how much [of] each ingredient" to prepare. (*Id.* at 125:23–126:5.) If food prepared in the kitchen was not up to his standards, Plaintiff would tell Zhang so that she might stop the food from being served to customers. (*Id.* at 104:15–21.)

Shang Noodle was owned by three shareholders, including Defendants Liu and Zhang.[3] (Pl.'s 56.1 ¶¶ 23–24.) Zhang was primarily responsible for managing the day-to-day operations of the restaurant. (*See, e.g.*, *id.* ¶¶ 63–67.) Liu, however, was also involved to some extent. In addition to participating in Plaintiff's "tryout" for the role of head chef, he managed Shang Noodle's bank account and also purchased Shang Noodle's restaurant equipment. (*Id.* ¶ 29; Liu Dep., Dkt. 86-2, at 50:19–51:13.) Liu was also responsible for ordering the food for the restaurant's kitchen, (Han Dep., Dkt. 86-1, at 103:12–19), and at times wrote out the employees' paychecks, including Plaintiff's paycheck, (Liu Dep., Dkt. 86-2, at 78:6–12).

Defendant Zhang terminated Plaintiff's employment on September 16, 2019. (Pl.'s 56.1 ¶¶ 53, 74.) Plaintiff later found other work in various restaurants across the country. (*Id.* ¶¶ 75–96.) On January 8, 2021, Plaintiff's friend sent him a TikTok video that included photos of his license that Zhang had taken when Plaintiff was first hired at Shang Noodle. (*Id.* ¶ 97; Verified Petition, Dkt. 86-4, ¶¶ 7, 9.) The video also displayed text in Chinese that warned restaurants not to hire Plaintiff. (Pl.'s 56.1 ¶ 97.) Plaintiff's friend also told him that she saw the video in a WeChat[4] group for the Asian community Oklahoma. (*Id.* ¶ 98; Han Dep., Dkt. 82-1, at 238:1–2.)

---

[3] Defendants Liu and Zhang are not married but live together and have two children together. (Liu Dep., Dkt. 86-2, at 23:17–24:5.)

[4] WeChat is a messaging application.

## II.      Procedural History

Plaintiff commenced this action on May 19, 2020, alleging various violations of the FLSA and NYLL.  (Dkt. 1.)  Defendants filed their answer on October 12, 2020.  (Dkt. 17.)  Defendants filed an amended answer with proposed counterclaims on May 25, 2021.  (*See* Dkt. 35; *see also* 9/15/2021 Docket Order (granting Defendants' motion for leave to file amended answer).) Plaintiff answered the counterclaims on June 25, 2021.  (*See* Dkt. 36.)

On July 5, 2021, Plaintiff commenced a second action in this district, alleging that Defendants had retaliated against him for engaging in protected activity under the FLSA and NYLL, i.e., filing the May 2020 lawsuit.  (*See* Compl., Dkt. 1, ¶¶ 1–2, *Han v. Shang Noodle House Inc.*, No. 21-CV-3771 (PKC) (VMS) (E.D.N.Y. July 5, 2021).)  The Court consolidated the two cases on September 13, 2021, and Plaintiff filed a consolidated complaint on September 29, 2021. (*See* 9/13/2021 Docket Order; Compl., Dkt. 44.)

In December 2021, Defendants filed a motion to dismiss, (Dkt. 54), which the Court denied in full on September 12, 2022, (Dkt. 64).  Defendants then filed a partial motion for summary judgment in December 2022.  (Dkt. 68.)  The Court granted summary judgment to Defendants on Plaintiff's FLSA wage-and-hour claims, but retained jurisdiction over Plaintiff's FLSA retaliation claim and the supplemental state law claims.   (Mem. & Order, Dkt. 75, at 14–15, 17–18.) Defendants then brought this second motion for summary judgment, which is now ripe for decision.  (*See* Dkts. 80–86.)

### STANDARD OF REVIEW

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law."  *Summa v. Hofstra Univ.*, 708 F.3d 115, 123 (2d Cir. 2013) (quoting *Weinstein v. Albright*, 261 F.3d 127, 132

(2d Cir. 2001)); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp.*, 477 U.S. at 322). Once a defendant has met its initial burden, the plaintiff must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. 324. In determining whether there are genuine disputes of material fact, the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (citation omitted).

The Court's inquiry upon summary judgment is "determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250; *see also id.* at 251–52 ("In essence, though, the inquiry . . . [is] whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party will not defeat summary judgment by merely arguing that "the jury might, and legally could, disbelieve the defendant[]," without offering "concrete evidence from which a reasonable juror could return a verdict in [the plaintiff's] favor." *Anderson*, 477 U.S.

at 256.  By the same token, the nonmoving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *Golden Pac. Bancorp v. F.D.I.C.*, 375 F.3d 196, 200 (2d Cir. 2004) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)).  Where, notwithstanding issues of credibility regarding the moving party's evidence in support of summary judgment, the nonmoving party "has presented no evidence or inferences that would allow a reasonable mind to rule in [his] favor[,] . . . it may be said that the record as a whole points in one direction and the dispute is not genuine." *Jian Long Li v. Li Qin Zhao*, 35 F. Supp. 3d 300, 304 (E.D.N.Y. 2014) (quoting *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998)).

