UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
BAIGUANG HAN, *individually and on behalf of others similarly situated*,

Plaintiff,

- against -

SHANG NOODLE HOUSE, INC. d/b/a/ Shang Kitchen, *et al.*,

Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-2266 (PKC) (VMS)

PAMELA K. CHEN, United States District Judge:

On May 19, 2020, Plaintiff Baiguang Han initiated this lawsuit, alleging various violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). (Compl., Dkt. 1, ¶¶ 54–97.) One month prior to trial, Plaintiff accepted an offer of judgment pursuant to Federal Rule of Civil Procedure ("Rule") 68, (Dkt. 98), and judgment was entered in favor of Plaintiff, (Dkt. 99). Presently before the Court is Plaintiff's motion for attorneys' fees and costs pursuant to 29 U.S.C. § 216(b) and N.Y. Lab. Law §§ 198(1-a), 663(1). (Pl.'s Mot. for Att'y's Fees and Costs, Dkt. 100.) Plaintiff's counsel, the Troy Law firm, requests $71,763.00 in attorneys' fees and $11,271.31 in costs. (Pl.'s Invoice ("Invoice"), Dkt. 101-10, at 8.)

Troy Law is "a regular presence in courtrooms in the Eastern and Southern Districts of New York, and the conduct of attorneys at that firm has been the subject of well-documented critiques," particularly with respect to "their recurring filing of bloated and excessive attorney[s'] fee applications, which are routinely slashed time and again by numerous courts." *Boon Hooi Teoh v. Manhasset Rest., LLC*, No. 22-CV-4110 (NJC) (LGD), 2025 WL 1088045, at *1 (E.D.N.Y. Apr. 10, 2025) (collecting cases), *report and recommendation adopted*, No. 22-CV-4110 (NJC) (LGD), 2025 WL 1736835 (E.D.N.Y. June 23, 2025). A "treatise worth of case law has emerged

about the rates and hours that Troy Law has requested. And courts have balked at the sort of rates requested [by Troy Law]." *Garcia v. Francis Gen. Constr. Inc.*, No. 20-CV-4323 (JPC), 2022 WL 2698434, at *7 (S.D.N.Y. July 12, 2022); *see Dong Yuan v. & Hair Lounge Inc.*, No. 18-CV-11905 (AT) (BCM), 2023 WL 4534872, at *4 (S.D.N.Y. June 28, 2023) (collecting cases where courts have rejected Troy Law's rates), *report and recommendation adopted*, No. 18-CV-11905 (AT) (BCM), 2023 WL 4535085 (S.D.N.Y. July 13, 2023).

This case is no exception. For the reasons set forth below, in light of Troy Law's excessive hourly rates, as well as its inflated, duplicative, vague, and anachronistic billing entries, the Court finds that Plaintiff's counsel is entitled to $25,732.41 in attorneys' fees and $4,318.70 in costs, and directs Troy Law to show cause why sanctions should not be imposed.

## BACKGROUND[1]

Plaintiff seeks $71,763.00 in attorneys' fees for 220.78 hours of work performed by six employees of Troy Law, and $11,271.31 in costs. (*See* Invoice, Dkt. 101-10, at 8; Decl. of John Troy ("Troy Decl."), Dkt. 101, ¶¶ 12, 26, 38, 51, 55, 58); *but see infra* nn. 16–17 (discussing errors in Troy Law's calculation of hours). In response, Defendants ask the Court to deny Plaintiff's request in its entirety because "[t]he requested hourly rates for Plaintiff's counsels and their staff are extremely unreasonable, . . . . the hours billed are unreasonable, . . . the invoice submitted by Plaintiff's counsel contains excessive, vague, and unreasonable formulaic time entries[,] . . . . [and] Plaintiff's counsel continues to seek attorney rates for clerical, administrative, and routine work . . . ." (Defs.' Mem. Opp'n to Att'y's Fees ("Opp'n"), Dkt. 103, at 1.) In the

[1] The facts of this case have been set forth in detail in prior opinions in this litigation, most recently in *Baiguang Han v. Shang Noodle House, Inc.*, No. 20-CV-2266 (PKC) (VMS), 2024 WL 4333825 (E.D.N.Y. Sep. 27, 2024). The Court will recount only those facts necessary to resolve the instant motion for attorneys' fees and costs.

alternative, Defendants assert that, at the very least, "the hourly rates, and hours billed should be substantially reduced." *Id.*

**DISCUSSION**

## I. Applicable Legal Standards

"The FLSA and NYLL authorize courts to award a prevailing plaintiff reasonable attorneys' fees and costs." *You Qing Wang v. XBB, Inc.*, No. 18-CV-7341 (PKC) (ST), 2023 WL 2614143, at *2 (E.D.N.Y. Mar. 23, 2023) (citing *Griffin v. Astro Moving & Storage Co.*, No. 11-CV-1844 (MKB), 2015 WL 1476415, at *6 (E.D.N.Y. Mar. 31, 2015)); 29 U.S.C. § 216(b) ("The court in [an FLSA] action shall . . . allow a reasonable attorney[s'] fee to be paid by the defendant[s], and costs of the action."); N.Y. Lab. Law § 198(1-a) ("In any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover . . . all reasonable attorney[s'] fees . . . ."); *id.* § 663(1) ("If any employee is paid . . . less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover . . . the amount of any such underpayments, together with costs[, and] all reasonable attorney[s'] fees . . . ."). "The acceptance of a Rule 68 offer of judgment establishes that Plaintiff[] [is] the prevailing party under FLSA and NYLL." *Zhongzhi Zang v. Daxi Sichuan, Inc.*, No. 18-CV-6910 (DG) (SJB), 2023 WL 2305934, at *2 (E.D.N.Y. Mar. 1, 2023); *Lu Wan v. YWL USA Inc.*, No. 18-CV-10334 (CS), 2021 WL 1905036, at *3 (S.D.N.Y. May 12, 2021) ("The Rule 68 offer of judgment in this case establishes that Plaintiff is the prevailing party under the . . . NYLL.").

In the Second Circuit, the "starting point" in analyzing whether an application for attorneys' fees is appropriate is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case[.]" *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (explaining that the lodestar calculation creates a "presumptively

reasonable fee" (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008))). District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, No. 03-CV-5166 (TCP) (WDW), 2005 WL 2305002, at *2 (E.D.N.Y. Sep. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)); *accord You Qing Wang*, 2023 WL 2614143, at *2. Reasonable hourly rates are informed in part by the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). A district court should "bear in mind all of the case-specific variables that [the court] and other courts have identified as relevant to the reasonableness of attorney[s'] fees in setting a reasonable hourly rate." *Arbor Hill*, 522 F.3d at 190 (emphasis omitted). To determine the reasonable hourly rates in the district in which it sits, a court may take "judicial notice of the rates awarded in prior cases" and rely on "the court's own familiarity with the rates prevailing in the district." *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005). A presumptively reasonable attorneys' fee "boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citation omitted).

The fee applicant "bears the burden of demonstrating the hours expended and the nature of the work performed through contemporaneous time records that describe with specificity the nature of the work done, the hours, and the dates." *Fundora v. 87-10 51st Ave. Owners Corp.*, No. 13-CV-0738 (JO), 2015 WL 729736, at *1 (E.D.N.Y. Feb. 19, 2015) (citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir. 1983)); *see also Ehrlich v.*

*Royal Oak Fin. Servs., Inc.*, No. 12-CV-3551 (BMC), 2012 WL 5438942, at *3 (E.D.N.Y. Nov. 7, 2012) ("The burden is on the party moving for attorneys' fees to justify the hourly rate sought." (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983))). "In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (citing *Hensley*, 461 U.S. at 433–35, 440).

## II. Reasonableness of Troy Law's Requested Fee

### A. Reasonableness of Hourly Rate

"The reasonable hourly rate is the rate a paying client would be willing to pay. . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019) (quoting *Arbor Hill*, 522 F.3d at 190). "That figure should be based on hourly rates 'prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation.'" *New Falls Corp. v. Soni Holdings, LLC*, No. 19-CV-0449 (HG) (LGD), 2023 WL 5806294, at *6 (E.D.N.Y. July 6, 2023) (quoting *Cruz v. Loc. Union No. 3 of Int'l Bd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994)), *report and recommendation adopted*, No. 19-CV-0449 (HG) (LGD), 2023 WL 5806257 (E.D.N.Y. Sep. 7, 2023). Hourly rates in the Eastern District of New York for FLSA and NYLL cases generally range from "$300–$450 for partners, $200–$325 for senior associates, [and] $100–$200 per hour for junior associates." *Montanes v. Avanti Pizza 2 Inc.*, No. 21-CV-0586, 2022 WL 17820103, at *8 (E.D.N.Y. Oct. 20, 2022); *see Yeontai Won v. Gel Factory, Corp.*, No. 20-CV-5269 (EK) (ARL), 2022 WL 903121, at *8 (E.D.N.Y. Jan. 25, 2022) (documenting similar rates), *report and recommendation adopted*, No. 20-CV-5269 (EK) (ARL), 2022 WL 903065 (E.D.N.Y. Mar. 28, 2022). Upon careful consideration, the Court finds that the hourly rates requested here

by Troy Law are unreasonable in light of each timekeeper's level of experience and the tasks that he or she performed.