## DISCUSSION

### I.  Plaintiff's Claims Against Defendant Liu

As a threshold matter, Defendants argue that the Court must grant summary judgment on all of Plaintiff's claims against Defendant Liu because he was not an employer within the meaning of the NYLL or FLSA.  (Defs.' Mem. Supp. Partial Summ. J., Dkt. 83 ("Defs.' Mem."), at 19–23.) Courts apply the same standard to determine whether an individual is an employer for both FLSA and NYLL claims.  *Winfield v. Babylon Beauty Sch. of Smithtown, Inc.*, 89 F. Supp. 3d 556, 570 (E.D.N.Y. 2015) ("[W]hether the Defendants are 'employers' subject to liability [under the NYLL] is analyzed by district courts using the same standards applied to FLSA claims.").  To be held liable as an employer, "an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013).  To determine whether an individual exercises operational control in relation to the plaintiff's employment, the Court examines whether the individual exercised authority over management, supervision, and oversight of the employer's affairs in general, as well

as evidence under the *Carter* framework that reflects the individual's exercise of direct control over the plaintiff-employees.  *See Irizarry*, 722 F.3d at 104–05 (citing *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984)); *id.* at 111.  The *Carter* framework includes the following four nonexclusive and overlapping factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Id.* at 105 (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008)).  The Court makes its determination based on the totality of the circumstances.  *Id.* at 116.

Plaintiff has provided some evidence from which a jury could find that Defendant Liu exercised authority over management, supervision, and oversight of Shang Noodle's affairs generally and Plaintiff's employment specifically.  Liu testified at his deposition that he maintained the company's bank account, including paying vendors and employees.  (Liu Dep., Dkt. 86-2, at 50:19–51:13; Defs.' 56.1 ¶ 47 ("Liu signed a paycheck for Han.")); *see also Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 140 (2d Cir. 1999) (finding that individual defendant was an "employer" based in part on the fact that the defendant "had the authority to sign paychecks").  In addition, Liu purchased the restaurant's equipment and ingredients for the restaurant's kitchen—undoubtedly crucial functions for any restaurant.  (Pl.'s 56.1 ¶¶ 29, 31; Han Dep., Dkt. 86-1, at 103:12–19.)  Liu was also involved in Plaintiff's hiring, though he disputes whether he was a decisionmaker with respect to hiring and firing.  (*Compare* Pl.'s 56.1 ¶¶ 50–52 (stating that after the tryout, "Liu [was] very happy, very satisfied" with Plaintiff's work), *with id.* ¶ 35 ("Liu did not have any input in hiring or firing decisions at Shang Noodle.").)

If a jury were to believe Plaintiff's version of events, it could conclude that Defendant Liu had authority over management, supervision, and oversight of Shang Noodle's affairs in general, as well as over the hiring of employees and employee compensation.  On the other hand, there is very little evidence, if any, that Liu controlled the day-to-day conditions of Plaintiff's employment, e.g., setting work schedules, though Plaintiff argues that Liu had the power to discipline employees even if he did not exercise it.  (*Id.* ¶ 39.)  And, there is no evidence at all with respect to who maintained employee records.  That said, "[n]o one of the[se] factors is dispositive." *Herman*, 172 F.3d at 139.  Because there are genuine questions of material fact with regard to the nature and scope of Liu's role at Shang Noodle, Defendant Liu's motion for summary judgment as to all claims is denied.

## II.     Plaintiff's Retaliation Claims

FLSA and NYLL retaliation claims are analyzed under the same standard.  *Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 130 (S.D.N.Y. 2020).  Courts apply the *McDonnell Douglas* three-step burden-shifting framework to both claims.  *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (citing *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973)).  "[A] plaintiff alleging retaliation under FLSA [or the NYLL] must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  *Id.*  "An employment action disadvantages an employee if 'it well might have dissuaded a reasonable worker from making or supporting [similar] charge[s] . . . .'"  *Id.* (alterations in original) (cleaned up) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  Once the plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate a 'legitimate, non-

[retaliatory] reason for the employment action.'" *Id.* (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)).  If the defendant meets its burden, "the plaintiff must produce 'sufficient evidence to support a rational finding that the legitimate, non-[retaliatory] reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action.'" *Id.* at 53–54 (quoting same).