1. <u>John Troy</u>

John Troy seeks an hourly rate of $650, and a rate of $350 for less-than-partner-level work, for the 19.32 hours he billed in this case. (Troy Decl., Dkt. 101, ¶ 25; Pls.' Reply Supp. Att'y's Fees ("Reply"), Dkt. 106, at 1); *but see infra* p.8 (pointing out inaccuracies in this estimate of hours).[2] In the declaration he submitted as part of his fee application, John Troy states that he received an LLM degree from Dickinson Law School in 1985 and was admitted to the New York bar in 1989. (Troy Decl., Dkt. 101, ¶¶ 13–14.) John Troy claims he has previously been awarded hourly rates of between $650 and $500 for partner-level work, citing to a litany of cases as apparent support. (*Id.* ¶ 24.)

The Court does not find the cases upon which John Troy relies to be persuasive. Many of these cases granted him fees in excess of $500 when he had a far more active role in the case, often assisting in bringing the case to trial. *See Lianhua Weng v. Kung Fu Little Steamed Buns Ramen, Inc.*, No. 17-CV-0273 (LAP), 2021 WL 2043399, at *1–2 (S.D.N.Y. May 21, 2021) (awarding $550.00 an hour for 38.45 of the 77 hours John Troy billed on a case where the plaintiff prevailed at trial); *Junjiang Ji v. JLing, Inc.*, No. 2:15-CV-4194 (SIL), 2023 U.S. Dist. LEXIS 238508, at *9 (E.D.N.Y. Mar. 2, 2023), Dkt. 140 (awarding $550 as an hourly rate for John Troy where the plaintiff succeeded at trial). And even then, John Troy received *less* than $350 for non-partner-level work. *See Lianhua Weng*, 2021 WL 2043399, at *2 (awarding a $300 hourly rate to reflect non-partner work). The other cases John Troy cites to awarded rates between $650 and $500 in

[2] As discussed below, John Troy claims that he did not bill for 10.75 hours of work he performed drafting the affidavits and motion for collective certification in this case as a "demonstration of good faith." (Reply, Dkt. 106, at 1 n.1.)

the context of default judgments, where Troy Law's fee applications were unopposed. *See Guoping Gu v. Lemonleaf Thai Rest. Mineola Corp.*, No. 18-CV-6614 (PKC) (AYS), 2024 WL 3813379, at *1, *10 (E.D.N.Y. June 13, 2024) (awarding John Troy a rate higher than $550 in the context of default judgment); *Jian Zhang v. Chongqing Liuyishou Gourmet NJ Inc.*, No. 18-CV-10359 (CCC), 2019 WL 6318341, at *1, *4 (D.N.J. Nov. 26, 2019) (awarding John Troy a $550 hourly rate in default judgment case). And many of these decisions, such as *Sagbaciela v. Ruby Nail Tarrytown, Inc.*, No. 53960/2021 (N.Y. Sup. Ct. Westchester Cnty. Feb. 27, 2023), and *Zhiqiang Lu v. Golden Fortune Restaurant Inc.*, No. 656927/2019 (N.Y. Sup. Ct. N.Y. Cnty. Apr. 27, 2022), are "oral rulings that the Court is unable to properly assess, and, nonetheless, are from state court and not binding." *Boon Hooi Teoh*, 2025 WL 1088045, at *6 (discounting cases Troy Law cited to for support of the requested hourly rate for similar reasons). Finally, the Court declines to consider the arbitration case John Troy cites to as evidence that he received an hourly rate of $500. (*See* Troy Decl., Dkt. 101, ¶ 24.) As the Court has previously held, "[b]ecause arbitration proceedings are not a matter of public record, this Court cannot ascertain the circumstances around that dispute, which it must since [John] Troy has a documented history of inflating his hourly rates." *You Qing Wang*, 2023 WL 2614143, at *3.

In sum, the Court is not persuaded by the prior decisions that John Troy relies on that he should be granted the requested hourly rate of $650 for partner-level work. To the contrary—courts in this Circuit have largely rejected John Troy's request for a $650 hourly rate. *See, e.g.*, *id.* (rejecting this rate); *Xiaochun Gao v. La Vie En Szechuan Rest. Corp.*, No. 19-CV-2515 (JPC) (KHP), 2024 WL 5284057, at *10 (S.D.N.Y. Dec. 18, 2024) (compiling cases rejecting a $650 hourly rate), *report and recommendation adopted*, No. 19-CV-2515 (JPC) (KHP), 2025 WL 41608 (S.D.N.Y. Jan. 7, 2025); *Jinxu Chen v. L & H Wine & Liquor, Inc.*, No. 19-CV-6115 (PGG) (VF),

2025 WL 733368, at *4–5 (S.D.N.Y. Mar. 7, 2025) (adopting report and recommendation that rejected $650 hourly rate); *Escobar v. Mahopac Food Corp.*, No. 19-CV-0510 (FB) (JRC), 2025 WL 934906, at *18 (E.D.N.Y. Mar. 5, 2025) (rejecting a $650 hourly rate), *report and recommendation adopted*, No. 19-CV-0510 (FB) (JRC), 2025 WL 931283 (E.D.N.Y. Mar. 27, 2025); *Rodpracha v. Pongsri Thai Rest. Corp.*, No. 14-CV-2451 (DF), 2021 WL 6205861, at *2–3 (S.D.N.Y. Dec. 29, 2021) (same).

Here, the Court finds that John Troy's hourly rate is unreasonable in light of the limited role he played in the case. Although John Troy claims he worked 14.25 hours on "partner-level" tasks, (*see* Reply, Dkt. 106, at 1), the firm's log of hours shows him billing **only three-and-a-half** hours for "partner-level" work, which was limited to an intake with the client and a cursory review of the Complaint, (*see generally* Invoice, Dkt. 101-10, at 1–7). John Troy himself admits his limited role in the case, acknowledging that his involvement was "mostly . . . at the client retention, intake, and other initial stages of the case or at points otherwise requiring attorney-client communication." (*See* Reply, Dkt. 106, at 2.) The Court therefore reduces John Troy's hourly rate to $400 for partner-level work. *See Boon Hooi Teoh*, 2025 WL 1088045, at *6–7 (reducing John Troy's hourly rate to $400 in light of his limited role in the case, billing only 45.76 hours out of the 306.04 total hours); *Shanggang Feng v. Kelai Corp.*, 727 F. Supp. 3d 423, 458 (S.D.N.Y. 2024) (declining to award John Troy's requested hourly rate of $650 where he did not play a large role in the underlying trial or appear before the court, and instead "met with the client; drafted pleadings, discovery requests, responses, and motions; and communicated with opposing counsel, among other tasks"); *Dong Yuan*, 2023 WL 4534872, at *5 (recommending an hourly rate of $400 for John Troy where he spent "a total of approximately 12 hours . . . working on this action, half of which, by his own admission, were spent performing paralegal tasks").

The Court similarly finds John Troy's requested rate of $350 per hour for non-partner-related tasks to be grossly excessive. Most of John Troy's non-partner billable hours were devoted to work that a first-year associate or even a paralegal can perform, such as researching a Defendant's property and reviewing and drafting boilerplate documents. (*See* Invoice, Dkt. 101-10, at 1–2 (billing $350 per hour to, *inter alia*, prepare retainer agreement, research Defendants' property and name, and review notice of appearance)); *see infra* pp. 18–19 (explaining that many of the drafts John Troy prepared were boilerplate and basic). While an hourly rate of $350 might be warranted for tasks an experienced associate or partner would perform, the "non-partner" tasks John Troy performed do not warrant this high rate. *See She Jian Guo v. Tommy's Sushi, Inc.*, No. 14-CV-3964 (PAE), 2016 WL 452319, at *6 (S.D.N.Y. Feb. 5, 2016) (finding John Troy's "research into property owned by defendants" and "review[] [of a] two-page form notice of initial pretrial conference" to be "elementary tasks" warranting a reduction). The Court accordingly reduces John Troy's non-partner-level rate to $150 per hour.