There are questions of material fact as to whether Defendants retaliated against Plaintiff. Defendants argue that (1) "discovery has established that Defendants did not have anything to do with the creation or distribution" of the retaliatory video and (2) "the [v]ideo had no effect on Plaintiff's ability to acquire or maintain subsequent employment."  (Defs.' Mem. at 5.) Defendants' first argument is wrong on the record.  Plaintiff states that the images of his license that appeared in the video were taken by Defendant Zhang when he was hired at Shang Noodle. (*See* Verified Petition, Dkt. 86-4, ¶¶ 7, 9.)  If the jury believed Plaintiff, a jury could find based on this fact alone that Zhang was involved in the creation and/or posting of the video containing Plaintiff's license.  To be sure, Plaintiff's evidence—which consists of his own statements coupled with the fact that he worked for Defendants and the timing of the video—does not amount to a smoking gun.  But to survive summary judgment, Plaintiff need only create a genuine question of material fact.  *Zalaski*, 613 F.3d at 340.  He does so here.  Thus, a reasonable jury could conclude Defendants were involved in the creation and/or posting of the retaliatory video.

Second, Defendants' argument that the video "had no effect on Plaintiff's ability to acquire or maintain subsequent employment," (Defs.' Mem. at 5), is inapposite because it misstates a plaintiff's burden in establishing the prima facie case for FLSA and NYLL retaliation claims.  As explained above, a plaintiff establishes the prima facie case for a retaliation claim by showing that an employer's action "might have 'dissuaded a reasonable worker from making or supporting

[similar] charge[s] . . . .'"  *Mullins*, 626 F.3d at 53 (alterations in original).  It is not necessary that Plaintiff show that he was actually injured, e.g., unable to find other employment, by the retaliation.  Here, Plaintiff provides evidence demonstrating that a reasonable worker was, in fact, dissuaded from engaging in protected activity due to Defendants' alleged retaliation.  (*See* Wang Aff., Dkt. 30-3 (Shang Noodle employee indicating his desire to participate in a FLSA collective action); Compl., Dkt. 44, ¶ 55 (explaining that the aforementioned employee did not opt in due to fear of retaliation).)  Moreover, very little imagination is required to see how Defendants' purported actions would dissuade a reasonable worker from participating in protected activities: the circulation of such a video[5] clearly could have detrimental consequences for any person's ability to find and maintain work.

Because Defendants are unable to demonstrate the absence of questions of material fact on Plaintiff's retaliation claims, those claims will proceed to trial.

## III.   Plaintiff's Overtime Claim

Plaintiff's NYLL overtime claim against all Defendants also survives.  Defendants argue that Plaintiff was not entitled to overtime pay because his primary duties were managerial, and the NYLL's implementing regulations exempt employees who work in a "bona fide" "[e]xecutive, administrative[,] or professional capacity."  N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.14(c)(4). Courts apply FLSA standards in analyzing NYLL overtime claims.  *Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 519–20 & n.11 (S.D.N.Y. 2013); *Fermin v. Las Delicias Peruanas*

---

[5]  The Court notes that in addition to disparaging Plaintiff, the video includes Plaintiff's personally identifiable information ("PII") in the form of Plaintiff's birthdate.  Moreover, Plaintiff's own attorney filed the screenshots of the video on the public docket without redaction in violation of Rule 5.2(a).  (Dkt. 86-5.)  The Court has sealed the docket entry in question. Plaintiff's counsel are strongly cautioned that they need to familiarize themselves and comply with the federal rules.  They are directed to re-file the screenshots previously filed at Docket No. 86-5 with Plaintiff's PII properly redacted by October 11, 2024.

*Rest., Inc.*, 93 F. Supp. 3d 19, 43–44 (E.D.N.Y. 2015).  When, as here, an employer seeks to rely on an exemption as a defense to paying overtime, the employer "bears the burden of proving that such exemption applies."  *Martinez*, 930 F. Supp. 2d at 519–20.  "Because the FLSA is a remedial statute, its exemptions are construed narrowly against the employer."  *Id.* at 520 (quoting *Kahn v. Superior Chicken & Ribs, Inc.*, 331 F. Supp. 2d 115, 117 (E.D.N.Y. 2004)).  The FLSA regulations define "employee employed in a bona fide executive capacity" as any employee:

> (1) Compensated on a salary basis at not less than the level set forth in § 541.600;
>
> (2) Whose *primary duty* is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100 (emphasis added).  "Courts analyze these criteria in terms of a 'salary basis' component and a 'duties' component."  *Martinez*, 930 F. Supp. 2d at 520.  Only the "duties" component is at issue here.  An employee's "primary duty" is the "principal, main, major or most important duty that the employee performs," and must be assessed based on all of the facts "with the major emphasis on the character of the employee's job as a whole."  29 C.F.R. § 541.700(a).  Relevant factors include "the relative importance of the exempt duties as compared with other types of duties; . . . the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."  *Id.*  In addition, the FLSA regulations include a nonexhaustive list of activities that constitute "management," including, *inter alia*, "interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the

work of employees;" "recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees;" "planning and controlling the budget; and monitoring or implementing legal compliance measures."  29 C.F.R. §541.102.