John Troy's final arguments in favor of a higher hourly rate are unavailing. First, a higher rate is not warranted merely because it might be commensurate with inflation. (*See* Pl.'s Mem. Supp. Att'y's Fees, Dkt. 102, at 4–5 (requesting a higher rate for this reason).) It is true that some courts within this district have adjusted forum rates in accordance with inflation. *See Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 243–44 (E.D.N.Y. 2025) (calculating rates of "$450–$650 for partners, $300–$450 for senior associates, $150–$300 for junior associates, and $100–$150 for paralegals"). But the Court finds that Troy Law is largely in a league of its own—though not in a positive way—as to its "skill, experience, and reputation," *New Falls Corp.*, 2023 WL 5806294, at *6 (quoting *Cruz*, 34 F.3d at 1159), the latter of which has been "universally regarded as poor," *Dequan Li v. NY Capri Nails & Spa Inc.*, 797 F. Supp. 3d 119, 131 (E.D.N.Y. 2025),

*appeal dismissed* (Jan. 8, 2026). The Court therefore finds these adjusted rates to have little persuasive force here. *See Yuezeng Shen v. ZenTao Inc.*, No. 19-CV-7269 (AMD) (LB), 2025 WL 746478, at *4 (E.D.N.Y. Feb. 18, 2025) (looking to rates awarded to Troy Law in the past five years instead of the adjusted rates), *report and recommendation adopted*, No. 19-CV-7269 (AMD) (LB), 2025 WL 746063 (E.D.N.Y. Mar. 7, 2025); *In re Wang Litig.*, No. 20-CV-5410 (OEM) (TAM), 2026 WL 746922, at *4–6 (E.D.N.Y. Mar. 17, 2026) (declining to adopt the rates adjusted for inflation). Second, the Court does not find John Troy's decision to not charge for his work drafting the affidavits and motion for collective certification to be a reason "why the Court should not further reduce fees." (*See* Reply, Dkt. 106, at 1–2 & n.1.) The Court can hardly take this self-imposed reduction to be a demonstration of "[Troy Law's] good faith and parsimoniousness," *id.*, in light of the absurdly high hourly rate John Troy seeks, which has been repeatedly rejected by courts in this Circuit, and in light of the alarming billing practices the Court details throughout this disproportionately lengthy opinion.[3] If Troy Law wants to reduce its fee request, the solution is not to arbitrarily decide not to bill for certain tasks. Rather, Troy Law should look at the plethora of cases outlining, specifically, its unreasonable, unacceptable, and unscrupulous billing practices. The Court therefore applies a rate of $150 for John Troy's non-partner work in this case.

2. Aaron Schweitzer

Troy Law seeks an hourly rate of $400 for Aaron Schweitzer ("Schweitzer"). (Troy Decl., Dkt. 101, ¶ 37.) According to John Troy's Declaration, Schweitzer is the managing associate at

[3] The length of this decision is disproportionate to the magnitude of the case itself and the fees sought, but it is necessary to further document Troy Law's pattern of seeking excessive fees and to deter, if possible, such behavior in the future by Troy Law. Indeed, the considerable time and resources that this and other courts in this Circuit have had to spend analyzing Troy Law's outsized fee applications further supports strict adherence to the standards that apply to such requests.

Troy Law and graduated from Fordham University Law School in 2016. (*Id.* ¶¶ 26–27.) He was admitted to practice in New Jersey in November 2017, New York in May 2018, Virginia in October 2023, and Georgia in September 2025. (*Id.* ¶ 28.) Schweitzer performed work as a junior and senior associate in this matter between February 1, 2020 and October 7, 2025. (*See generally* Invoice, Dkt. 101-10, at 1–7 (showing work performed by Schweitzer from 2020 to 2025).) The Declaration states that Schweitzer has been awarded hourly rates between $400 and $225 in this Circuit and the Third Circuit. (Troy Decl., Dkt. 101, ¶ 36.)

The Court declines to award Schweitzer's requested rate for many of the same reasons it declines to award John Troy's requested rate. Some of the cases that Schweitzer cites to for support of a $400 hourly rate—*Sagbaciela*, *Zhiqiang Lu*, *Guoping Gu*, and Default J., *Wen Zhang v. Four Seasons Beauty Spa, Inc.*, No. 18-CV-8259 (GHW) (S.D.N.Y. Feb. 8, 2023), Dkt. 239—are either distinguishable because Troy Law obtained a default judgment and therefore its fee application was unopposed, or meaningless because the fees in those cases were awarded through summary state court rulings that the Court cannot meaningfully review. The other cases to which Troy Law cites that awarded Schweitzer a $400 hourly rate are similarly distinguishable because in those cases he served as lead counsel in a multi-day trial. *See Shanggang Feng*, 727 F. Supp. 3d at 458–59 (noting that Schweitzer "conducted and defended the depositions, tried the case, and handled all court appearances" and therefore "achieved substantial success for his client" in a "more complex and involved" case); *Junjiang Ji*, 2023 U.S. Dist. LEXIS 238508, at *9–10 (awarding Schweitzer an hourly rate of $400 where he served as "lead trial counsel" in the bench trial and achieved "success as trial counsel").

Although Schweitzer took on a lead role in this case, the Court finds Plaintiff's success in this action to be much more limited and thus warrants a lower hourly rate. Plaintiff did not bring

this case to trial, instead settling with an offer of judgment. Moreover, there was nothing about this case that was particularly complex. It did not involve novel issues of law, complicated facts, or a multitude of parties. Schweitzer's attempts to make this case more complex failed. The motion for conditional certification was largely denied, (*see* Dkt. 37, at 2), and no one apart from Plaintiff joined the collective action. Plaintiff's wage-and-hour claims under the FLSA and wage notice claims under the NYLL were dismissed at summary judgment. (Memorandum & Order ("M&O"), Dkt. 75, at 15; M&O, Dkt. 88, at 1.) Troy Law's litigation conduct was similarly unimpressive, as counsel failed to comply with Court orders, (*see* 08/03/2022 Dkt. Order; 09/08/2022 Dkt. Order), erroneously released Plaintiff's personally identifiable information without redacting it, (M&O, Dkt. 88, at 10 n.5), and, more gravely, "failed to produce to the defense in discovery—which closed four months ago—two key pieces of evidence[] . . . crucial to [Plaintiff's] retaliation claim," (11/09/2022 Min. Entry). Finally, as the Court notes below, Troy Law's fee submissions contain significant inaccuracies. In light of Troy Law's subpar performance in this straightforward case, the Court awards Schweitzer an hourly rate of $250. *See Yuezeng Shen*, 2025 WL 746478, at *4–5 (awarding Schweitzer $250 per hour where case was relatively "straightforward," collective action notice "was granted for only one location," and "no one joined the collective"); *Zhongzhi Zang*, 2023 WL 2305934, at *2, *4, *10 (awarding Schweitzer $150 per hour where the case was not complex, the court denied the motion for conditional certification, plaintiffs failed to comply with certain rules, and the parties settled before trial with an offer of judgment); *Lu Wan*, 2021 WL 1905036, at *6 (awarding Schweitzer $175 per hour where the case was straightforward, the scope of the collective action was "significantly narrowed," and plaintiff's counsel "consistently failed to demonstrate the level of skill required to perform even simple legal services properly").

3. Tiffany Troy

Troy Law requests a $250 hourly rate for the time billed by Tiffany Troy ("T. Troy"), who is currently an associate at Troy Law. (Troy Decl., Dkt. 101, ¶ 50; *see also* Reply, Dkt. 106, at 2.) Troy Law also requests a $150 hourly rate for T. Troy's clerical work and translation work. (Troy Decl., Dkt. 101, ¶ 50.) John Troy's Declaration notes that T. Troy graduated cum laude from Fordham University Law School, and lists all of the courts in which she is admitted to practice. (*Id.* ¶¶ 38–40.) T. Troy was admitted to the New York bar in June 2021, (*id.* ¶ 39); she performed work on this matter as a clerk and as a junior associate between February 1, 2020 and September 14, 2025. (*See generally* Invoice, Dkt. 101-10 at 1–7.)