Here, the parties dispute whether Plaintiff's primary responsibilities were management. For example, Defendants argue that as "head chef, Plaintiff was in charge of the kitchen" and had the ability to hire and fire, to set pay rates, and to make the schedule.  (Defs.' Mem at 14 (citing Defs.' 56.1 ¶¶ 63–72).)  Plaintiff disputes this, asserting that he was not in charge of how much other kitchen staff were paid, hiring and firing, or making the schedule.  (*See* Pl.'s 56.1 ¶¶ 66–72.) In essence, Plaintiff argues that he was a cook with no managerial responsibilities, while Defendants argue that he was the executive head chef in charge of running every aspect of Shang Noodle's kitchen.  The factual disputes regarding the nature and scope of Plaintiff's duties preclude a determination at this stage of the proceedings that Plaintiff is exempt from NYLL's overtime requirements.  *See Martinez*, 930 F. Supp. 2d at 520.  Consequently, this claim will proceed to trial.

## IV. Wage Notice Claims

Defendants also move for summary judgment on Plaintiff's NYLL wage notice claims, arguing that Plaintiff does not have standing to bring such claims in federal court because he has not demonstrated any concrete injury.  (Defs.' Mem. at 23–25.)  The Court agrees.  To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*,

504 U.S. 555, 560–61 (1992)).  An injury in fact must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560).

The Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'"  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (quoting *Spokeo*, 578 U.S. at 341).  "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."  *Id.* at 427 (emphasis omitted).  Where the plaintiff does not establish a concrete injury fairly traceable to the statutory violation, the plaintiff lacks Article III standing.  *See, e.g.*, *Sevilla v. House of Salads One LLC*, No. 20-CV-6072 (PKC) (CLP), 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022); *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 372–73 (E.D.N.Y. 2022).

In this case, Plaintiff fails to raise a genuine question of material fact as to whether he suffered a concrete injury because of Defendants' failure to provide wage statements.  *See Lujan*, 504 U.S. at 561 (explaining that standing must be established "with the manner and degree of evidence required at the successive stages of the litigation").  Plaintiff attempts to demonstrate concrete injury by conclusorily arguing that because he did not receive a wage statement, he "did not know how much he was in fact supposed to be paid."  (Pl.'s Mem. Opp'n Summ. J., Dkt. 85, at 27.)  But the evidence in the record clearly contradicts that.  Plaintiff testified that Defendants agreed to pay him $6,000 per month, and to the extent that they paid him at all, it was at that rate. (*See* Han Dep., Dkt. 86-1, at 93:11–94:3 (Plaintiff testifying that his payrate at Shang Noodle was "6K . . . per month"); Liu Dep., Dkt. 86-2, at 81:2–82:12 (noting that Plaintiff's paycheck from Shang Noodle for the second half of August 2019 was $3,000).)  Indeed, Plaintiff seems to concede

that he knew his payrate, because in addition to arguing that he "did not know how much he was in fact supposed to be paid," (Pl.'s Mem. Opp'n Summ. J., Dkt. 85, at 23), Plaintiff also states that "[t]he [C]ourt should disregard the fact that *[P]laintiff knew that his rate was six thousand* for at no point in time was [P]laintiff ever paid that amount," (*id.* (emphasis added)).  But, as explained above, the sole time that Plaintiff was paid, he was paid at a rate of $6,000 per month.  (*See* Liu Dep., Dkt. 86-2, at 81:2–82:12.)  Furthermore, even if Plaintiff could establish that he did not know what he was supposed to be paid, he still has failed to put forth any evidence (or argument) about how that lack of knowledge caused him injury.  *See, e.g.*, *Sanchez*, 643 F. Supp. 3d at 373 n.5 (explaining that a plaintiff must allege specific facts to demonstrate injury by "downstream consequences from the defendant's failure to provide information as required by statute").

Accordingly, because Plaintiff has not raised a genuine issue of material fact as to whether he was injured by the failure to receive compliant wage notices, summary judgment is granted on his NYLL wage notice claims.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment as to Plaintiff's wage notice claims, and denies it as to all other remaining claims, including as against Defendant Liu.  Further, Plaintiff's counsel is ordered to re-file the screenshots previously filed at Docket No. 86-5 with Plaintiff's PII properly redacted by October 11, 2024.  Finally, because Plaintiff has not moved against Defendants' counterclaims, those will proceed to trial.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 27, 2024
       Brooklyn, New York

14