For many of the reasons stated above, the Court finds a $250 hourly rate for T. Troy to be excessive. *See* (Troy Decl., Dkt. 101, ¶ 49 (stating T. Troy was awarded $250 per hour in *Guoping Gu*, *Sagbaciela*, and *Wen Zhang*)); *supra* pp. 6–7, 11 (explaining why Troy Law's reliance on certain cases in support of fees is not persuasive). Moreover, the Court finds this rate to be woefully disproportionate to her lack of experience and her relative lack of involvement as an attorney on this matter. *Compare* (Reply, Dkt. 106, at 1 (claiming T. Troy spent only 9.45 hours on attorney-level tasks)), *with Boon Hooi Teoh*, 2025 WL 1088045, at *8–9 (awarding T. Troy an hourly rate of $225 where she "billed substantial hours for substantive work" and "served as lead trial counsel in this case and was successful at trial"). An award of $150 per hour is appropriately reflective of T. Troy's experience, qualifications, and contributions to this case. *See Cheng Zhe Cui v. D Prime Inc.*, No. 20-CV-3667 (OEM) (MMH), 2024 WL 3567008, at *5 (E.D.N.Y. July 29, 2024) (awarding $150 as an hourly rate for T. Troy as "in line with the apt rates of ranges for a more junior associate"); *Yuezeng Shen*, 2025 WL 746478, at *5 (reaching the same outcome); *Dong Yuan*, 2023 WL 4534872, at *9 (reducing T. Troy's hourly rate to $150 per hour); *Singh v.*

*Anmol Food Mart, Inc.*, 768 F. Supp. 3d 434, 448 (E.D.N.Y. 2025) (reducing T. Troy's hourly rate to $175 per hour).

As to T. Troy's non-attorney work, the Court again reminds Troy Law that "interpreting services are distinct from legal services and are not awarded as a component of attorney[s'] fees." *You Qing Wang*, 2023 WL 2614143, at *5 (quoting *Szczepanek v. Dabek*, No. 10-CV-2459 (SJF) (ARL), 2011 WL 846193, at *8 (E.D.N.Y. Mar. 7, 2011), *aff'd*, 465 F. Appx. 74 (2d Cir. 2012)); *Ruo Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13-CV-6667 (PAE) (JCF), 2015 WL 5122530, at *3 (S.D.N.Y. Aug. 31, 2015) (in a case involving Troy Law, declining to award fees for hours in which attorneys engaged in translation work because "[t]ranslation . . . is not legal work"). The Court is deeply troubled by Troy Law's willful disregard of these cases and therefore declines to award T. Troy any compensation for this work. *See You Qing Wang*, 2023 WL 2614143, at *5 (admonishing Troy Law for its "efforts to inappropriately inflate their attorneys' fees"). Finally, as to T. Troy's clerical, pre-bar admission work, the Court finds an hourly rate of $75 to be appropriate given her level of experience; this rate is in line with the comparable hourly rates other courts in the Circuit have awarded her. *See Qiang Lu v. Purple Sushi, Inc.*, No. 19-CV-5828 (JPC), 2024 WL 2781157, at *5 (S.D.N.Y. May 28, 2024) (awarding T. Troy $75 per hour for pre-bar admission work); *De La Cruz Rosas v. Just Salad 60 Third LLC*, No. 18-CV-7342 (JGK) (BCM), 2023 WL 5423982, at *10 (S.D.N.Y. Aug. 4, 2023) (same), *report and recommendation adopted sub nom. Rosas v. Just Salad 600 Third LLC*, No. 18-CV-7342 (JGK), 2023 WL 5390985 (S.D.N.Y. Aug. 22, 2023); *Yingcai Hong v. Mito Asian Fusion, Inc.*, No. 19-CV-3149 (TAM), 2023 WL 3092722, at *6 (Apr. 26, 2023) (same).

4. Eric Chen

Troy Law requests a $250 hourly rate for the time billed by Eric Chen ("Chen"), who was an Associate at Troy Law. (Troy Decl., Dkt. 101, ¶¶ 51, 54.) John Troy's Declaration notes that

Chen was admitted to the New York bar in December 2020. (*Id.* ¶ 53.) The Court notes, concerningly, that in a prior case, Troy Law represented that Chen first was admitted to practice in New York in 2021. *See Zhongzhi Zang*, 2023 WL 2305934, at *4. In any event, Troy Law provides no justification or precedent for this requested rate. Chen was more involved in this matter than T. Troy, but the Court finds that, given his level of experience, an appropriate hourly rate is $150. *See id.* at *4 (awarding Chen an hourly rate of $100); *In re Wang Litig.*, 2026 WL 746922, at *5 (awarding Chen $150 per hour); *Dong Yuan*, 2023 WL 4534872, at *7 (same); *Cheng Zhe Cui*, 2024 WL 3567008, at *5 (same).

5. Preethi Kilaru and Gavin Dass

Troy Law seeks an hourly rate of $200 for Preethi Kilaru ("Kilaru") and $150 for Gavin Dass ("Dass") for their clerical work on the case. (Troy Decl., Dkt. 101, ¶¶ 57, 60.) Kilaru was the managing clerk at Troy Law and had worked with the firm since 2018. (*Id.* ¶ 55.) Dass had worked for Troy Law since 2021. (*Id.* ¶ 58.) Again, the Court finds these requested rates to be unreasonable, given that neither Dass nor Kilaru were admitted to the bar when performing this work. "Employees who perform the types of tasks that Kilaru handled in this case are often awarded an hourly rate of $100 or less . . . ." *You Qing Wang*, 2023 WL 2614143, at *6; *Cheng Zhe Cui*, 2024 WL 3567008, at *6 (rejecting request for $200 hourly rate for Kilaru and granting $75 hourly rate); *De La Cruz Rosas*, 2023 WL 5423982, at *10 (same); *Boon Hooi Teoh*, 2025 WL 1088045, at *9 (same). Accordingly, the Court awards Kilaru an hourly rate of $85, to reflect her superior experience, and Dass an hourly rate of $75. *Qiang Lu*, 2024 WL 2781157, at *5 (awarding Kilaru $100 per hour and Dass $70 per hour to account for different levels of experience); *Yuezeng Shen*, 2025 WL 746478, at *5 (awarding Kilaru $100 per hour and Dass $75 per hour based on similar considerations); *Jian Wu v. Sushi Nomado of Manhattan, Inc.*, No. 17-

CV-4661 (MKV) (VF), 2024 WL 3594564, at *6 (S.D.N.Y. July 30, 2024) (awarding Kilaru and Dass $75 per hour, although not accounting for their different levels of experience).[4]

**B. Reasonableness of the Number of Hours Expended**

As noted, "[d]istrict courts reviewing fee petitions must exclude hours that are excessive, redundant, or otherwise unnecessary, allowing only those hours that are reasonably expended." *Hernandez v. Berlin Newington Assocs., LLC*, 699 F. App'x 96, 97 (2d Cir. 2017) (summary order) (citation modified). In this Circuit, "[district] courts have applied percentage reductions to hours worked on a simple legal question, block billing, hours worked for limited success at trial, vague or inconsistent time entries, . . . [and] unnecessary or inefficient hours worked," *Mango v. Buzzfeed Inc.*, 397 F. Supp. 3d 368, 374–75 (S.D.N.Y. 2019) (citation modified) (collecting cases), and "time spent on clerical tasks," *Lu Wan*, 2021 WL 1905036, at *7 (citation omitted), such as "scanning documents, creating binders, posting documents to ECF, searching publicly-available property records, and creating text messaging groups with clients," *De La Cruz Rosas*, 2023 WL 5423982, at *10. A percentage-based reduction serves as a practical means of "trimming fat from a fee application" rather than "making minute adjustments to individual timekeeping entries." *Dequan Li*, 797 F. Supp. 3d at 130–31 (quoting *Neung Ki Lee v. Mani & Pedi Inc.*, No. 20-CV-10787 (JCM), 2022 WL 3645118, at *13 (S.D.N.Y Aug. 24, 2022)).

---

[4] For the reasons stated above, the Court does not find *Guoping Gu*; *Sagbaciela*; *Lianhua Weng*; *Zhiqiang Lu*; *Wen Zhang*; *Yong Xu v. Kealoha Sushi Inc.*, No. 19-CV-11885 (PAE) (SDA), 2021 U.S. Dist. LEXIS 161396 (S.D.N.Y. Aug. 24, 2021); *Jianhui Hu v. 226 Wild Ginger Inc.*, No. 17-CV-10161 (JGK) (KNF), 2020 U.S. Dist. LEXIS 188650 (S.D.N.Y. Oct. 7, 2020); and *Shusong Lin v. JD Produce Maspeth LLC*, No. 20-CV-2746 (WFK) (TAM) (E.D.N.Y. Feb. 6, 2025), Dkt. 108 to support Kilaru's and Dass's requested hourly rates, because they are either default judgment cases or state court cases. Regardless of any similarity between these cases and the case at hand, the Court simply finds it inappropriate to apply attorney hourly rates to Kilaru's and Dass's performance of paralegal or clerical tasks.

A percentage-based reduction is warranted here. Troy Law's billing records are replete with so many excessive, redundant, and unnecessary entries that a line-by-line reduction is nearly impossible. The Court highlights just some of the concerning billing entries in Troy Law's Invoice, although these are just a sliver of the full scope. Where possible, the Court references caselaw reducing Troy Law's requested fees for the very same reasons the Court does here, to demonstrate that Troy Law is familiar with the impermissibility of its billing practices—and to show its utter refusal to change course.

As an initial matter, Troy Law frequently billed excessive amounts of time to perform what should be relatively short tasks, such as two hours to "[d]ownload and save evidence," 0.5 hours to review a *one-page* waiver of service, and one hour to review the Court's and Judge Scanlon's individual rules, both documents under ten pages.[5] (Invoice, Dkt. 101-10, at 1–3.) These entries are not anomalies. Throughout Troy Law's billing records in this case, attorneys recorded excessive amounts of time to send simple emails. (*See id.* at 2 (T. Troy billing 0.25 hours to email a mediator to "request[] his services"); *id.* at 1 (Kilaru billing 0.5 hours to contact the Department of Labor to "get to know the Case Manager and Case Number" for Plaintiff)); *Zaslavskiy v. Weltman, Weinberg & Reis Co., LPA*, No. 18-CV-4747 (DLI) (RER), 2022 WL 1003589, at *14 (E.D.N.Y. Jan. 5, 2022) (reducing award of fees where attorney billed between 0.3 and 0.4 hours to send emails and "fail[ed] to explain why a communication that 'likely took one or two minutes, if not less'" required that amount of time (citation omitted)). Troy Law's inflation of these figures is confirmed by other billing entries, which show much smaller amounts of time to do commensurate work, (*see, e.g.*, Invoice, Dkt. 101-10, at 2 (documenting 0.08 hours to email

[5] Furthermore, Schweitzer, who billed 0.5 hours to review the Court's and Judge Scanlon's Individual Rules, has appeared before the Court in the past, *see You Qing Wang*, 2023 WL 2614143, and is presumably familiar with its rules.

opposing counsel "on Def representation" and 0.08 hours to email the mediator to confirm a mediation date)).

Even in the context of more substantive work, Troy Law's billing records reflect unnecessary bloat. Such excess billing practices include Schweitzer billing 4.5 hours to draft the Complaint, (*id.* at 1), and John Troy billing 2.5 hours to draft a six-page notice of pendency and his three-page affidavit in support of consolidation, (*id.* at 2). Notably, the Complaint in this action is effectively identical to the one Troy Law filed in *Ji Guo Chen v. Glow Asian Food, Inc.*, 2:19-CV-0630 (ST) (E.D.N.Y. Jan. 31, 2019), Dkt. 1,[6] and the notice of pendency and John Troy's affidavit bear a striking similarity to ones Troy Law has previously filed in other cases.[7] Because these submissions were "self-evidently the result of recycled work" used in numerous prior cases, they should not have taken this long to draft. *See Weidong Li v. Spa Nail 9, Inc.*, No. 19-CV-0873 (AMN) (CFH), 2024 WL 3823209, at *7 (N.D.N.Y. Aug. 14, 2024) (finding 4.5 hours billed to draft a complaint to be excessive where "the portions unique to this [p]laintiff, as opposed to Troy Law's hundreds of other New York state wage and hour plaintiff clients, is limited to less than half of [the] pleading"), *appeal dismissed* (Nov. 18, 2024); *Yu Zhang v. Hito Rest., Inc.*, No. 18-CV-12331 (KPF), 2019 WL 13446990, at *6 (S.D.N.Y. Oct. 25, 2019) (finding excessive the 5.3 hours John Troy billed for drafting and reviewing the complaint in light of "the number of similar lawsuits [John] Troy has filed in this and other districts, and the largely boilerplate nature of the

[6] *Compare* (Compl., Dkt. 1), *with* Compl., *Ji Guo Chen*, Dkt. 1 (presenting, *inter alia*, the same language, save two or three words, in the introduction; the same allegations as to corporate and individual defendants except for substituting names; largely the same collective action allegations; and the same NYLL and FLSA overtime, failure to keep records, failure to provide meals, and wage notice claims).

[7] *Compare* (Notice of Pendency, Dkt. 22-2), *with* Not. of Pendency, *Jian Wu*, Dkt. 73-3; *compare* (John Troy Aff., Dkt. 22), *with* John Troy. Aff., *Jian Wu*, Dkt. 73.

Complaint in this case"); *Yuefeng Shi v. TL & CG Inc.*, No. 19-CV-8502 (SN), 2023 WL 5827598, at *7 (S.D.N.Y. Sep. 8, 2023) (finding the time Schweitzer billed for drafting a motion to be excessive in light of its largely boilerplate language).

Similarly, Troy Law's billing records reflect numerous hours spent on unnecessary, excessive revisions. (*See, e.g.*, Invoice, Dkt. 101-10, at 4 (Schweitzer billing 2.42 hours and then 3.58 hours to draft and revise the Consolidated Complaint)); *id.* at 3 (Chen recording 7.67 hours to revise a twelve-page reply memorandum); *id.* at 4 (Schweitzer billing 2.75 hours to revise a three-page letter).) Of note is the six hours Schweitzer billed to draft the Consolidated Complaint. Although the Consolidated Complaint added allegations based on events occurring after Plaintiff's employment, (*see* Consol. Compl., Dkt. 44, ¶¶ 41–55, 131–40), most of the changes Schweitzer made were non-substantive re-phrasings of existing material[8] or repetitive quotations of the same

[8] (*Compare* Compl., Dkt. 1, ¶ 11 ("The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of the Corporate Defendant and being among the ten largest shareholders and/or LLC members, are individually responsible for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law." (citing N.Y. Bus. Corp. Law § 630(a), N.Y. Ltd. Liab. Co. Law § 609(c))), *with* Consol. Compl., Dkt. 44, ¶ 16 (same, but stating that Defendants are "responsible for unpaid wages under the Section 630, subsection (a) of the New York Business Corporation Law" rather than citing to the statute); *compare* Compl., Dkt. 1, ¶¶ 15–18 (alleging that "SUMMER ZHANG a/k/a Summer Liu known as 'Lady Boss' and Manager to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at SHANG NOODLE HOUSE INC d/b/a Shang Kitchen" and hired, supervised, and paid Plaintiff), *with* Consol. Compl., Dkt. 44, ¶ 19 (stating effectively the same facts, but without bullet points and changing "SUMMER ZHANG" to "Summer" and SHANG NOODLE HOUSE" to "Shang Kitchen"); *compare* Compl., Dkt. 1, ¶¶ 29–41 (alleging Plaintiff Han worked from August 15, 2019 to approximately September 15, 2019, was promised $6,000 in compensation, was never informed of his hourly wage nor provided with a wage notice, worked 74.25 hours per week without break for six days per week, had to work an extra thirty minutes for four or five days a week, had one day off, and was given ten minutes to eat each meal), *with* Consol. Compl., Dkt. 44, ¶¶ 21–30 (setting forth the same facts in different phrasing).)

statutes.[9] These billing inefficiencies warrant a percentage reduction. *See Koszkos v. Janton Indus., Inc.*, No. 15-CV-1700 (SJ) (JO), 2016 WL 4444329, at *8 (E.D.N.Y. Aug. 3, 2016) (finding a reduction in fees warranted where counsel "billed unduly long hours for relatively straightforward tasks and excessive hours for revising and redrafting documents"), *report and recommendation adopted*, 15-CV-1700 (SJ) (JO), 2016 WL 4444782 (E.D.N.Y. Aug. 23, 2016); *Kliger v. Liberty Saverite Supermarket Inc.*, No. 17-CV-2520 (FB) (ST), 2018 WL 4782342, at *10 (E.D.N.Y. Sep. 17, 2018) (reaching a similar conclusion where there were "[twelve] different entries that involve editing and revising the complaint"), *report and recommendation adopted as modified*, No. 17-CV-2520 (FB) (ST), 2018 WL 4783964 (E.D.N.Y. Oct. 3, 2018).

In addition to excessive billing, the Court noticed disconcerting instances of repetitive billing, including duplicative entries, (*see, e.g.*, Invoice, Dkt. 101-10, at 3 (Chen billing three hours to draft Plaintiff's affidavit in support of consolidation and then billing three hours for the exact same task, for the exact same Plaintiff, approximately one week later); *id.* at 2 (Schweitzer billing to "[r]evise [s]tatus [l]etter" and email opposing counsel on December 1, 2020 and again on December 2, 2020); *id.* at 6 (T. Troy billing twice for reviewing and responding to an extension request on November 14, 2024 and November 15, 2024); *id.* at 2–3 (T. Troy billing twice to confirm the mediation date)), or the same tasks performed by multiple attorneys, (*see id.* at 4 (John Troy and Chen billing for reviewing a translated notice of pendency); *id.* at 1–2 (Schweitzer and T. Troy both billing to draft Plaintiff's initial damages calculation); *id.* at 7 (Schweitzer and T. Troy both billing several hours to write and revise the jury instructions)). Some of the duplicative billing reflects a broader pattern of Troy Law seeking to recover "multiple times, for tasks typically

---

[9] (Consol. Compl., Dkt. 44, ¶¶ 89, 109, 117 (quoting N.Y. Lab. Law § 663(1)); *see also id.* ¶¶ 81, 108, 116 (quoting N.Y. Lab. Law § 198.1-a).)

handled by junior attorneys or support staff," *Boon Hooi Teoh*, 2025 WL 1088045, at *9, or to recoup higher fees for tasks that should be handled by more junior attorneys, *see, e.g.*, *Jian Wu*, 2024 WL 3650294, at *10 (observing John Troy billing for tasks "that should have been performed by a more junior attorney or a paralegal," such as drafting status reports, coordinating with opposing counsel on dates, and drafting an amended complaint). The Court sees no reason why tasks such as researching Defendants on ACRIS, reviewing waivers of services or notices of appearance, drafting a boilerplate notice of pendency, writing status reports, and sending scheduling emails needed to be performed by John Troy and Schweitzer when more junior attorneys or paralegals were available at a much lower rate to do that work. (*See* Invoice, Dkt. 101-10, at 1–2, 5 (John Troy and Schweitzer billing to "[s]earch Acris Property record[s]" for information on Defendants; "[r]esearch . . . [Defendants'] property and name"; review notices of appearances and waivers of service; draft a proposed publication order, notice of pendency, and mediation status letter; and email opposing counsel to set up a meet and confer).)

Troy Law further inflates its award of fees by seeking to recover for non-compensable work. As noted above, translation or interpreting services are distinct from legal services and therefore are not awarded as fees. Troy Law has also been warned that it may not recover for clerical tasks, such as copying files, making ministerial communications, downloading documents, organizing files, mailing items, filing electronic documents, scanning identification cards, and creating messaging groups. *See Cheng Zhe Cui*, 2024 WL 3567008, at *8 (explaining that Troy Law could not recover fees for "purely clerical" tasks); *Shi Ming Chen v. Hunan Manor Enter., Inc.*, No. 17-CV-0802 (GBD) (GWG), 2024 WL 2140119, at *8 (S.D.N.Y. May 14, 2024) (reducing award where entries showed John Troy performing clerical tasks, such as "scanning documents, creating binders, and filing documents" (citations omitted)), *report and*

*recommendation adopted*, No. 17-CV-0802 (GBD) (GWG), 2024 WL 3454751 (S.D.N.Y. July 18, 2024).[10] Heedless to these warnings, Troy Law billed for T. Troy's translation work, sometimes at an attorney rate, (*see* Invoice, Dkt. 101-10, at 3–4, 6), as well as for clerical tasks such as "[s]can[ning] and [v]erify[ing] ID[s]," (*id.* at 1), creating a binder and group chat for the case, (*id.*), searching files for unsent documents, (*id.* at 6), filing documents, (*id.* at 6 ("File Notice of Intention"); *id.* at 2 ("ecf to the Court")), mailing documents, (*id.* at 1), and downloading and saving evidence, (*id.* at 3). Troy Law also impermissibly seeks to recover the fees it incurred in moving for attorneys' fees. (*See id.* at 7.) Plaintiff's accepted offer of judgment authorized recovery of "reasonable attorneys' fees, costs, and expenses *to date of this offer*." (Offer of J., Dkt. 98-1, at 1 (emphasis added).) Courts in this Circuit have found this exact language to preclude "any fees for legal work or costs incurred after" the offer of judgment, including fees incurred in applying for fees. *EZ Pawn Corp. v. City of New York*, No. 16-CV-3852 (PKC) (SMG), 2024 WL 3431007, at *7 (E.D.N.Y. July 15, 2024) (declining to grant fees because the Rule 68 offer was "exclusive of reasonable attorney[s'] fees, expenses, and costs to the date of this offer"); *see Lilly*, 934 F.3d at 235 (holding that offer of judgment that contemplated fees only "up until the date of the offer" precluded recovery of fees accrued after the offer date).

---

[10] *Siegel v. Bloomberg L.P.*, No. 13-CV-1351 (DF), 2016 WL 1211849, at *7–8 (S.D.N.Y. Mar. 22, 2016) (reducing fee award for time spent downloading, scanning, and copying documents and organizing files); *In re Wang Litig.*, 2026 WL 746922, at *8 (reducing award for time spent printing and mailing); *Yuezeng Shen*, 2025 WL 746478, at *6 (reducing fees for "filing documents, printing, scanning identification cards, and creating messaging channels"); *cf. O.R. v. New York City Dep't of Educ.*, 340 F. Supp. 3d 357, 368 (S.D.N.Y. 2018) (declining to compensate secretarial work, "including copying a file, informing individuals about hearing scheduling, preparing a bill, and having other ministerial communications with witnesses or clients"); *Mugavero v. Arms Acres, Inc.*, No. 03-CV-5724 (PGG), 2010 WL 451045, at *8 (S.D.N.Y. Feb. 9, 2010) (reducing fee award for hours spent typing time records).

Other entries strike the Court as potentially excessive, but due to Troy Law's vague descriptions, the Court is unable to test these entries for reasonableness. Several entries reflect amorphous descriptions of documents or meetings—such as "Mediation Position Letter," "IPTC Order," "IPTC Memo," "Mediation," or "IPTC," (*see* Invoice, Dkt. 101-10, at 2–3)—without mention of actual tasks of drafting, reading, attending, traveling to, or reviewing. Other entries, meanwhile, are so vague as to deprive the Court of any sense of reasonableness, such as "Translate Evidence," "Prepare Jury Materials," "2d Han Depo Prep," "IPTC Prep," or "oppose Defendants' motion for leave to add counterclaims." (*Id.* at 2–3, 6–7); *see Zhongzhi Zang*, 2023 WL 2305934, at *7 (finding entries such as "evidence prep" and "review docs for depo" to be vague); *In re Wang Litig.*, 2026 WL 746922, at *7 (finding entries such as "review case" and "Help out with Conference" to be vague); *Cheng Zhe Cui*, 2024 WL 3567008, at *8 (finding entries such as "Translate for Clients, Trial Prep," to be vague). This vagueness is of a particular concern with respect to Troy Law's entries for court appearances, which exceeded the time the Court recorded for each conference. (*Compare* Invoice, Dkt. 101-10, at 2 (billing 0.67 hours for "IPTC"), *with* 11/13/2020 Min. Entry (logging eighteen minutes for telephonic initial conference that day); *compare* Invoice, Dkt. 101-10, at 3 (billing 0.58 hours for "oral argument re: MCCC, MtAmend Answer"); *with* 03/03/2021 Min. Entry (logging twenty-five minutes for telephone conference that day); *compare* Invoice, Dkt. 101-10, at 4 (billing 0.58 hours for "status conf"), *with* 11/18/2021 Min. Entry (logging twenty-one minutes for a telephone conference); *compare* Invoice, Dkt. 101-10, at 5 (billing 0.5 hours for a "status conference"), *with* 04/13/2022 Min. Entry (logging eight minutes for the telephone conference).) Although travel to and from such Court meetings are compensable at half the attorney's full rate, *Small v. New York City Transit Auth.*, No. 03-CV-2139 (SLT) (MDG), 2014 WL 1236619, at *12 (E.D.N.Y. Mar. 25, 2014), these conferences were

all telephonic and did not require any travel. Troy Law does not explain these discrepancies. *See Singh v. Lintech Elec., Inc.*, No. 18-CV-5780 (FB) (LB), 2022 WL 1422311, at *9 & n.7 (E.D.N.Y. Mar. 3, 2022) (reducing time where billing record contained entries that did not correlate with the time the court recorded for telephonic conferences, such as counsel billing one hour for a conference that court's log recorded as lasting thirty-one minutes), *report and recommendation adopted*, No. 18-CV-5780 (FB) (LB), 2022 WL 2158748 (E.D.N.Y. June 15, 2022).[11]

More gravely, several entries give the Court the impression that Troy Law's billing records were not contemporaneously recorded and are unreliable. First, the Court notes that Troy Law has billed the *exact same* time to perform certain tasks across over a litany of cases.[12] Troy Law has billed precisely 2.2 hours for one intake—and, occasionally, 2.2 hours to conduct two intakes—in over ten cases.[13] Troy Law similarly billed 4.5 hours to draft a complaint across a variety of

---

[11] Ostensibly, Troy Law's additional time billed for these entries could reflect time *joining a phone call and waiting* for a particular conference to start. However, it is not the Court's responsibility to fill in an ambiguity in a firm's billing records. *See Riley v. City of New York*, No. 10-CV-2513 (MKB) (RML), 2015 WL 9592518, at *5 (E.D.N.Y. Dec. 31, 2015) (observing that time spent waiting for conferences to begin may be recovered but finding that "the Court is unable to make any meaningful assessment" about whether that was the case when an attorney billed six hours for a 4.5-hour conference because "the entries are too vague").

[12] The Court may take judicial notice "of documents filed in other cases and other courts." *Baltas v. Maiga*, No. 3:20-CV-1177 (MPS) (RAR), 2020 WL 6275224, at *6 n.4 (D. Conn. Oct. 26, 2020).

[13] *See Lianhua Weng*, 2021 WL 2043399, at *2 (observing that "each of [John] Troy's client intake meetings is 2.2 hours"); *Kuanyu Chen v. LJC Trading N.Y., Inc.*, No. 19-CV-3276 (SJF) (AKT), 2020 WL 10574176, at *11 (E.D.N.Y. Nov. 20, 2020) (similarly noting a 2.2-hour intake meeting); Invoice at 1, *Ying v. All-Ways Forwarding of N.Y. Inc.*, No. 20-CV-6242 (ENV) (MMH) (E.D.N.Y. Feb. 3, 2023), Dkt. 47-1 (same); Invoice at 1, *Weiqing Gao v. Strong Am. Ltd.*, No. 17-CV-5571 (ILG) (JO) (E.D.N.Y. Feb. 1, 2018), Dkt. 16-3 (same); Invoice at 1, *Feng Lin v. Quality Woods, Inc.*, No. 17-CV-3043 (DLI) (SJB) (E.D.N.Y. Jan. 19, 2021), Dkt. 82-8 (same); Invoice at 1, *Chi Wai Shum v. JILI Inc.*, No. 17-CV-7600 (RPK) (VMS) (E.D.N.Y. Apr. 5, 2022), Dkt. 88-3 (same); (Dkt. 104-1, at 1 (same); Dkt. 104-2, at 1 (same); Dkt. 104-3, at 1 (same); Dkt. 104-4, at 1 (same); Dkt. 104-5, at 1 (same)).

cases.[14] (*See* Invoice, Dkt. 101-10, at 1 (Schweitzer billing 4.5 hours to draft Complaint).) While it is possible that Troy Law has perfected the art of the 2.2-hour intake, "it is difficult to see how the time . . . expended on [ten] cases would so consistently be the same, regardless of whether the same tasks were being performed." *See Bhungalia Fam., LLC v. Agarwal*, 317 F. Supp. 3d 727, 743 (S.D.N.Y. 2018) (finding "the identical amounts of time recorded in the two actions give rise to questions regarding the reliability of the time entries"); *De La Cruz Rosas*, 2023 WL 5423982, at *12 (finding that "[i]t is simply not credible that each time an attorney or paraprofessional [from Troy Law] calculated damages for a plaintiff in this case . . . the task required exactly 1.4 hours to complete"). A likelier explanation is that Troy Law "mechanical[ly] list[s] . . . the same entry and time," in case after case, "irrespective of what work was in fact being done." *See Balestriere PLLC v. CMA Trading, Inc.*, No. 11-CV-9459 (MHD), 2014 WL 7404068, at *11 (S.D.N.Y. Dec. 31, 2014) (finding "a long array of more or less identical entries each working day, and each entry cit[ing] the same amount of time, day after day" to be "at least suspect").

Other irregularities threaten the credibility of Troy Law's billing records. For example, Troy Law's billing records show that on January 21, 2021, Chen billed three hours for drafting an affidavit for Plaintiff. (Invoice, Dkt. 101-10, at 3.) But Chen later attested before a notary, *under penalty of perjury*, that Plaintiff told him "what to write in [Plaintiff's] affidavit on *January 27, 2021*," (Pl.'s Aff., Dkt. 30-2, at 8 (emphasis added)). These chronologically-suspect entries appear

---

[14] *See Weidong Li*, 2024 WL 3823209, at *7 (seeking 4.5 hours for drafting complaint); *Zhenhai Wei v. Sichuan Pepper, Inc.*, No. 3:19-CV-0525 (JBA) (TOF), 2022 WL 385226, at *19 (D. Conn. Jan. 17, 2022) (same), *report and recommendation adopted*, No. 3:19-CV-0525 (JBA) (TOF), 2022 WL 382019 (D. Conn. Feb. 7, 2022); Invoice at 1, *Li Zhen Zhu v. Wanrong Trading Corp.*, No. 18-CV-0417 (ENV) (MMH) (E.D.N.Y. Apr. 20, 2023), Dkt. 122-1 (same); Invoice at 1, *Ying*, Dkt. 47-1 (same); Invoice at 1, *Weiqing Gao*, Dkt. 16-3 (same); Invoice at 1, *Feng Lin*, Dkt. 82-8 (same); Invoice at 1, *Chi Wai Shum*, Dkt. 88-3 (same); (Dkts. 104-1, 104-2, 104-3, 104-4, 104-5 (same)).

elsewhere in Troy Law's records and include: (1) Chen billing for reviewing Defendants' motion in opposition to conditional certification on January 28, 2021—two days *after* he billed to draft a reply to this motion, (Invoice, Dkt. 101-10, at 3); (2) Schweitzer billing 2.95 hours to "draft opposition to [Defendants'] motion for summary judgment" on October 11, 2022—over one month before Defendants served their motion,[15] (*id.* at 6; *see* Notice of Service, Dkt. 67); and (3) John Troy billing to draft Plaintiff's affidavit on November 25, 2020 and revising the affidavit on November 28, 2020, (Invoice, Dkt. 101-10, at 2), seemingly contrary to Plaintiff's sworn statement that he spoke to *Chen*, not John Troy, on November 28, 2020, to tell him "what to write in [Plaintiff's] affidavit," (Pl.'s Aff., Dkt. 22-4, at 10).

As numerous courts in this Circuit have held, "[t]he existence of even a few inconsistencies and questionable billing entries . . . renders the entire record suspect" and warrants a reduction of attorneys' fees. *Haifeng Xie v. Sakura Kai I Inc.*, No. 17-CV-7509 (ILG) (JO), 2020 WL 2569406, at *1–2 (E.D.N.Y. May 20, 2020).

In light of the numerous ways that Troy Law has padded its hours, billed for unrecoverable tasks, failed to delegate to junior attorneys, obscured meaningful review of its hours, and raised doubts about the veracity and contemporaneity of its recordkeeping, the Court finds that a reduction of 40% of the total hours claimed by Troy Law is appropriate, if not conservative. *See You Qing Wang*, 2023 WL 2614143, at *7 (reducing the total hours billed by 40% where Troy Law submitted invoices with duplicate entries, excessive amounts of time to review documents, and inappropriate tasks performed by a senior partner); *Lu Wan*, 2021 WL 1905036, at *7 (employing a 40% reduction of the total hours billed because Troy Law "improperly billed at

[15] Charitably read, this entry could reflect Schweitzer's drafting of Plaintiff's opposition to Defendants' pre-motion conference letter, which was filed that day. (*See* Dkt. 66.) Ultimately, the seeming inaccuracy of this entry provides an independent ground to reduce fees.

attorney rates for numerous tasks that [were] administrative in nature or should have been performed by a paralegal, and also billed for excessive or otherwise unnecessary hours"); *Haifeng Xie*, 2020 WL 4587473, at *3–4 (reducing hours billed by 40% where Troy Law's billing records contained repetitive entries and other "inconsistencies and questionable entries render[ed] them less than wholly reliable"), *report and recommendation adopted*, No. 17-CV-7509 (ILG) (JO), 2020 WL 2569406 (E.D.N.Y. May 20, 2020); *Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633 (ARR) (JO), 2020 WL 4783399, at *8 (E.D.N.Y. Aug. 18, 2020) (reducing total hours billed by 40% where Troy Law's "billing records frequently are vague and redundant and reflect overstaffing and poor billing judgment"); *De La Cruz Rosas*, 2023 WL 5423982, at *13 (reducing compensable hours billed by 70% in part because John Troy's billing practices "bring his namesake firm into disrepute, and give the Court little confidence that *any* of Troy Law's time entries are accurate").

## III. Calculation of Attorneys' Fees and Costs

### A. Attorneys' Fees

Based on the above-discussed hourly rate decreases and across-the-board percentage reduction of hours, the Court awards Troy Law a total of $25,732.41 in attorneys' fees. The following chart reflects the Court's calculation of these fees, including footnoted explanations of specific reductions in the hours claimed by John and T. Troy, which the Court has applied separately and before the percentage reduction of total hours claimed by Troy Law:

| Name | Awarded Rate | Hours Requested | Reduction | Total |
|---|---|---|---|---|
| John Troy | $ 400 (partner-level work) | 3.50[16] | 40% | $840.00 |
| | $ 150 (non-partner work) | 5.07 | 40% | $456.30 |
| Aaron Schweitzer | $250 | 130.31 | 40% | $19,546.50 |
| Tiffany Troy | $150 (associate-level work) | 8.70[17] | 40% | $783.00 |
| | $75 (clerical work) | 5.06 | 40% | $227.70 |
| | $ 0 (translation work) | 9.70 | 40% | $0.00 |
| Eric Chen | $150 | 39.09 | 40% | $3,518.10 |
| Preethi Kilaru | $85 | 1.26 | 40% | $64.26 |
| Gavin Dass | $75 | 6.59 | 40% | $296.55 |
| **TOTAL** | | **209.28** | | **$25,732.41** |

### B. Costs

Under both the FLSA and NYLL, a prevailing plaintiff may recover his reasonable costs. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney[s'] fee to be paid by the defendant, and costs of the action."); N.Y. Lab. Law § 663(1) ("If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney[s'] fees, prejudgment interest as required under the civil practice law and rule[] . . . ."). To recover such costs, the requesting party must substantiate the request with "extrinsic proof, such as invoices or receipts." *She Jian Guo*, 2016 WL 452319, at *3. Here, Troy Law seeks

[16] As noted above, although John Troy claims to have worked 14.25 hours on "partner-level" tasks, (*see* Reply, Dkt. 106, at 1), the firm's log of hours only shows him spending 3.5 hours on "partner-level" work, (*see generally* Invoice, Dkt. 101-10). The only way to reach John Troy's 14.25-hour figure is by adding 10.75 hours to John Troy's billing—the 10.75 hours that John Troy claims he did not bill for as demonstration of "good faith." (*See* Reply, Dkt. 106, at 1 n.1.) John Troy therefore will only be compensated for 3.5 hours of partner-level work.

[17] As previously noted, although T. Troy claims that she worked 9.45 hours at an associate-level rate, (*see* Reply, Dkt. 106, at 1), this figure erroneously includes the 0.75 hours she billed on December 23, 2022 for translation work, (*see* Invoice, Dkt. 101-10, at 6 (billing at $250 per hour for "Translate for Client Han, Affidavit in Oppo MSJ")). T. Troy thus spent only 8.70 hours doing associate-level work.

$4,340.81 for filing, printing, and mailing fees, as well as interpreting, mediation, and reporting services. (Invoice, Dkt. 101-10, at 8.) Troy Law provides invoices or receipts for all of these entries, save the $22.11 expended for printing and mailing the waiver of service, summons, and Complaint. (*See generally* Receipts, Dkt. 101-11.)[18] Absent documentation, this amount cannot be recovered.

Inexplicably, Troy Law also seeks to recover the $6,930.50 "Sanction Payment" it made to opposing counsel and attaches an uncleared check as proof. (*See* Invoice, Dkt. 101-10, at 8; Receipts, Dkt. 101-11, at 6.) It is beyond obvious—but apparently needs to be stated—that the reasonable costs an attorney may recover *does not* include the sanctions the attorney was ordered to pay by the Court in connection with the litigation. Accordingly, the Court grants Troy Law only $4,318.70 for its documented, legitimate litigation costs.

**IV. Order to Show Cause: Sanctions**

This Court previously warned Troy Law that "based on its blatant attempts to improperly inflate its attorneys' fees request—by seeking attorneys' fees for non-legal work, *e.g.*, the work done by [T.] Troy and Kilaru, and seeking patently unjustified hourly rates, *e.g.*, [John] Troy [and] Schweitzer[] . . . —the Court came close to sanctioning Troy Law, and will do so in the future, should Troy Law repeat these practices before this Court." *You Qing Wang*, 2023 WL 2614143, at *8. Other courts have threatened disciplinary sanctions for Troy Law's "persistent practice of requesting exorbitant attorneys' fees and misusing persuasive authority in support of their requests." *See Jianmin Jin*, 2020 WL 4783399, at *10; *Weigang Wang v. Chapei LLC*, 849 F. App'x 360, 361 (3d Cir. 2021) (unpublished) (affirming denial of fees to Troy Law where the

[18] Troy Law also provides a copy of a docket entry for proof of their filing fee. (Receipts, Dkt. 101-11, at 10–12.) The Court may take judicial notice of this entry as proof of payment. *Shi Ming Chen*, 2024 WL 2140119, at *10.

"lone data point" the firm provided in support of fees was "readily distinguishable and unpersuasive," the firm misstated hourly rates, and "the deficiencies identified by the [d]istrict [c]ourt compromised a meaningful review of the claimed fees under the lodestar method").

But Troy Law has persisted in these practices. Some of the many dishonest, deceptive, and disingenuous representations in Troy Law's current Motion for Attorneys' Fees include: (1) omitting and simply ignoring the multitude of cases rejecting the rates it seeks, (2) repeatedly citing to cases rejected as incomparable by courts instead of admitting that it seeks a departure from prevailing rates, (3) frivolously seeking compensation for unrecoverable costs, such as the sanctions payments it made, (4) billing for plainly uncompensable work, (5) billing for duplicative work, (6) submitting billing entries that seemingly contradict sworn statements made under penalty of perjury, and (7) misrepresenting the number of hours worked. The Court could brush these errors off as the product of sloppy recordkeeping and lawyering had they occurred once, or even twice. But considering Troy Law's track record of submitting patently excessive and unreliable fee requests and being sanctioned for failing to guard against false testimony,[19] the inevitable conclusion is that Troy Law's approach is intentional.

Practicing before this Court is a privilege with attendant duties. Relevant here is an attorney's certification when "presenting to the court a pleading, written motion, or other paper" that, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the filing "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; "the

[19] *Chen*, 2023 WL 6292576, at *2 (compiling cases); *Feng Lin v. Quality Woods, Inc.*, No. 17-CV-3043 (DLI) (SJB), 2021 WL 2343179, at *6 (E.D.N.Y. June 4, 2021) (ordering Troy Law to show cause why sanctions should not be issued where the firm "signed and submitted multiple documents to this Court with demonstrably false information"), *report and recommendation adopted*, No. 17-CV-3043 (DLI) (SJB), 2021 WL 4129151 (E.D.N.Y. Aug. 10, 2021).

claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). It is well established that the "filing of complaints, papers, or other motions without taking the necessary care in their preparation is a[n] . . . abuse of the judicial system, subject to . . . sanction[s]" under Rule 11. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990); *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 135 (2d Cir. 2014) (citing *Cooter*, 496 U.S. at 398). Although sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," Fed. R. Civ. P. 11(c)(3), it is apparent that prior warnings and sanctions have not sufficiently deterred Troy Law and that Troy Law has not "clean[ed] up its billing and fee request practices," *You Qing Wang*, 2023 WL 2614143, at *8.

The Court therefore orders Troy Law to show cause why it has not violated Rule 11(b), and why the Court should not impose sanctions, either under Rule 11 or under its inherent power to sanction, *see Heaston v. City of New York*, No. 19-CV-5569 (PKC) (VMS), 2022 WL 182069, at *7 (E.D.N.Y. Jan. 20, 2022) ("The Court may impose sanctions under its inherent powers against a party or attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." (citation modified)). Such sanctions may include, but are not limited to, a monetary fine, a referral to the disciplinary committee, or barring the attorneys from Troy Law from practicing in this District. *See In re Snyder*, 472 U.S. 634, 643 (1985) (recognizing a court's inherent power to "suspend or disbar lawyers"); Fed. R. Civ. P. 11(c)(4) (noting that sanctions may include

"nonmonetary directives" or "an order to pay a penalty into court"). Troy Law shall file a response, not to exceed ten pages, on **September 22, 2026**.

**CONCLUSION**

For the reasons stated herein, the Court awards Troy Law $25,732.41 in attorneys' fees and $4,318.70 in costs and directs the firm to show cause in two weeks why the Court should not impose sanctions for Troy Law's billing practices.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 8, 2026
Brooklyn, New York